UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| JANE A.T. TURNER<br><br>Plaintiff,<br><br>v.<br><br>Alberto Gonzales *et al*.,<br><br>Defendants. | O1-CV-1407 (JMR/ADB)<br><br>**PLAINTIFF JANE TURNER'S STATEMENT OF THE CASE-IN-CHIEF AND EXHIBIT LISTS** |

In accordance with this Court's Final Pretrial Order dated November 22, 2006, Plaintiff Jane Turner, by and through counsel, hereby files her statement of her case-in-chief, and attaches hereto the list of exhibits.

**STATEMENT OF JANE TURNER'S CASE-IN-CHIEF**

This is an employment discrimination case filed by the Plaintiff, Jane Turner. The defendant is the U.S. Department of Justice, Federal Bureau of Investigation (i.e. the "FBI"). The incidents which gave rise to this case primarily occurred in 1998-99.

Jane Turner was hired as a Special Agent with the FBI in 1978. Between 1978 and 1998 all of Ms. Turner's performance ratings were fully satisfactory, superior or exceptional. In 1998, while working in the Minot, North Dakota resident agency of the FBI, Ms. Turner, for the first time in her career, filed a discrimination claim with the FBI's internal Equal Employment Opportunity ("EEO") office. The claim centered around a concern that male and female agents were not provided with equal credit for cases for which they worked.

Under Title VII of the Civil Rights Act of 1964 ("Title VII"), the FBI could not retaliate against Ms. Turner because she filed an EEO claim or "opposed" FBI discriminatory practices. After filing her EEO claim, Ms. Turner observed that her managers, including her immediate supervisor, Mr. Craig Welken, started to retaliate against her.

In early summer 1998, the U.S. Attorney's Office in North Dakota began a federal criminal investigation of Larry Froistad. Froistad was accused of illegally distributing child pornography and murdering his own five year old daughter, Amanda. The case was "high profile." Despite her extensive background in child crimes, Mr. Welken did not want to assign Turnerto the case. However, John Schneider, the U.S. Attorney for North Dakota, personally requested that Ms. Turner be given the case. This request forced Welken to very reluctantly assign Turner to the Froistad case.

U.S. Attorney Schneider's assessment that Ms. Turner was needed on the Froistad case proved to be correct. Ms. Turner performed exceptionally well. She facilitated the collection of key evidence against Mr. Froistad, and personally obtained his confession to murdering his daughter and distributing child pornography over the Internet. Based on that confession, Mr. Froistad pled guilty and was sentenced to life in prison. After sentencing, U.S. Attorney Schneider told Ms. Turner in an e.mail, "Quite simply, that case and the plea was your product."

Instead of giving Ms. Turner credit for a job well done, Welken strongly criticized Turner's conduct in the Froistad case. He accused her of "poaching" the case from a male agent and "sandbagging" Welken. Turner objected to these attacks, and on June 18, 1999 filed a memo to her second line supervisor, Mr. James Burrus. Turner informed Burrus that Welken had improperly accused her of "poaching" and "sandbagging" on the Froistad case, and further stated that Welken's hostility against her had "increased since" Turner's "filing of an EEO complaint."

Instead of informing higher level FBI managers of Agent Turner's complaint against Welken, Mr. Burrus forwarded the complaint directly to Mr. Welken, and told Turner that he was asking Welken to consider her memo in re-reviewing her prior performance.

On June 23, 1999, just days after Turner had filed her complaint to her second line supervisor, Welken issued Ms. Turner her first negative performance assessment in her twenty one year career with the FBI. He rated her "unsatisfactory" in critical job duties. Within the FBI, such ratings can result in significant adverse actions, including a loss of pay or benefits or even an involuntary transfer to an entirely new office.

Between June and December, 1999, Agent Turner would be rated as unsatisfactory on three additional occasions – twice in performance assessments and once in an inspection report. Based on these highly negative reviews, the FBI involuntarily transferred Agent Turner from Minot, North Dakota to Minneapolis, MN. The transfer was based on an alleged "loss of effectiveness."

Ms. Turner claims that the negative reviews and the inspection report were grossly inaccurate and contained false information, and that these false allegations were made in retaliation for her filing her EEO claim and her June 18, 1999 memo of complaint. The FBI asserts that the evaluations and inspection report were accurate.

Additionally, Ms. Turner alleges that the bad evaluations and punitive transfer harmed her reputation in law enforcement, caused her to suffer significant emotional distress, caused her to lose pay and benefits (including a raise) and destroyed her career in the FBI. The FBI asserts that the actions taken against Ms. Turner were undertaken in order to help her improve her performance.

Under Title VII, an employee can be awarded compensation for adverse actions such as bad reviews or involuntary transfers, if a jury determines that such actions were retaliatory and resulted in actions that were materially adverse to a reasonable employee. An employee need not be fired in order to be compensated for retaliation. Compensation includes damages for

emotional distress, loss of reputation and/or direct economic harms, such as lost pay and benefits.

**EXHIBIT LISTS**

Attached to this filing is the Plaintiff/Defendant Exhibit List.

Respectfully submitted,

By: s/Stephen Kohn

Kohn, Kohn & Colapinto, LLP
DC Bar #: 411513
Kohn, Kohn, & Colapinto
3233 P Street, NW
Washington, D.C. 20007
202-342-6980
202-342-6984 (fax)
Attorney for Plaintiff

Dated: December 15, 2006