EDWIN N. CARTER, PH.D.
Clinical Psychologist

433A Carlisle Drive
Herndon, VA 20170
Telephone: 703-481-6001
Fax: 703-569-5664

8700 Centreville Road, Suite 410
Manassas, VA 20110
Telephone: 703-569-8731
Fax: 703-569-7248

8348 Traford Lane, Suite 102
Springfield, VA 22152
Telephone: 703-569-8731
Fax: 703-569-7248

May 21, 2004

Stephen Kohn, Esquire
Kohn, Kohn, and Colapinto
3233 P Street, N.W.
Washington, D.C. 20007

Re: Jane Turner

Dear Mr. Kohn:

I had the opportunity to perform a complete psychological evaluation of Jane Turner which I was able to accomplish during an all day session with her on August 27, 2003. The evaluation was prompted by issues pertaining to her employment as well as her own concerns about her general psychological condition.

Her personal, medical, and employment histories are repetitively documented elsewhere and I will not repeat them here except to note that FBI personnel have raised concerns about the ability of Ms. Turner to perform her essential job functions. As part of these concerns, there have been numerous psychiatric and psychological evaluations of her which have seemingly produced contradictory conclusions regarding her fitness for duty. Ms. Turner was on leave when tested.

In conducting my analysis of SA Turner, I am relying upon not only the psychological testing that I administered to Ms. Turner but also the following sources of information: (1) Psychiatric evaluations and opinion statements from Linda F. Gruenberg, D.O. and John G. Garofalo, M.D., as well as psychological evaluations by James Brandt, Ph.D., Neil Hibler, Ph.D., and Eric Ostrov, J.D., Ph.D., (2) Numerous administrative documents generated by the Federal Bureau of Investigation, (3) the depositions of Anthony Onstead, Janice Morley, and Clare Hochhalte, and (4) various letters sent among counsel and various representatives of the Federal Bureau of Investigation.

51 - 1 - 6

In addition to interviewing Ms. Turner, I administered the Minnesota Multi-Phasic Personality Inventory-II (MMPI-II) – an instrument which had been administered to her on at least two occasions previously, The Detailed Assessment of Post-Traumatic Stress (DAPS), the Clark-Beck Obsessive-Compulsive Inventory, the Wechsler Adult Intelligence Scale–III (WAIS-III), the Sentence Completion Test, and the Neurological Impairment Scale – Self Report Form (NIS). I conducted a Mental Status Examination and an extended Clinical Interview, asked her to write an Impact Statement, performed a Quick Neurological Screening Test, and also a Sensory Perceptual Examination.

At the time of my evaluation, Ms. Turner was taking Zoloft 100 mg q.d.

During the Mental Status Examination, Ms. Turner was highly focused with no problems noted in concentration and simple attention. There were no signs of any tangential thinking. She had no trouble staying on the topic. However, at times she did elaborate in great detail, particularly when talking about her work-related experiences. She generally appeared quite anxious. While coherent, logical, able to maintain concentration, and otherwise highly purposeful in her actions, she did demonstrate a lot of extraneous motor activity. She shuffled around in her seat, repositioning herself frequently and seemed quite fidgety.

Ms. Turner is an individual who looks her stated age. She was appropriately attired in a dress and was entirely sociable throughout all aspects of the very lengthy testing process. While somewhat fatigued and a bit gaunt in appearance, she was able to maintain high levels of motivation. Her mood was upbeat at all times. She seemed quite concerned about her performance. There were no signs of any loose associations or flight of ideas. She was adequately oriented in all spheres. There were no signs of any suicidal thoughts, though some depressive feelings were noted when she talked about the impact of her work experiences on herself and her daughter. She was able to handle abstract and changing ideas without difficulty. There were no signs of delusional nor hallucinatory activity. Judgment and insight were adequate.

No difficulties were noted with motor coordination. Her gait was normal. She was able to stand and sit without difficulty and transitioned from sitting to standing and standing to sitting without problems. Extremity joint ranges indicated proper range of motion. There were no signs of any vestibular difficulties. Ms. Turner was able to hold a pencil using a normal tripod grasp. Her writing was somewhat large but technically within normal limits.

Ms. Turner is a right side dominant individual which was confirmed by examination of fingernail size. Grip strength, dexterity and motor speed all indicated a right sided dominance as well. Some minor fine motor planning problems were noted in her writing but these are not clinically significant.

Reaction times were within normal limits in performance tasks. She had no trouble understanding and recognizing objects presented to her on the WAIS-III. When required to do so, she was able to discriminate right from left, and up from down effectively. She had no trouble crossing midline. There were no disorders noted of graphesthesia. She had no trouble rapidly identifying parts of her own body and that of the examiner. Alternating pronation and supination of hands was performed smoothly. All cranial reflexes appeared grossly within normal limits.

The cognitive test results indicate that Ms. Turner is an overall intelligent individual obtaining a 119 on the WAIS-III IQ test. She has superior verbal reasoning skills and is able to comprehend subtle nuances of meaning. Her long-term verbal memory is extremely accurate. She has very strong skills of verbal inferential and deductive reasoning. The current data do not indicate any problems with nonverbal reasoning. She has adequate abilities of spatial reasoning, spatial organization, quantitative reasoning and general visual memory. Her visual motor integration is within normal limits. There are no disorders of executive functioning, i.e. Ms. Turner is able to take in and organize information in both verbal and nonverbal domains and prioritize it effectively. She is able to plan and effectively carry out complex plans with no impairment. She is able to use cognition to control emotion in an effective fashion.

The current testing reveals a problem with short-term working auditory memory. Specifically, Ms. Turner has some difficulty keeping pieces of information in short-term memory and consolidating them for purposes of storage and longer term organization. This is not a problem with long-term memory or ability to recall learned information in any meaningful way. Rather, it is a problem with the inputting of information, particularly auditory/verbal information. Thus Ms. Turner may feel that she is, at times, forgetful, when the problem really is one of the manner in which she encodes and organizes information at the input level. Thus at times she can appear to be forgetful when the problem involves short-term attention and initial organization of information. This problem can be compensated for by increased vigilance and concentration. It can also be neutralized by having information presented in a redundant fashion. This problem appears attributable to three obvious factors. The first is the fact that she is a menopausal woman. Problems of working memory are very common in women who maintain inconsistent estrogen levels. Second is the long-term usage of Zoloft. Ms. Turner is taking a moderate level of Zoloft - for her body mass. One occasional side effect of long term use of SSRI smalls such as Zoloft is a functional constriction in short-term focus/memory. The third factor is the rather obvious stress which Ms. Turner is experiencing on an ongoing basis. This is producing a heightened state of arousal which affects incidental learning and consolidation of short-term information. The bulk of this stress represents flashbacks and other sequelae of work-related trauma including harassment.

The personality testing, as well as my general analysis of Ms. Turner indicates no serious psychological condition except for that typically associated with acute stress. There is no thought disorder nor is there any mood disorder. While at times despondent, Ms. Turner is not seriously depressed. It is clear that at times Ms. Turner remains excitable, particularly when reliving past traumatic events. However, even under these conditions, she is completely rational and has the cognitive abilities to self-regulate. Thus, while the stress has produced a massive negative effect on her life, she is able to maintain sufficient internalized controls to function adequately in daily life. She is perfectly capable of taking care of herself and her daughter and making informed decisions.

The data clearly indicate that Ms. Turner has become disillusioned by her experiences with the FBI. Ms. Turner has a strong sense of right and wrong. It is hard for her to reconcile the way she has been treated by colleagues and superiors with her image of the FBI as an agency committed to the highest morals and ethical standards. Her very fundamental belief in the integrity of law enforcement has been permanently shattered by her work related experiences. She feels her trust and commitment have been betrayed. This forms the basis of Post Traumatic Stress Disorder.

The current data do not support the notion of any serious psychopathology above and beyond the major anxiety she suffers that is associated with her Post-Traumatic Stress Disorder. The MMPI-II suggests no major mental illnesses. On tests sensitive to obsessional thinking, Ms. Turner's scores were so low as to obviate any statistical analysis. Despite her trauma, she does not appear to be obsessed with anything that has happened to her. While the interview process did reveal some expansiveness, this appears due to the effect of chronic stress secondary to trauma and is not a hypomania.

Her Sentence Completion items reflected no obsessional themes. On this test Ms. Turner showed appropriate concern for her family and her employer.

On measures sensitive to acute stress — e.g. the DAPS — Ms. Turner tested as an individual suffering from Post Traumatic Stress Disorder. The sources of her trauma are the collective experiences associated with her whistleblowing and EEO actions.

Previous evaluations as well as anecdotal evidence contained in FBI memos suggest that Ms. Turner has problems with anger. The current testing does indicate that Ms. Turner has a history of being irritated. Indeed she noted on the Sentence Completion Test:

I regret "when I lose my temper."

There is no evidence, however, that she demonstrates anger inappropriately. Ms. Turner has some concerns that in some circles there may have been attempts to cover up or diminish the importance of certain illegal activities that she has observed. Ms. Turner feels that she has exposed a pattern of FBI corruption. Because of these actions on her part she further feels that retaliatory action (e.g. a forced transfer) has been taken against her. These factors represent circumstances in which any normal person might lose her

temper and be irritated. Quite simply, Ms. Turner was and remains agitated concerning the activities that formed the basis for her whistleblowing and EEO complaints and the reprisals against her. Again in many situations of a very serious nature, Ms. Turner feels that her colleagues and supervisors failed to take appropriate action and this has made her angry and worried for the safety of the communities she has served. She is also upset about her transfer to Minnesota and what appears to be retaliatory activity taken against her. Her occasional anger represents her concern for the welfare of the citizenry and her reaction to the way she has been treated. A certain anger as well as defensiveness would seem appropriate. It is not surprising that people, including those who have evaluated her, might find her to be occasionally irritable and excoriative in demeanor.

Many of the previous evaluations have mentioned, typically tangentially, that Ms. Turner was and is self-righteous. The current evidence indicates no pathological sense of self-righteousness. As is true of anyone involved in whistleblowing activity, Ms. Turner has a clear sense that colleagues and supervisors have been behaving inappropriately and not upholding the basic standards of good law enforcement. Ms. Turner could certainly appear to be self-righteous in certain situations where she is describing corrupt behavior in others. However this is simply a normal byproduct of whistleblowing activity and not a character flaw. It is certainly not psychopathology. In a similar vein, while the current testing evinced paranoia, some occasional tendencies to present in such a fashion would, once again, be consistent with whistleblowing activity and the sequelae of such activity. Unlike some people in whistleblowing situations, Ms. Turner does not view herself as a martyr. She does not see herself as championing any particular cause. She has simply reported inappropriate behavior.

All of the available information suggests that she has a long-standing history of loyalty and dedication to the law. She believes strongly in the Constitution of the United States and that, as a law enforcement agent, she was and is bound to follow the rule of law. Such simple and straightforward standards could easily be perceived by certain colleagues and others as inflexibility and an unwillingness to compromise. The current data do indicate that Ms. Turner has little tolerance for those who bend the rules and who apply the law in a way that may compromise basic standards and principles of law enforcement to political or social agendas.

It is beyond the purpose of this evaluation to make a determination as to the accuracy of any complaints alleged by Ms. Turner. One thing is clear, however. The data clearly reflect that Ms. Turner has always acted in a sincere fashion and has done her utmost best to protect the citizenry. The manner and substance of her transfers and placement on leave have been highly traumatizing to her. While she has no other serious psychopathology, she has clearly been traumatized by the treatment she has received.

**Summary and Recommendations**

SA Jane Turner has no significant psychopathology except for a severe Post-Traumatic Stress Disorder which is a contributing factor to cognitive difficulties in short-term working memory. She feels as though she has been harassed at work because of her whistleblowing and EEO activity. This stress significantly detracts from the current quality of her life on an ongoing basis and has professionally compromised her forever. Her refusal to turn her back on improperly investigated crime may be seen by some of her superiors and colleagues as uncooperativeness. Her inability to keep quite about cover-ups might be viewed by some of those working with her as hysteria and obsession. Her general excitability and agitation about an unfettered pattern of corruption may be viewed by many within the FBI as mental illness. In the case of Jane Turner, these reactions reflect the very normal attributes that Americans expect of their federal police. They certainly do not reflect mental illness or unfitness. Under the current circumstances, it is not recommended that Jane Turner return to work with the FBI. She is currently too traumatized to be able to do so. Furthermore, the likelihood of her recovering from this trauma to a level where she could ever return to work as an FBI Agent is minimal. It is clear that the reason for this incapacity on her part is not because of any underlying disorder which she brought into the workplace. Rather, it is the direct result of the way she has been treated in the workplace.

Piecemeal therapy is indicated by the current pattern of results. Her current regimen of Zoloft is helping to stabilize her, although it may be contributing in some way to some of her problems with working auditory/verbal memory. One important part of any counseling that she receives might involve components of vocational rehabilitation since Ms. Turner's current ability to pursue further work as an FBI Agent appears irrevocably damaged.

Edwin N. Carter, PhD
Clinical Psychologist