UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA
01-CV-1407 (JMR/FLN)

| | | |
|---|---|---|
| JANE A. T. TURNER, | ) | |
| | ) | |
| Plaintiff, | ) | **JOINT AGREED** |
| | ) | **STATEMENT OF** |
| | ) | **TESTIMONY** |
| | ) | |
| ALBERTO GONZALES, *et al*., | ) | **Dr. John G. Garofalo** |
| | ) | |
| Defendant. | ) | |
| | ) | |

During 1999, John G. Garofalo was the Ward County medical examiner and corner in Minot, North Dakota. Dr. Garofalo was also a psychiatrist doing in patient and out patient work. In 2000, he left North Dakota for Arizona. Dr. Garofalo was board eligible in psychiatry and board certified in forensic medicine. If called as a witness, Dr. Garofalo would testify to the following.

Dr. Garofalo first met Jane Turner professionally in 1994 or 1995 on the Indian reservations. They worked multiple cases in the reservation. They had a very casual, very hands-off type of friendship. Turner would come to his home with her daughter and spend time with Garofalo and his wife.

Except for conducting an evaluation of Jane Turner, Dr. Garofalo did not believe that he had a Doctor-patient relationship with Jane Turner. Turner came to Garofalo asking for the evaluation, stating she was experiencing anxiety and she thought it was job related. And she felt, she was being singled out to treated in a prejudicial manner at work. Turner

contacted Garofalo frequently in 1999 prior to him leaving in 2000.. She would visit him at home and contact him by telephone. Dr. Garofalo did not take notes of these visits because he considered them to be social in nature and one friend ventilating to another. Garofalo did not consider these contacts treatment, but that he was listening as a friend.

Dr. Garofalo did not have a clear recollection of what Turner told him. He vaguely recalled that Turner felt that there was an agent or agents that were prejudice against her or towards her, that subterfuge was being involved, half truths were being told, and she was not getting credit for or appropriate respect for her work.

Turner informed Dr. Garofalo that she was having difficulty with the Bureau and felt she was going to somehow have retaliation aimed at her and she wanted a psychiatric evaluation regarding anxiety. On January 10, 2000, Dr. Garofalo performed a psychiatric examination of Jane Turner at the request of Jane Turner. This is deposition Exhibit 1. Dr. Garofalo conducted a lengthy interview and performed a specific inventory of tests which attempted to "tease out" certain personality traits and/or disorders. Garofalo diagnosed Turner with anxiety disorder with possible post-traumatic stress disorder.

Dr. Garofalo stated by definition, Post traumatic Stress Disorder involved very noxious and disturbing, sometimes extremely vivid

recollections of details of a rather emotionally traumatic event. It presents itself with symptoms of anxiety, perhaps at times inability to focus, sleep disturbance and the like. Turner related to Garofalo that she was having an extreme anxiety provoke by her recollection regarding some rather heinous child abuse, negligence abandonment and deaths that occurred on the reservation. Garofalo testified that this evidence indicated that Turner was suffering from Post traumatic Stress Disorder. Garofalo also found over and above the Post traumatic Stress Disorder issues, that Turner had a generalized anxiety related to her work situation. The feeling she was being singled out for gender biased issues.

In reaching this conclusion, Garofalo used his background and knowledge of Turners work in North Dakota having worked on some of the cases which she referred to in flash backs or noxious recollections, the specific formal interview on January 10, 2000 and his knowledge of her.

Garofalo stated that after his January 10, 2000, evaluation, he did not provide Turner with any treatment. Garofalo testified he referred Turner to a psychologist, Dr. Brandt, in Minot, ND. For further evaluation and to initiate any counseling that he though would be helpful.

Garofalo was asked to review deposition Exhibit 2. This was a letter he wrote to Donald Bartinik, Section Chief of the Personnel Assistance Section of the FBI on August 28, 2001. Turner had asked Garofalo to

render an opinion in regard to Turner's fitness for duty. Garofalo had not evaluated Turner since January 10, 2000, which was fully a year and many months prior to Dr. Ostrov's and Gruenberg's reports.. Turner wanted Garofalo to look at two doctor's opinions and render an opinion as to her fitness for duty. Garofalo stated that he decided to render an opinion as "a friend." Garofalo received no pay for writing the letter He evaluated Turner's fitness for duty based on two doctor's reports, report from Dr. Brandt and the evaluation he had done a year prior. Deposition Exhibit No. 4 is the letter from Dr. Brandt, referenced in Dr. Garofalo's August 28, 2001 letter letter to Donald Bartink. Dr. Garofalo believed that everything in his letter to Donald Bartinik was true.

Garofalo agreed that a person could be unfit for duty because they are burned out or in need of temporary therapy. However, Dr. Garofalo explained this answer by testifying that a person could be under a great deal of anxiety and still be totally psychotic and unfit for duty. But the doctor's reports prepared by the FBI-doctors were quite clear that Jane Turner was not suffering from anything rising to the level of psychopathology. Dr. Garofalo opined that the reports were quite clear that Turner was not suffering from anything that was raising to the level of psychopathology.

In regard to the sentence in the August 28, 2001, letter, "Since then I have been maintaining biweekly contact with her" Garofalo explained that Turner would call him on the phone or send him e-mails and ventilate on an occasional basis. Garofalo said that sometimes this would have been two or three times a week and at other times every two weeks. The contacts were not scheduled or structured. Garofalo said Turner maintained that contact with him from May to the end of August(2001) and then the contacts became far more sporadic, fewer and further between and then ended.

Garofalo stated it was absolutely not the case that he was treating Turner.

Garofalo was asked to review Deposition Exhibit 3, which was a letter from Donald Bartinik, Section Chief of the Personnel Assistance Section of the FBI to Jane Turner.

Garofalo denied that he provided Turner with any type of psychotherapy, medication management or monitored any treatment with Turner.

He testified that he was not involved in procuring that participation in psychotherapy.

Garofalo testified that he did not submit monthly reports on any treatment he may have given Turner.

Respectfully submitted,

__/s/ Martha Fagg_____
Martha Fagg
Assistant United States Attorney
600 4th St, Suite 670
Sioux City, Iowa 51101
Attorney for Defendant

___/s/ Stephen M. Kohn___
Stephen M. Kohn,
KOHN, KOHN & COLAPINTO, LLP
3233 P Street, N.W.
Washington, D.C. 20007
Attorney for Plaintiff