UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA
01-CV-1407 (JMR/FLN)

| | | |
|---|---|---|
| JANE A. T. TURNER, | ) | |
| | ) | |
| Plaintiff, | ) | **JOINT AGREED** |
| | ) | **STATEMENT OF** |
| | ) | **TESTIMONY** |
| | ) | |
| ALBERTO GONZALES, *et al*., | ) | **ELMER FORDANCE** |
| Defendant. | ) | |
| | ) | |

In accordance with this Court's Final Pretrial Order dated November 11, 2006, as modified on December 20, 2006, the parties to this proceeding hereby set forth the following joint agreed statement of deposition testimony concerning the witness Mr. Elmer Fordance:

Mr. Elmer Fordance commenced working in federal law enforcement for the U.S. Department of Interior, Bureau of Indian Affairs ("BIA") in 1986. Prior to the year 2003, he served as the BIA Chief of Police at the Fort Berthold Indian reservation in North Dakota, having worked on that reservation for approximately 17 years. Tr. 5.

Mr. Fordance stated that he had known Turner for several years. That Turner presented herself well and seemed confident. He worked with her well and never had any reason to doubt her abilities.

*Mr. Fordance also knew Mr. Homer White Buffalo. Mr. White Buffalo formerly worked for the BIA, but had retired. In 1999 Mr. White Buffalo was employed as a tribal criminal investigator, working directly for Three*

*Affiliated Tribes on the Fort Berthold reservation. The Tribal Chairman for these Affiliated Tribes was Mr. Tex Hall.*

*The FBI had law enforcement jurisdiction over the conduct of Tribal Chairman, and Jane Turner had, in the past, served as the chief investigator in the successful prosecution of a Tribal Chairman.*

*As a contract investigator, Mr. White Buffalo reported to the Tribal Council, which at the time was chaired by Mr. Tex Hall. The Tribal Council had the authority to hire and fire employees, such as Mr. White Buffalo.*

*During this time period, the Tribal Chairman was attempting to have a relative (either the Chairman's nephew or cousin) obtain a job with the tribal police. This relative's name was Ty Hall. Ty Hall was already working as a security guard for the Tribe, but the Tribal Chairman wanted him to be employed directly by the tribal police.*

*During this time period, the Tribal Chairman had provided a letter stating that his relative, Mr. Ty Hall, had been hired to work for the tribal police. Mr. Fordance objected to this appointment, and informed Ty Hall that although he could work for the tribe, he [Mr. Fordance] would not recognize him as a tribal policeman and would not issue him a uniform or equipment.*

*Mr. Ty Hall had previously been convicted in federal court for an assault resulting in serious bodily injury. At the time of his attempted-appointment to the Tribal police, there was an investigation into whether Mr. Ty Hall had committed a rape.*

*While the Tribal Chairman was attempting to have Ty Hall placed onto the tribal police, Jane Turner was the FBI Special Agent with law enforcement authority over the Affiliated Tribes.*

*Mr. Fordance discussed the status of the investigation into Ty Hall with Jane Turner. He talked with her about the investigation because he had learned that the United States had declined prosecution into the sexual assault charge, and wanted to learn why it was declined. Mr. Fordance learned that the investigation had been declined through Homer White Buffalo.*

*Ms. Turner expressed a concern to Mr. Fordance that Homer White Buffalo may have "sandbagged" law enforcement, and obtained a premature declination of prosecution regarding Ty Hall.*

*Mr. White Buffalo learned of Ms. Turner's concern, and was upset that Ms. Turner had made that allegation.*

*Mr. Fordance thought that the problem between Mr. White Buffalo and Ms. Turner should be resolved. At the time, based on his knowledge of the persons involved, Mr. Fordance believed that the differences*

*between Mr. White Buffalo and Ms. Turner would be worked out and resolved.*

***Defendant hereby objects to the above-italicized testimony as not relevant and requests that the italicized testimony be stuck***.

In 1999, Fordance was contacted by an inspector with the FBI in regard to Jane Turner. The first contact was by phone. Fordance was busy and he had a message to call the inspector back. Turner asked Fordance if he had spoken to the inspector and he told her no. Turner came down to Fordance's office and they spoke briefly. Turner left and went down the hall. Turner returned and told Fordance that the inspector was on the phone. She told Fordance to talk to the inspector and " tell him what a good job" she was doing. Fordance picked up the phone and briefly spoke to the inspector. Fordance could tell the inspector knew something was up. Fordance said Turner stayed right there, basically, right beside him as Fordance spoke to the inspector on the phone. Fordance said the inspector then asked him if it was a good time and would he like to call the inspector back and Fordance said yeah because he did not feel comfortable talking to the inspector at that time.

Respectfully submitted,
/s/ Stephen M. Kohn
Stephen M. Kohn,
KOHN, KOHN & COLAPINTO, LLP
3233 P Street, N.W.
Washington, D.C. 20007

Attorney for Plaintiff

/s/Martha Fagg
Martha Fagg
Assistant United States Attorney
320 Sixth Street, Suite 203
Sioux City, Iowa 51101

December 28, 2006

Attorney for Defendant