UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | | |
|---|---|---|
| JANE A. T. TURNER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 01-CV-1407 (JMR/FLN) |
| | ) | |
| ALBERTO GONZALES, ATTORNEY GENERAL, U.S. DEPARTMENT OF JUSTICE, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**DEFENDANT'S MOTION IN LIMINE**

In its decision, *Turner v. Gonzales*, 412 F.3d 688 (8th Circuit 2005), the Eighth Circuit upheld the district court's grant of summary judgment to defendant on plaintiff's sex discrimination and hostile work environment claims. In remanding Turner's retaliation claim to this Court, the Eight Circuit significantly narrowed the issues to be tried. Those issues are:

(1) Whether the June 23, 1999 file review and "Minimally Acceptable/Unacceptable" Performance Summary Assessment (PSA) given to Turner constituted retaliation by Turner's first-line supervisor, Craig Welken, for her June 18, 1999 memorandum to her second-line supervisor, Chip Burrus, complaining of increased discriminatory treatment by Welken. See *Turner*, 421 F.3d at 696-97.

(2) Whether Turner's field office constituted an adverse employment action, specifically whether Turner experienced "a considerable downward shift in skill level" from her prior responsibilities in Minot to her Minneapolis job assignments. See *Turner*, 421 F.3d at 697.

(3) Whether Turner's transfer to the Minneapolis field office was the result of her June 18, 1999 memorandum to Burrus complaining of increased discriminatory treatment by Welken. See *Turner* 421 F.3d at 697.

(4) Whether the FBI's justification for Turner's June 1999 "Minimally Acceptable/Unacceptable" PSA and her December 1999 transfer to Minneapolis was pretext for retaliation. See *Turner*, 421 F.3d at 698-99.

Given that this Court has scheduled only two and a half days for trial here, defendant files this motion in limine pursuant to Federal Rules of Evidence (FRE) 402 and 403 to keep these proceedings focused on the issues which the Eight Circuit found to require trial.

**Argument**

**I. All Testimony Regarding Turner's Whistleblowing Activities and Pending Whistleblower Litigation Against the FBI Should be Precluded**

In addition to this action, Turner has also filed internal Justice Department (DOJ) claims against the FBI alleging whistleblower retaliation. See 28 C.F.R. Part 27. Counsel for the parties have orally agreed that testimony about Turner's whistle blower actions are irrelevant under FRE 402 to her claims here. Exclusion of testimony on these topics is also appropriate under FRE 403 to avoid jury confusion and undue prejudice to defendant. See *LaClair v. City of St. Paul, et al*., 187 F.3d 824, 828-29 (8th Cir. 1999).

**II. Testimony from Assistant U.S. Attorneys Clare Hochhalter and Jan Morley about Turner's Performance Should be Excluded as Irrelevant and Cumulative to the Issues for Trial.**

To show retaliation and pretext, Turner will proffer testimony from two Assistant U.S. Attorneys (AUSAs) assigned to Bismarck and Fargo, North Dakota, regarding her performance as an FBI agent.

The FBI does not contest that Turner was a dedicated agent when it came to investigating gruesome Crimes Against Children cases. However, witnesses/subject interviews and positive AUSA partnerships constitute only part of an FBI agent's job.

The Eighth Circuit correctly observed that the June 23, 1999 "Minimally Acceptable/Unacceptable" performance assessment arose from Turner's "failure to conduct investigative work in a timely manner, failure to properly notify other law enforcement officials about weekend unavailability, delayed report and time sheet filing, poorly written reports and minimal contacts with sources." *Turner*, 421 F.3d at 698. In the June 23, 1999 PSA, Welken itemizes investigations by Turner that were late and undocumented, poor reports that required "substantial editing" by Welken, and an unanswered request for information for the office's pre-inspection papers. Hochhalter and Morley do not work for the FBI. Consequently, as the Eighth Circuit recognized, they "would not necessarily be aware of a decline in [Turner's] ability to meet internal FBI deadlines and the quality of her internal FBI reporting." Id. See also *Maynard v. Motors Management Corporation*, No. CIV 05-1089, slip op. at 9, 2006 WL 2530354 (D. Minn.), citing *Wheeler v. Aventis Pharm.*, 360 F.3d 853, 859 (8th Cir. 2004) (comments not made by decision-maker are irrelevant). Hochhalter's and Morley's opinions on Turner's performance stem entirely from observations of her work apart from internal FBI matters. With no personal knowledge of Turner's internal FBI performance failures, the AUSAs can only speculate.

Testimony from AUSAs Hochhalter and Morley about Turner's performance should also be excluded with respect to Turner's transfer from Minot to Minneapolis. That transfer came about as a result of observations and decisions made by Special Agent in Charge (SAC) Douglas Domin. SAC Domin had a strong belief, after a lengthy conversation with an emotional Turner on September 13, 1999, that she was burnt out and needed to be reassigned from the Indian Country work she did for thirteen years.

Domin's belief was reinforced by the Inspection Division findings in October 1999. During discovery, both AUSAs Hochhalter and Morley gave deposition testimony about Turner's transfer from the Minot RA. **Attached: Hochhalter deposition at pp. 50-53; Morley Deposition at pp. 46-49.** Neither AUSA spoke to SAC Domin about Turner's performance, their opinions of her work, or their belief that she should not be transferred from Minot. Id. Nor did either AUSA speak to the FBI Assistant Inspector who audited the Minot RA. As a result, neither AUSA has direct personal knowledge of SAC Domin's concerns about Turner or the basis for the Inspection Division findings and how these supported Turner's transfer from Minot. The only information they could have about the FBI's rationale for the transfer comes second-hand from Turner herself.

### III. The Testimony of U.S. Customs Agent Tony Onstead Should Be Limited to His Direct Observations of Turner's Actions in the September 23, 1999 Meeting at the Ward County Sheriff's Office on the Vigestad Case.

U.S. Customs Special Agent Tony Onstead served in North Dakota and worked with Turner on several cases, including the Larry Froisted case in 1997-98 and the John Vigestad Child Sexual Exploitation case in 1999. Like AUSAs Hochhalter and Morley, Agent Onstead was not an FBI employee and so, as the Eighth Circuit pointed out, he would be unaware of Turner's performance as to internal FBI deadlines and reporting requirements. *Turner* at 698. As the Eighth Circuit observed, that PSA rating was based on her failures with internal FBI deadlines and administrative reporting requirements – matters about which Onstead has no direct knowledge. See *Turner*, 421 F.3d at 698.

#### A. Onstead's testimony about Turner's work on the Froistad case

**should be excluded.**

General testimony from Onstead about the Froistad case is also irrelevant to the issues for trial. First, the Froistad case arose well before the relevant time period here: the Eighth Circuit identified the June 1999 downgraded PSA as "the first step in the paper trail required to impose an involuntary transfer on an FBI employee." *Turner*, 421 at 697. Agents Turner and Onstead worked the Froistad case the April 1, 1998 - March 31, 1999 performance year. In April 1999, Turner received a "Superior" annual Performance Appraisal Report (PAR), which reflected her work on the Froistad case. Second, although some of Turner's actions in the Froistad case are discussed in the Assistant Inspector's memorandum, the discussion focuses on concerns internal to the FBI: Welken's need to reallocate agent resources, negative squad morale, and a failure to follow FBI policy on polygraphs. See Casey Inspection EC at 2-3. Again, internal FBI issues for which Onstead cannot evaluate Turner.

**C. Onstead's testimony should be limited to his observations about Turner in the September 23, 1999 meeting at the Ward County Sheriff's Office on the Vigestad case**

Onstead's testimony about Turner's September 23, 1999 meeting with Ward County law enforcement personnel to discuss the John Vigestad case arguably is relevant to the issue of Turner's December 1999 transfer out of Minot and whether the FBI's justification for the transfer is pretext for retaliation.

Therefore, testimony from Onstead should be limited to his observations of the September 23, 1999 meeting and a jury instruction should be given directing that his testimony be considered only with respect to the rationale for Turner's transfer, based

on her poor liaison skills and unprofessional interactions with other law enforcement personnel. See *Turner*, 421 F.3d at 698.

## IV. All Testimony and Evidence Pertaining to Turner's Allegations of Sex Discrimination and Gender-Based Hostile Work Environment Should Be Excluded

The Eighth Circuit determined that defendant was entitled to summary judgment on Turner's sex discrimination and hostile work environment claims. See Turner, 421 F.3d at 694-95. Under the doctrine of the law of the case, all testimony and evidence pertaining to these claims should be excluded from trial of her retaliation claim. See *Unigroup, Inc. V. Winokur*, 45 F.3d 1208, 1211 (8th Cir. 1995). As a result, the Court should (1) exclude all testimony about the Rodney Charette case and (2) limit testimony about the John Vigestad case to the September 23, 1999 meeting between Turner, Onstead and local law enforcement personnel. This limitation is consistent with the principal that the law of the case precludes in later proceedings the litigation of matters that are decided implicitly as well as explicitly. See *Winokur*, 45 F.3d at 1211 and cases cited therein.

If the Court allows unrestricted testimony about the Vigestad, Charette and Froistad cases – as defendant expects Turner to provide -- the FBI should be allowed to put before the jury the fact that the Eight Circuit rejected on appeal Turner's allegations of sex discrimination and gender-based hostile work environment. Moreover, unrestricted testimony from Turner and other witnesses about the Charette, Vigestad, and Froistad cases would divert this case into mini-trials about the male agents' actions and what actually occurred. Defendants would have no choice but to introduce rebuttal testimony from the FBI agents and local law enforcement personnel who worked those

cases.

## Conclusion

For the foregoing reasons, defendant respectfully requests that an in limine order be entered.

Respectfully submitted,

JUDITH A. WHETSTINE
Acting United States Attorney

By: /s/ Martha A. Fagg

MARTHA A. FAGG
Assistant United States Attorney
600 4th Street, Suite 670
Sioux City, IA 51101
712-255-6011
712-252-2034 (fax)
martha.fagg@usdoj.gov

CERTIFICATE OF SERVICE

I certify that I mailed/electronically mailed/hand/ delivered a copy of the foregoing document to which this certificate is attached to the parties or attorneys of record, shown below, on January 5, 2007

UNITED STATES ATTORNEY

BY: s/ Carol McEntaffer

COPIES TO:

Stephen Kohn
Attorney at Law
3233 P Street, NW
Washington, D.C. 20007