UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | | |
|---|---|---|
| JANE A. T. TURNER,<br>Plaintiff,<br>v.<br>ALBERTO GONZALES, *et al*.,<br>Defendant. | ) | 01-CV-1407 (JMR/FLN) |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S AMENDED MOTION FOR INTEREST AND EQUITABLE RELIEF TO CONFORM TO JURY VERDICT**

On February 5, 2007 the Jury returned a verdict in favor of Plaintiff Jane Turner on her claim that the Federal Bureau of Investigation ("FBI") had retaliated against her by downgrading her performance evaluations in response to her filing of an Equal Employment Opportunity ("EEO") complaint. In cases of this nature, the Court routinely orders equitable relief consistent with the Jury verdict to place the Plaintiff, as near as possible, in the position he or she would have occupied had the retaliation not occurred and to correct any chilling effect caused by the retaliation. In accordance with 8th Circuit precedent, this equitable relief generally includes the following: (1) an expungement of employment records; (2) a permanent injunction; and (3) notification to employees concerning the decision issued in the case. *See E.E.O.C. v. HBE Corp.*, 135 F.3d 543, 557 (8th Cir. 1998).

Consistent with *E.E.O.C. v. HBE Corp.*, and for the reasons set forth below, Ms. Turner requests that this Court grant her the following equitable relief flowing directly from the Jury's verdict: 1) expungement of retaliatory records from her personnel file/employment record; 2) a permanent injunction against further retaliation; and, 3) communication of the verdict and this Court's order.

**ARGUMENT**

Title VII of the Civil Rights Act of 1964 entitles individuals to be "[made] whole for injuries suffered on account of unlawful employment discrimination." *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 418 (1975). To this effect, U.S. District Courts have "full equitable powers" to "fashion the most complete relief possible, [and] … the duty to render a decree which will so far as possible eliminate the discriminatory effects of the past as well as bar like discrimination in the future," thus placing the injured party "as near as may be, in the situation he [or she] would have occupied if the wrong had not been committed." *Id*. at 418-19, 421; *see also* 42 U.S.C. 2000e-5(g)(1) ("If the court finds that the respondent has intentionally engaged in or is intentionally engaging in an unlawful employment practice charged in the complaint, the court may… order such affirmative action as may be appropriate, which may include, but is not limited to… [any] equitable relief as the court deems appropriate…"); *Briscoe v. Fred's Dollar Store*, 24 F.3d 1026, 1028 (8th Cir. 1994) (stating that a court may exercise its discretion to fashion injunctive relief to remedy the effects of discrimination).

In determining specific equitable remedies, a district court is "to fashion such relief as the particular circumstances of a case may require to effect restitution." *Teamsters (T.I.M.E. -- D.C.) v. United States*, 431 U.S. 324, 364 (1977) (citing *Franks v. Bowman*, 424 U.S. 747, 764 (1976)). Furthermore, "when determining whether to grant equitable relief… [t]he court may rely on all of the evidence adduced at trial and may draw all reasonable inferences therefrom." *E.E.O.C. v. General Lines, Inc.*, 865 F.2d 1555, 1562 (10th Cir. 1989) (citing *Anderson v. City of Bessemer City*, 470 U.S. 564, 574-75 (1985)). *Accord*, *E.E.O.C. v. HBE Corp.*, 135 F.3d 543, 557 (8th Cir. 1998).

## I. EXPUNGEMENT/ADJUSTMENT OF RETALIATORY RECORDS

The Jury determined that the FBI unlawfully retaliated against Ms. Turner by downgrading her performance reviews. Pursuant to §2000e-5(g)(1) of the Civil Rights Act of 1964, Ms. Turner is entitled to be made whole for the injuries that she suffered on account of these unlawful acts. *See Albemarle*, 422 U.S. at 418; *E.E.O.C. v. HBE Corp.*, 135 F.3d at 557 (8th Cir. 1998). As the adverse performance reviews in her employment record are the direct fruit of these unlawful acts, Ms. Turner requests that the Court order the FBI to seal and expunge from her employment record all of the retaliatory performance reviews dating from the filing of her 1998 EEO complaint. In particular, Ms. Turner requests that the FBI seal and expunge:

- EX. 4: The October 19, 1999 Inspection report;
- EX. 76: The Welken "drop file," which includes the complete "drop file" related to Jane Turner, not just the pages of the drop file formally introduced into evidence;

- EX. 81A: The June 23, 1999 Performance Summary Assessment by Mr. Welken;

- EX. 83A: The August 28, 1999 Performance Summary Assessment by Mr. Welken;

- EX. 84: The September 14, 1999 memorandum by Mr. Domin which references the "marginally acceptable" ratings by Mr. Welken;

- EX. 85: The 1999 Inspection Report summary which provides a summary finding that Ms. Turner was "not performing her duties;"

- EX. 86: The October 30, 1999 Memorandum by Mr. Welken which concludes that Turner was experiencing "continuing performance deficiencies" and references the June, 23, 1999 and August 28, 1999 Performance Summary Assessments and various information contained in the Welken "drop file;"

- EX. 88: The November 19, 1999 ("approved by Domin" on November 22, 1999) memorandum concluding that Ms. Turner was "not performing her duties and responsibilities commensurate with her grade level and experience;" and,

- EX. 90A: The November 27, 1999 Performance Appraisal Report finding Ms. Turner's performance "unacceptable" in all areas.

So long as references to the above documents exist, Ms. Turner will not be "as near as may be, in the situation [she] would have occupied" had the retaliation not occurred. As such, Ms. Turner requests that the Court order the FBI to seal and expunge from all employment systems of record, not only the above documents themselves, but also any other documents that rely upon or reference the above documents, including all records that characterize Ms. Turner's transfer to Minneapolis as due to any "loss of effectiveness."

In particular, the Minneapolis Division's formal recommendation to FBI Headquarters that Ms. Turner receive a loss of effectiveness transfer was based on the

"Response to Inspection Finding" prepared by SSRA Craig R. Welken and approved by SAC Domin. *See* Ex. 88. This document set out the basis for the transfer recommendation as follows:

> "**Finding:** VCMOP # 3: SA Turner of the Minot, North Dakota RA was not performing her duties and responsibilities commensurate with her grade level and experience.
>
> **Recommendation:** VCMOP #3a: That SAC, Minneapolis, seek the immediate transfer of SA Turner to an entity which would allow for closer supervision.
>
> **Response:** Via EC dated 11/5/99 to the Transfer Unit, SAC, Minneapolis, recommended that SA Turner be transferred to Minneapolis Headquarters."

Thus, as Ms. Turner's transfer was based on these retaliatory performance-findings, she cannot be made whole while references to it continue to exist. In order to fully expunge the retaliatory performance-findings, the Court should order the FBI to also expunge Ms. Turner's employment record of all references to a "loss of effectiveness" transfer and/or any reference whatsoever that her transfer from Minot was based on any performance problem.

Furthermore, in order to truly place her "as near as may be, in the situation [she] would have occupied" had the retaliation not occurred, Ms. Turner requests that the Court order the FBI to amend her employment record to reflect her actual work performance of "fully successful" or "superior" for the entire period following the filing of her EEO complaint. Once this has been done, Ms. Turner requests that the Court order the FBI to update all employment systems of record that referenced or relied upon the retaliatory records/performance findings to reflect this change so that no record or reference to the

retaliatory performance ratings remain within any FBI-related system of records or any system of records which utilizes information from the FBI system of records, and that all such records be amended in order to reflect that Ms. Turner's performance was, at all times while she was employed in Minot, performed at the "fully successful," "superior" or "exceptional" level.

Ms. Turner also requests that the Court enjoin the FBI from informing any person that Ms. Turner received unsatisfactory file reviews or performance reviews during the time period she worked in the Minot Resident Agency, or that her transfer from Minot to the Minneapolis office was based on performance problems.

As this court noted in *Mead v. United States Fid. & Guar. Co.* "[e]xpungement [of retaliatory performance reviews] is necessary both to eliminate the discriminatory effects of past retaliation and to preclude any future discriminatory effects on [plaintiff] of [her employer's] past acts of retaliation." 442 F. Supp. 114, 136 (1977). Expungement is a common remedy in Title VII cases. *See E.E.O.C. v. HBE Corp.*, 135 F.3d 543, 550, 557 (8th Cir. 1998); *see also Bruso v. United Airlines, Inc.*, 239 F.3d 848, 863-64 (7th Cir. 2001) ("By refusing to expunge discriminatory or retaliatory discipline from a successful plaintiff's personnel file, a court may force the plaintiff to bear the brunt of [her] employer's unlawful conduct for the rest of [her] working career, which certainly contravenes the goal of making a plaintiff whole through equitable remedies"); *Smith v. Secretary of the Navy*, 659 F.2d 1113, 1114 (D.C.Cir 1981) (Title VII plaintiff who

prevailed on claim that employer subjected him to discriminatory evaluations was entitled to have all discriminatory records expunged from his personnel file).

In *E.E.O.C. v. HBE Corp.*, an African-American personnel manager of a hotel sued his employer for retaliatory discharge when he was fired for refusing to comply with an order that he believed was racially motivated and filing an EEO complaint. 135 F.3d at 550. Following a jury verdict in his favor, the trial court issued an injunction requiring the employer to "expunge its employment records of *all reference* to the circumstances surrounding the [retaliatory action]" and to provide the plaintiff with a letter of recommendation. *Id*. at 557. The Eighth Circuit affirmed this ruling, commenting that the order to expunge his records (along with the jury award and other equitable remedies set forth in a permanent injunction) had remedied the harm from the retaliatory action. *Id*. at 558.

Ms. Turner cannot be made whole so long as the retaliatory performance reviews, and any reference to said reviews, remain in her employment record. As such it is both appropriate and necessary for the Court to order the FBI to seal and expunge these records and all systems of record that rely upon or reference them, to amend and update its records to reflect her actual performance of "fully successful," "superior" or "exceptional," and to enjoin the FBI from informing any person to the contrary.

## II. PERMANENT INJUNCTION

Based on the Jury's verdict that the FBI unlawfully retaliated against her, and pursuant to the Court's duty under *Albemarle* to "render a decree which will so far as

possible… bar like discrimination in the future," Ms. Turner requests that the Court issue a permanent injunction restraining the FBI from engaging in any retaliatory actions similar or related to those taken against Ms. Turner and/or engage in conduct or practices that would discourage a reasonable employee from exercising his or her right to file an EEO complaint. *See Burlington Northern and Santa Fe Ry. Co. v. White*, 126 S.Ct. 2405, 2417 (2006); *Albemarle Paper Co. v. Moody*, 422 U.S. at 418.

Section 2000e-5(g) of Title VII specifically gives the Court the authority to "enjoin the respondent from engaging in [the] unlawful employment practice." The determination of whether to enjoin an employer from further discriminatory acts is left to the discretion of the trial court, but this discretion must be exercised "in light of the purposes of Title VII." *Albemarle*, 422 U.S. at 416.

In this case, such actions would include management utilization of performance related documentation in order to retaliate against an employee. This performance related information includes the retaliatory use of information placed in an employee's "drop file," the retaliatory utilization of the inspection process, the retaliatory utilization of the "file review" process and the retaliatory utilization of formal performance review system.

Injunctions prohibiting the retaliatory practices which were identified in the Turner case, in the form of cease and desist order, are routinely issued against employers found to have retaliated against employees in violation of Title VII. *See Burlington*, 126 S.Ct. at 2417 (citing *Albemarle*, 422 U.S. at 418) ("throughout its history, Title VII has

provided for injunctions to 'bar like discrimination in the future'"); *Johnson v. Brock*, 810 F.2d 219, 226 (D.C. Cir. 1987) ("enjoining a defendant from further acts of discrimination is a typical remedy in Title VII cases"). Indeed, there are many cases on record whose facts are similar to those in the instant case in which the Court enjoined defendant employers from engaging in retaliatory or discriminatory practices. *See NLRB v. Scrivener*, 405 U.S. 117, 120 (1972) (Supreme Court upheld "[t]he customary order to cease and desist…" where four employees were found to have been retaliated against by their employer for exercising their right to access to a government agency); *see also HBE*, 135 F.3d at 557; *Briscoe v. Fred's Dollar Store, Inc.*, 24 F.3d 1026, 1029 (1994); *Mead*, 442 F. Supp. at 134.

In *Mead*, this Court concluded that "defendants' retaliatory conduct [of giving plaintiff adverse performance reviews] has had and will continue to have, unless enjoined, a chilling effect on other employees who… in the future might seek to avail themselves, of rights guaranteed by Title VII." *Mead v. United States Fid. & Guar. Co.*, 442 F. Supp. 114, 132 (D. Minn. 1977). This Court further found that "[u]nless defendants are enjoined from engaging in such retaliatory acts… other employees who are aggrieved will be discouraged from exercising their Title VII rights." *Id*.

As in *Mead* and other cases noted above, an injunction barring future retaliatory conduct is both necessary and appropriate to protect current and future FBI employees from retaliation and to guarantee free and uninhibited access to the EEOC, especially in light of the testimony as to how information placed in an employee's "drop file" could

be used in a retaliatory manner. *See Albemarle*, 422 U.S. at 418. Furthermore, a permanent injunction of this sort would impose no undue hardship on the FBI, as it simply obligates the FBI to comply with its duty under Title VII to not discriminate or retaliate against employees who exercise their rights.

## III. COMMUNICATION OF JURY VERDICT AND THIS COURT'S ORDER

In the recent case *Burlington Northern and Santa Fe Ry. Co. v. White*, the U.S. Supreme Court found employer conduct that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination" was materially adverse and "contrary to the anti-retaliation provision of Title VII" that seeks to "prevent employer interference with unfettered access to Title VII's remedial mechanisms by prohibiting employer actions that are likely to deter victims of discrimination from complaining to the EEOC." 126 S.Ct. 2405, 2415 (2006). By prevailing in her claim that the FBI retaliated against her, Ms. Turner has clearly demonstrated that the FBI's conduct was materially adverse and thus likely to deter other victims from complaining to the EEOC about retaliatory conduct.

Consistent with the 8th Circuit's decision in *E.E.O.C. v. HBE Corp.*, 135 F.3d at 557, Ms. Turner requests that the Court order the FBI to send a letter, signed by FBI Director Robert Mueller, to all individuals currently employed by the FBI. In addition, Ms. Turner requests that the FBI post a copy of this letter in a conspicuous place on its web site for a period of no less then sixty days. Ms. Turner requests that the letter include:

(1) A copy of the attached Order;

(2) A statement that Ms. Turner's performance during her entire tenure in Minot, ND was at the "fully successful," "superior" or "exceptional" level, and that the FBI engaged in unlawful retaliation when it downgraded Ms. Turner's evaluation because she filed an EEO complaint or otherwise opposed unlawful discriminatory practices;

(3) A statement that the FBI will strictly prohibit the retaliatory use of information contained in a supervisor's "drop file," the retaliatory use of the inspection process, the retaliatory use of the file review process and the retaliatory use of the performance appraisal process in all future cases;

(4) A statement that the FBI shall not tolerate any future retaliation against any employee for engaging in activities protected under Title VII of the Civil Rights Act of 1964.

Without notice that the FBI's retaliatory conduct towards Ms. Turner was unlawful and that it has been enjoined from engaging in such conduct in the future, any employee familiar with Ms. Turner's experience might well be dissuaded from filing a similar complaint of discrimination with the EEOC. As such, pursuant to its duty "render a decree which will so far as possible… bar like discrimination in the future," the Court should order the FBI to issue the requested letter.

Furthermore, because Ms. Turner was well known within the FBI (she worked with hundreds of agents over a twenty-five year period of time) and the details of her case were widely published in national news media, it is both necessary and appropriate for this Court to require the FBI to send the letter to each FBI employee and to post the letter on its web site for a period of time no less then sixty days.

## IV. POST-JUDGMENT INTEREST

Pursuant to 28 U.S.C. 1961(a): "Interest shall be allowed on any money judgment in a civil case recovered in a district court… calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment." Ms. Turner therefore requests that the Court award her interest at this rate for the time between the jury verdict and the date that she receives her full damage award.

Respectfully submitted,

__/s/_ Stephen M. Kohn___
Stephen M. Kohn
DC Bar #411513
(Admitted Pro Hac Vice)

__/s/_ Aaron M. Parness___
Aaron M. Parness
MD US Dist. Ct. #28238
(Admitted Pro Hac Vice)

Kohn, Kohn & Colapinto LLP
3233 P Street N.W.

Washington, DC 20007
Tel: (202) 342-6980
Fax: (202) 342-6984

______/s/Robert Hill___________
Robert Hill and Associates
The IDS Center, Suite 825
80 South 8th Street
Minneapolis, MN 55402
(612)376-0017

Dated: February 20, 2007

Attorneys for Plaintiff