Federal Bureau of Investigation
Performance Management System - Special Agent and Support Personnel
**Performance Appraisal Report - Cover Page**

[See Instructional Page of FD-728 - Cover Page]

| | |
|---|---|
| 1. Payroll Name of Employee<br>Jane A.T. Turner | 2. Social Security Number<br>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 |
| 3. Position Title, Grade and Number<br>Special Agent, 1811-13-78-MP-712 | 4. Office of Assignment and Cost Code<br>Minneapolis, 3480 |

5. General Nature of Assignment
Minot, North Dakota Resident Agency - IC and General Criminal

6. Summary Rating Unacceptable

7. Craig R. Welken — SSRA Craig R. Welken — 11/27/99
Signature of Rating Official — Name (Typed or Printed) — Date

I have reviewed and approved this appraisal. ( ) See my comments attached.

8. [signature] — ASAC James H. Burrus, Jr — 11/29/99
Signature of Reviewing Official — Name (Typed or Printed) — Date

I am aware that a rating of less than Fully Successful (FS) on any critical element may preclude me from consideration for promotion and/or transfer. In addition, I am aware that my Summary Rating, if below the FS level, will preclude my consideration for a within-grade increase and that a Summary Rating of Unacceptable may be the basis for my reassignment, reduction in grade, or removal. My signature only indicates that I have reviewed this appraisal, not that I am necessarily in agreement with the information herein or that I am relinquishing my right to request reconsideration of it.

9. Jane Turner Do Not agree. — 12/3/99
Signature of Employee — Date Presented for Signature

10. Basis/Reason for Issuance

- A ☐ End of Annual Period
- T ☐ Position Change Date ______
- N ☐ Current Appraisal Date ______
- Q ☐ Requested by FBIHQ Date ______
- D ☐ Conclusion of Detail Date ______
- W ☒ Unacceptable - Warning Date 11/27/99
- F ☐ Warning Resolution Date ______

11. Field/FBIHQ Division Use
Entered Into BPMS -

By ALP (Initials)

On 12-3-99 (Date)

Date of Plan ______

**PRAU USE ONLY**

Logged ______
Reviewed ______
Entered ______
Verified ______
Printout ______



67E-HQ-720215-157 THR

FD-728a (Rev. 10-12-95)



Federal Bureau of Investigation
Performance Management System - Special Agent and Support Personnel
**Performance Appraisal Report - Evaluation Page**

[See Instructional Page of FD-728a - Evaluation Page]

| 1. Payroll Name of Employee | 2. Social Security Number |
|---|---|
| Jane A.T. Turner | 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 |

3. Critical Element (CE) # 1 as noted on the Plan. 3a. Title and/or brief summary of CE:
Conduct Investigations

4. Rating Level:
- ☐ Exceptional
- ☐ Superior
- ☐ Fully Successful
- ☐ Minimally Acceptable
- ☒ Unacceptable

3. CE # 2 as noted on the Plan. 3a. Title and/or brief summary of CE:
Report Information

4. Rating Level:
- ☐ Exceptional
- ☐ Superior
- ☐ Fully Successful
- ☐ Minimally Acceptable
- ☒ Unacceptable

3. CE # 3 as noted on the Plan. 3a. Title and/or brief summary of CE:
Development of an Intelligence Base

4. Rating Level:
- ☐ Exceptional
- ☐ Superior
- ☐ Fully Successful
- ☐ Minimally Acceptable
- ☒ Unacceptable

3. CE # ____ as noted on the Plan. 3a. Title and/or brief summary of CE:

4. Rating Level:
- ☐ Exceptional
- ☐ Superior
- ☐ Fully Successful
- ☐ Minimally Acceptable
- ☐ Unacceptable

5. Initials of Employee [signature] Date 12-3-[illegible]

Def. Exhibit 90a
01-cv-1407 Pg. 2

Federal Bureau of Investigation
Performance Management System - Special Agent and Support Personnel

**Performance Appraisal Report - Narrative Page**

[See Instructional Page of FD-728b - Narrative Page]

| 1. Payroll Name of Employee | 2. Social Security Number |
|---|---|
| Jane A.T. Turner | 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 |

3. Critical Element # 1 . (Include specific examples of positive/negative performance. Such examples should include references to particular assignments, dates, time frames, and quality of work.)

Conduct Investigations - Unacceptable

This PAR includes issues raised during the October 1999 Minneapolis Division Inspection. It follows PSAs dated 6/23/99 and 8/28/99, which foun SA Turner's performance to be in the Minimally/ Unacceptable range (6/23), Minimally Acceptable (8/28), and a 11/27/99, UA Performance Review. She wa previously provided with an Improvement Plan dated 6/23/99, and written narratives in conjunction with each PSA. The Inspection found that SA Turner "was not performing her duties and responsibilities commensurate with her grade level and experience." Her performance has continued to decline and does not meet MA standards. (Above PSAs/Plan and 11/27/99 Performance Review attached and incorporated herein by reference.)

SA Turner, a 21 year veteran Agent, has been unable to play a leadership role in her investigations. Her active caseload included approximately 12 substantive cases throughout the rating period. The majority of the investigation was conducted by outside agency investigativ partners such as BIA and tribal entities. In a number of instances she did little more than present the investigation to the FGJ or Magistrate Judge. Too many of her case files reflect a general lack of FBI investigative involvement, leadership or direction. There is a lack of sophisticated techniques, detailed analysis, self developed casework, effective case management, prioritization, and attention to deadlines.

Inspection interviews and subsequent information received following the inspection revealed that SA Turner's investigative deficiencies, including a lack of responsiveness toward outside agencies have created serious fractional relationships with important law enforcement liaison contacts. These interviews clearly demonstrated that SA Turner has not carried her share of the investigative duties required in joint investigations. She was criticized for her lack of availability and poor work habits.

She has consistently demonstrated that she is unable to conduct basic Color of Law preliminary inquiry investigations. SA Turner failed to fully conduct investigation and meet deadlines in connection with two cases whic were raised in the 6/23/99, PSA and narrative. Her inability to learn from past experience, follow basic instructions and meet deadlines in connectio with these investigations was repeated again in November. All three matter required significant supervisory involvement.

SA Turner's inability to handle basic non-routine matters consistent with policy and in advance of Bureau deadlines suggests an unwillingness t consult the MIOG and MAOP. In addition to Color of Law violations, she failed to resolve an Election Law violation within applicable deadlines.

4. Initials of Employee  12-3-
Date

Federal Bureau of Investigation
Performance Management System - Special Agent and Support Personnel
**Performance Appraisal Report - Narrative Page**

[See Instructional Page of FD-728b - Narrative Page]

| 1. Payroll Name of Employee | 2. Social Security Number |
|---|---|
| Jane A.T. Turner | 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 |

3. Critical Element # 2 . (Include specific examples of positive/negative performance. Such examples should include references to particular assignment dates, time frames, and quality of work.)

Report Information - Unacceptable

SA Turner's written work product did not meet an acceptable level during the review period. SA Turner does not produce large amounts of sel generated written work product. There has been ample opportunity to implement the 6/23/99, Improvement Plan and to resolve the reporting issu raised in the PSA narratives dated 6/23/99, and 8/28/99. A review of her work suggests that SA Turner ignored many of the suggestions offered in t Improvement Plan.(PSAs/Plan, 11/27/99 Performance Review attached and incorporated herein).

She has continued to submit reports which do not comply with Bureau policy including a November 1999, Color of Law report which needed revisi and failed to meet the reporting deadline. That brings the number of poor prepared Color of Law reports which needed revision and failed to meet deadlines to three for the rating period. She also did not meet reporting standards in an Election Law investigation. A prosecutive report dated 8/27/99, which was prepared after the two initial Color of Law violations revealed that little or no effort had been made to prepare the report consistent with Bureau policy. That report and the November Color of Law report suggest that no effort was made to adopt the suggestions of the Improvement Plan.

In addition to the above mentioned reports, a number of other documents had to be corrected during the rating period. Examples include FD-515's, FD-302's, letters and EC's. Reasons include incorrect dates, wrong file numbers and issues related to readability of the document. SA Turner's work product all too often does not include basic attention to details such as use of the FGJ Rule 6(e) stamp. Despite numerous reminder she has been unable to consistently comply with this important legal requirement.

A November interview of a 15 year old victim required revision after SA Turner submitted a rambling FD-302 which unnecessarily included highly personal information. Revision was required.

SA Turner's written documents require far more review and supervisor input than the work of other GS-13 Agents assigned to the squad. It is clear that she has made no progress at improving this critical element during the past few months.

SA Turner has also demonstrated that she is unable to consistently comply with squad reporting requirements to include E-mail items to be included in a Weekly Report to Minneapolis Division executive management. This deficiency was raised in the 6/23/99, PSA narrative.



4

4. Initials of Employee JATT

12-3
Date

FD-728b (Rev. 10-12-95)

Federal Bureau of Investigation
Performance Management System - Special Agent and Support Personnel
**Performance Appraisal Report - Narrative Page**

[See Instructional Page of FD-728b - Narrative Page]

| 1. Payroll Name of Employee | 2. Social Security Number |
|---|---|
| Jane A.T. Turner | 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 |

3. Critical Element # 3 . (Include specific examples of positive/negative performance. Such examples should include references to particular assignments, dates, time frames, and quality of work.)

Development of an Intelligence Base - Unacceptable

Although SA Turner has made a concerted effort to open additional sources during the rating period, those positive efforts are so seriously overshadowed by her failed working relationships with key law enforcement agencies that an Unacceptable rating is the only possibility.

During the rating period, several law enforcement officials have raised major concerns with the inspection staff and SSRA about SA Turner's reliability, trustworthiness, work ethic, professionalism, temperament, an availability. These officials indicated that they did not enjoy an effective and positive professional relationship with SA Turner and preferred not to have to deal with her. These same individuals expressed a desire to work with Agents other than SA Turner. It was clear that the relationships were so flawed that mediation would not resolve the problem. There have been instances where the SSRA was required to assign matter which would normally have been assigned to SA Turner to other Agents because the agencies specifically requested an Agent other than SA Turner.

Copies of PSAs dated 6/23/99, 8/28/99, Improvement Plan 6/23/99, and 11/27/99 Performance Review attached and incorporated by reference.

5

4. Initials of Employee

12-3
Date

**SA Jane A.T. Turner**
**Performance Review and Comments**
**For the Period Concluding 11/27/99**

Reference is made to PSA's and PSA narratives dated 6/23/99 and 8/28/99 along with an Improvement Plan dated 6/23/99. SA Turner's PSA ratings were as follows:

| | 6/23/99 | | 8/28/99 |
|---|---|---|---|
| CE#1 | MA/UA | CE#1 | MA |
| CE#2 | MA/UA | CE#2 | MA |
| CE#3 | FS/MA | CE#3 | MA |

After carefully reviewing SA Turner's performance, to include information which surfaced prior to, during and following the October 1999 Minneapolis Division Inspection a Unacceptable-Warning Par dated 11/27/99 is being issued. This action is taken because of SA Turner's failure to substantially meet the MA level described in her Performance Plan in that she continually required closer supervision than specified in her official position description, did not produce a sufficient amount of work at acceptable accuracy and quality levels and exceeded time limits and deadlines.

The rating levels for each critical element on the 11/27/99 UA-Warning Par are as follows:

| | |
|---|---|
| CE#1 | UA |
| CE#2 | UA |
| CE#3 | UA |

**The length of opportunity period is 90 days.** This 90 day period is provided in order to permit an opportunity to improve performance to an acceptable level. At the conclusion of that time a Warning Resolution PAR must be prepared. That PAR will document performance during the 90 day opportunity period. It should be noted that Unacceptable performance in any one critical element mandates an Unacceptable Summary Rating.

Background

This rating comes eight months following the prior PAR. Poor performance has been an ongoing concern throughout this period and was the basis for the above mentioned PSAs and Improvement Plan. Regrettably, there has been no apparent attempt to adopt the suggestions of the Improvement Plan nor to address performance related issues raised in the referenced PSAs. The October 1999 Minneapolis Division Inspection found that "SA Turner's pending investigative efforts were inconsistent with her experience and grade level as a senior GS-13 Special Agent."

A review of SA Turner's files on 11/26-27/99 did not furnish any reason to believe that improvements were being made. The period following the 8/28/99 PSA was marked with examples of continuing poor performance in all three critical elements. That performance, when coupled with the issues documented in the PSAs and information developed prior to, during and following the recent inspection, resulted in the issuance of the Unacceptable Warning PAR.

Performance: 8/28-11/27/99

Some specific examples of deficiencies are noted below. No attempt is made to be all inclusive. These instances are noted in an effort to provide some documentation of performance problems while also providing guidance for improvement during the 90 day improvement period.

CE#1: Conduct Investigations:

Deadlines/Timeliness:

1. The above referenced PSAs and Improvement Plan addressed the issue of timely investigative activity and deadlines. Several instances suggest that no real effort was made to address this problem area. Examples include:

a. File Review deadlines. The Division operates on a 90 day file review policy. SA Turner was recently provided with a standard squad SSRA routing slip dated 10/12/99. Attached to it were her file review sheets. The routing slip asked that she return the completed file review sheets within 10 days. The document noted that her 90 day review had to be completed no later than 11/12/99 and advised her to call the SSRA as soon as possible to schedule the file review. The completed file review sheets were returned to the SSRA by 10/25/99. SA Turner's first effort to schedule the required 11/12/99 file review was a 11/18/99 E-mail which was prepared at 8:39 PM. The communication suggested setting the review to coincide with the Fargo FGJ on 12/7/99, which is 25 days beyond the deadline. Subsequent E-mails of 11/29 & 30/99 indicated that she was apparently not going to visit Fargo on 12/7/99.

File review policy is stated on the SSRA routing slip, and in a number of written communications to all squad members including those dated 6/22/98 and 5/10/99. It is clear that the responsibility for scheduling a file review is with the individual Agent. Generally speaking, file reviews are at Fargo, although they are sometimes scheduled to coincide with an RA visit by the SSRA. During the past 18 months SA Turner has traveled to Fargo twice for file reviews. Four were conducted at Minot and the delinquent 11/12/99 review is now scheduled for 12/3/99 at Bismarck.

SA Turner's approach to deadlines suggests that they will be complied with only if convenient for her.

b. Color of Law Investigations SA Turner failed to meet the 21 day deadline in connection with a very basic Color of Law Preliminary Inquiry [redacted] F The 11/5/99, deadline was not complied with due to a number of necessary corrections which were necessary. The report was not complex. The amount of investigation was limited. SA Turner did not forward the draft report to the steno pool until 11/3/99. The typist completed the report that day. It was then forwarded directly to the SSRA in Fargo. The late submission precluded any opportunity to send it to SA Turner for proofing. The SSRA noted a number of deficiencies and subsequently submitted a delay form ( FD-205) dated 11/5/99 to FBIHQ. ( Some of the errors had been previously brought to SA Turner's attention in connection with other cases.) The Color of Law Unit set a new Buded of 11/16/99. Since the SSRA was out of town 11/8-11/99, SA Turner was advised of the specific problems with the report via an 11/11/99 E-Mail. She was directed to make corrections and return them to the Fargo OMA by early in the week of 11/15/99. Since SA Turner had not retained a draft of her report, a copy of the report was Fedexed to her to arrive 11/15/99. Her corrections were not received at Fargo until 11/23/99. The report still required SSRA modification. It was completed and forwarded to FBIHQ 11/26/99 after missing two Bureau deadlines and one established by the SSRA. Unfortunately, some of the errors which caused the initial delay were similar to those which were responsible for missed Budeds in connection two other Color of Law reports which were documented in the 6/23/99 PSA narrative.

c. Weekly Reports to Division Executive Management Each squad is required to submit weekly reports to assist management in following the significant investigative events which have/are taking place since the last report. Consequently, each Agent is required to submit pertinent data to the SSRA by a pre-established deadline each week. E-mail reminders to the squad are frequently sent to each member of the squad. SA Turner has missed the reporting deadline on several occasions during the months of October and November 1999.

d. Other Deadlines On 10/4/99, it was necessary to arrange the hasty assignment of an Agent to assist with SA Turner's 5 year security re-investigation. Part of the urgency was attributed to SA Turner's failure to properly complete necessary forms within the allotted time frame.

Investigative Performance Standards:

A review of pending investigations as of 11/26/99, along with those which were closed since the last file review revealed that investigations were not meeting the MA level. SA Turner's caseload as of 11/26/99 consisted of 9 active cases. Seven of the cases were opened since the last file review (8/12/99). An examination of the matters appearing on the file review sheet as well as four investigations which were closed since the last file review was disappointing.

Of the 20 case files reviewed, 14 contained no documented FBI investigation (FD-302/Insert) by SA Turner during the period following the last 8/28/99 PSA. It should be noted that a number were in the final resolution stage so no investigation would necessarily be expected. However, cases which are being declined or awaiting sentencing free up time for more

active investigation on other files.

By rough count, it appears that less than 30, mostly brief, FD-302s and inserts were prepared. A number were brief "cover" documents devoid of any analysis of the documents/ information which had been furnished. Source contacts are not included in the above total unless filed in the substantive files which were examined.

None of the investigations involved the use of sophisticated investigative techniques, nor did the majority of files reflect active investigation by SA Turner which generated substantial amounts of relevant information. There was little or no detailed analysis of information developed. Too many investigations relied upon the efforts of other investigative partners to gather information. Very little immediate response to crime scenes was noted. The use of a Polaroid camera was documented in several instances. A 35 mm camera is a must for investigative photography purposes.

SA Turner prepared a 10/26/99 document with information about a scheduled 10/24/99 Peace Coalition Rally. The document was generated following a discussion with another Agent who advised her that absent additional information peace marches were Constitutionally protected activities. The Agent advised against filing such information. SA Turner did not contact the SSRA, but proceeded to prepare the document and forward it for filing. It was not filed for the reasons cited above. Senior GS-13 Agents must do better than this, particularly when it comes to Constitutional issues.

The above observations, when coupled with information developed through outside contacts before, during, and after the inspection support a conclusion that SA Turner has not been meeting her investigative responsibilities in terms of quality and timeliness. The criticism of her investigative approach and work ethic is borne out through the review of her investigative files. Further, her approach toward deadlines suggests that she has no real concern about timeliness.

<u>CE#2 Report Information:</u>

Reference is made to the delayed <u>Color of Law report</u> [redacted] F mentioned above. In addition to missing the deadline, the report required substantial input from the SSRA. MIOG policy was not followed. Despite written instructions from the SSRA, SA Turner failed to follow some of them requiring the SSRA and OMA to revise the report for a second time. This was the third failed Color of Law PI report since 4/1/99.

Reference is made to the failure to consistently and completely report information necessary for the <u>Division Weekly Report</u> in advance of established deadlines. See CE #1, above.

As pointed out in the CE#1 section, SA Turner generates a minimal amount of written work product compared to other members of the squad. Given the small amount of paper produced, her documents require more review and have a higher percentage of errors than is acceptable. There needs to be more time spent proof reading. Recent documents which have required additional supervisory attention include an ongoing and long term failure to consistently apply the Rule 6(e) FGJ stamp to documents. Other documents have been returned for spelling errors, incorrect file numbers, wrong dates,

All Agents make mistakes. SA Turner has been urged repeatedly to utilize the steno pool. Those same suggestions were offered in the 8/28/99 PSA, and the 6/23/99 Improvement Plan. Many of the errors could be eliminated through use of the steno pool. Unfortunately, the suggestions for improvement offered in the referenced PSAs and Improvement Plan have not been uniformly adopted.

One recent interview of a 15 year old victim was returned to SA Turner because it contained unnecessary and private information. Included were comments about the victim's virginity, bra size, drinking history and a broad range of other topics which were not pertinent to the matter at hand. A supervisory request for modification of the FD-302 brought some changes in the document. This incident is troubling and would not be expected from a new Agent let alone a senior GS-13 Special Agent.

During the recent case review it was determined that SA Turner improperly submitted a draft version of a pre-sentence report to the file. Filing was authorized by a relief supervisor. The document is being removed from the file. Not only is a draft copy not a final version, but it was a violation of local federal court rules to retain it.

CE#3 Development of An Intelligence Base:

SA Turner invested time and effort to develop additional sources (137). At the conclusion of the review period she was operating three sources. Contacts were made and reported.

While this additional effort is noteworthy, information developed prior to, during and following the October 1999 Minneapolis Division Inspection requires that this critical element be rated at the UA level.

Several important law enforcement officials indicated that they did not want to work with SA Turner. Issues were raised about her work ethic, trustworthiness, availability, reliability, professionalism, and temperament. These officials expressed a desire to work with an Agent other than SA Turner. It was clear that significant breeches had occurred and that mediation of the problem was not an alternative.

SA Turner's flawed relationships with several key agencies was raised during the Division inspection. The inspector noted "She had serious fractional relationships with important liaison contacts...which undermined the ability of the Minot RA to effectively carry out its law enforcement mission in what are acknowledged to be difficult conditions."

North Dakota Resident Agents must have professional, effective and congenial relationships with all law enforcement officials. It is clear that SA Turner has not adequately carried out her responsibilities. As a result, the FBI's ability to obtain information and operational assistance has been damaged. SA Turner's effectiveness as a Special Agent assigned to a two Agent RA is significantly impaired. In more than one instance another Agent has had to handle a matter which should have been assigned to SA Turner, but could not be because other agencies did not want to work with her.