**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**
**01-CV-1407 (JMR/FLN)**

| | | |
|---|---|---|
| **JANE A. T. TURNER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **DEFENDANT'S REPLY TO** |
| **v.** | ) | **PLAINTIFF'S OPPOSITION TO** |
| | ) | **DEFENDANT'S MOTIONS FOR** |
| **ALBERTO GONZALES,** | ) | **JUDGMENT AS A MATTER OF** |
| **ATTORNEY GENERAL, U.S.** | ) | **LAW AND FOR A NEW TRIAL** |
| **DEPARTMENT OF JUSTICE,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| ________________________________ | ) | |

Defendant Alberto Gonzales, by and through his undersigned counsel, replies to the arguments and points of law raised by plaintiff Jane A.T. Turner in her opposition to defendant's Motion for Judgment as a Matter of Law (JMOL) and Motion for a New Trial.

## I. Defendant's Rule 50(a) motions at trial fulfilled the underlying purposes of the rule where plaintiff was not prejudiced.

Plaintiff asserts that defendant failed to follow the "specific grounds" requirement set forth in F. R. Civ. P. 50(a)(2) and therefore has waived his right to request post-verdict relief in the form of judgment as a matter of law and/or a new trial. Plaintiff's Opposition Memorandum (Pl. Mem.) at 4-6. Both parties agree that defendant moved for judgment as a matter of law twice before submission of this case to the jury without filing a written memorandum of law supporting its oral motion but disagree as to the practical effect of the oral motions.

In opposing defendant's motion, plaintiff cites only an excerpt of defendant's oral motion at the close of plaintiff's case. The full colloquy on defendant's motion is:

THE COURT: Thank you. And now the plaintiff rests?

MR. KOHN: Yes, Your Honor.

THE COURT: Can we come to side bar?

(Side bar discussion.)

THE COURT: Defense moves for JMOL?

MS. FAGG: Right.

THE COURT: You wish to stand on the record?

MS. FAGG: Just a couple of things –

THE COURT: I'm asking him.

MR. KOHN: Yes, your Honor.

THE COURT: The matter's under advisement. You wish to submit something you may feel free to do that.

Transcript (Tr.) 351. It is clear from the entire colloquy – especially the portion plaintiff left out in presenting her JMOL opposition argument – that defendant's counsel was prepared for and attempted to articulate the reasons why JMOL for defendant was appropriate. Defendant's counsel began her explanation with "Just a couple of things --" but the Court had already directed its attention to plaintiff's counsel. When asked by the Court if plaintiff wished to stand on the record, plaintiff's counsel responded "Yes" immediately, without inquiry, equivocation or qualification.

At the close of all evidence before submission of the case to the jury, defendant again moved for JMOL:

MS. FAGG: Your Honor, may I renew the motion for judgment?

THE COURT: Certainly.

MS. FAGG: Do you want to hear argument on it?

THE COURT: No.

MS. FAGG: Okay, thank you.

THE COURT: The motion is denied.

Tr. 604-05. Again, defendant's counsel was prepared to provide supporting argument to specify the issue and grounds for JMOL. The Court denied the motion without argument or explanation from defendant's counsel.

Rule 50(a)(2) states that a JMOL motion may be made at any time before the case is submitted to the jury and that the motion must specify the judgment sought and the law and facts which entitle that party to judgment. Plaintiff concedes that there is flexibility in how the legal and factual grounds supporting JMOL may be stated, whether in writing or orally during the course of trial. Pl. Mem. at 7. See also U.S. Industries, Inc. V. Semco Manufacturing, Inc., 562 F.2d 1061, 1065 (8th Cir. 1977), cert. denied, 434 U.S. 986 (1977). The twin purposes of requiring the moving party to articulate the grounds for JMOL are (1) to enable the trial court to examine all of the evidence before submitting the issues to the jury; and (2) to alert the opposing party to any defect in its case, thereby affording it an opportunity to cure any such defect. Mathieu v. Gopher News Company, 273 F.3d 769, 776 (8th Cir. 2001), citing Pulla v. Amoco Oil Company, 72 F.3d 648, 655, n. 8 (8th Cir. 1995).

As to the first purpose, the Court took defendant's first JMOL motion under advisement without further elaboration from government counsel, which shows that "the trial judge knew what counsel was driving at." Semco Manufacturing, Inc., 562 F.2d at 1066, quoting Railway Express Agency v. Epperson, 240 F.2d 189, 193 (8th Cir. 1957). Indeed, even before the

government made its motion at the close of plaintiff's case, the Court already had advised plaintiff's counsel that Turner's evidence was "wide of the mark" as proof of retaliation:

> THE COURT: I will permit the discussion of her fitness-for-duty examination. You know, as I understand this lawsuit, she was either a great agent or she wasn't, and she was either competent or she wasn't, and she filled in her forms or she didn't, which has nothing to do with the case. The case is whether or not when, whether she was discriminated or not, have nothing to do with the case. Her transfer to Minnesota is claimed to be a retaliatory act. That's the case. Is that a fair statement?
>
> MR. KOHN: Yes.
>
> MS. FAGG: Yes.
>
> THE COURT: Then why don't we try that question of which we have not gone near in a whole day of testimony. [In response to Mr. Kohn] . . . Counsel, you have painted this case now for two hours, no, for six hours, and you've painted it any way you want. You've given a background on her that she's obviously one step short of canonization. That's fine with me, I have no problem with that, but at a certain point we ought to try the lawsuit, . . .

Tr. 162-63. This colloquy with counsel in chambers before the second day of trial reflects the Court's early attention to the deficiencies in plaintiff's evidence on the June 1999 PSA issue. Because it is apparent that the trial court knew what government counsel was "driving at" in moving for JMOL, it is appropriate under Railway Express Agency to "accept [defendant's] intent for performance" as to specifying JMOL grounds Id. at 193.

Advisory comments to plaintiff's attorneys from the Court following defendant's oral JMOL motion continued. In response to plaintiff's objection to testimony regarding her post-transfer performance, the Court advised plaintiff's counsel, "We've spent hours discussing her work on cases, and the question has nothing to do with her work on cases, the question had whether or not to do she was transferred to Minnesota because of having filed an EEO complaint. And this is fair rebuttal." Tr. 378-79. During FBI Assistant Director Burrus' cross-

examination about gender-based discriminatory treatment of Turner by Welken, the Court again reminded plaintiff's counsel to direct questioning to the issue of retaliation:

> THE COURT: Members of the jury, we are not going here. This case, as you are well aware, involves a woman who had filed some complaints, and who had whatever issues she had in North Dakota. She was transferred to Minnesota. The case is whether – it turns on whether the transfer was in retaliation for filing the EEO complaint. That's what this case is about. So the specifics of this complaint is not part of our concern.
>
> MR. HILL: Very good, your honor.

Tr. 495-96.

As to the second purpose – alerting an opposing party to any defect in its case and so providing the opportunity to cure the defect – the prompt response of plaintiff's counsel that plaintiff would rest on the record shows that plaintiff was satisfied with her offer of proof. In opposing defendant's post-trial JMOL motion, plaintiff makes no allegation – as she must – that she was prejudiced in any way by the lack of a written brief or oral argument supporting defendant's motions at trial. See Semco Manufacturing, Inc., 562 F.2d at 1066. With the multiple warnings from the Court that plaintiff's testimonial evidence was "far afield" of retaliation, plaintiff would be hard pressed to claim prejudice. Nor does plaintiff now argue that she would have proceeded differently with her trial evidence, had defendant's counsel presented specific JMOL grounds for the June 1999 PSA at sidebar or in writing. Semco Manufacturing, Inc. at 1066. Indeed, there would have been no different or alternate offer of proof available to plaintiff on this issue. Defendant's post-trial JMOL motion rests in part on the legal requirement of an adverse action to establish retaliation and the parties' pre-trial stipulation that a PSA under civil service law cannot serve as the basis for salary increases, promotions, or other performance-based actions. See Defendant's Memorandum in Support of Defendant's Motion for Judgment

as a Matter of Law at 11. As argued infra at 9ff., a PSA does not constitute a material adverse action under Burlington Northern and Eighth Circuit precedent. Plaintiff's only option to alter its offer of proof would have been to disavow its stipulation. Therefore, lacking any showing of prejudice to plaintiff, defendant's JMOL motion is properly before the Court.

The cases plaintiff relies on for her Rule 50(a)(2) argument are distinguishable. In Walsh v. National Computer Systems, 332 F.3d 1150 (8th Cir. 2003), the jury verdict on plaintiff's hostile work environment (HWE) claim was upheld because, while defendant moved pre-trial for partial summary judgment, that motion did not include the HWE claim. The Eighth Circuit determined that this pre-trial motion informed plaintiff as to the legal flaws in her case, defendant pro-actively did not include the HWE claim in this motion, and the jury verdict was returned for plaintiff on multiple claims, including HWE. In this case, there was no post-remand summary judgment briefing wherein defendant intentionally did not address the June 1999 PSA claim. Pre-trial filings included defendant's statement of the case on both the June 1999 PSA and the transfer issues. Defendant's JMOL motion included the June 1999 PSA issue and, ultimately, it was the only claim where the jury found for plaintiff. In both Pulla v. Amoco Oil Company, 72 F.3d 648 (8th Cir. 1995) and Catlett v. Local 7370, 69 F.3d 254 (8th Cir. 1995) defendant did not renew its JMOL motion at the close of all evidence. In Jones v. City of St. Clair, 804 F.2d 478 (8th Cir. 1986), defendant never moved for JMOL during trial at all.

**II. Defendant has framed the June 1999 performance downgrade issue in this case consistent with the limited issues the Eighth Circuit remanded for trial.**

In opposing judgment as a matter of law, plaintiff argues that defendant disingenuously, unreasonably, and radically limits the scope of the retaliation claim based on the performance-related downgrade to the June 1999 Performance Summary Assessment (PSA). Pl. Mem. at 11. For this reason, and due to defendant's resulting "misrepresentation" of the record, plaintiff asserts that the motion for judgment as a mater of law should be denied on its face. Id.

The June 1999 PSA retaliation issue did not originate with defendant. The Eight Circuit identified the "June 1999 performance rating downgrade" as one of the two retaliation issues remanded for trial:

> We also find evidence sufficient to raise a genuine issue of material fact as to whether Turner's complaints caused the performance rating downgrade. . . . In this case, the timing of Turner's performance rating downgrade strongly supports an inference of causation. Turner wrote a memorandum to her second-line supervisor, Burrus, referring to her previous EEO complaint and alleging increased discriminatory treatment by her supervisor, Welken. Burrus informed Turner that he would forward the memorandum to Welken, and five days later Welken generated an "interim" performance review that downgraded Turner in all rated areas. The fact that it was not a regularly scheduled performance review and occurred less than two months after the regular annual review in April (in which Turner received a 'Superior' rating) is further circumstantial evidence that the performance rating downgrade was motivated by Turner's complaints. Therefore, Turner provided sufficient evidence to establish a prima facie case for her retaliation claims based on her performance rating downgrade.

Turner v. Gonzales, 421 F.3d 688, 696-97 (8th Cir. 2005). The facts set forth by the Eighth Circuit clearly indicates that the June 1999 file review/PSA is the "performance rating downgrade" at issue for trial on remand. Granted, the Eighth Circuit here did not explicitly state "the June 1999 PSA." It is abundantly clear, however, to anyone familiar with the evidence in this case that the Eighth Circuit is discussing the June 1999 PSA in the context of Turner's June

18, 1999 memo to Burrus (Agreed Exhibit 8); Burrus' June 22, 1999 routing slip and response to Turner (Plainitff's Ex. 60); and the April 1999 annual Performance Appraisal Report (PAR) (Agreed Exhibit 2).

Elsewhere in its remand decision, the Eighth Circuit is more explicit:

> The FBI states that Turner's poor performance justified the June 1999 performance rating downgrade. The performance rating document attributed the downgrade to failure to conduct investigative work in a timely manner, failure to properly notify other law enforcement officials about weekend unavailability, delayed report and time sheet filing, poorly written reports and minimal contact with sources. . . . Turner argues that her strong record of positive performance reviews before June 1999 creates an inference of pretext for the sudden negative review. . . . In this case, Turner had received a 'Superior' rating in her regularly scheduled annual performance review on April 26, 1999, less than two months before the negative, unscheduled interim review.

Turner, 421 F.3d at 698.[1] In addition to this explicit reference to the June 1999 PSA as the "performance rating downgrade" in question, the Eighth Circuit makes clear that only the June 1999 PSA and the December 1999 transfer survived on remand. Reviewing the FBI's justification, the Eighth Circuit states, ". . . we note that incidents from September and October 1999 cannot justify the June 1999 performance rating downgrade" and, in a footnote:

> The FBI also attempts to rely on incidents that occurred in Minneapolis after Turner began work there in May 2000. These incidents cannot justify either the June 1999 performance rating downgrade or the December 1999 decision to transfer Turner.

Turner, 421 F.3d at 698 and ftnt. 2.

Consequently, what plaintiff alleged in her November 2004 First Amended Complaint or

---

[1] On the record then before the Eighth Circuit, the June 1999 PSA appeared to have been an unscheduled review. However, as the record before the district court now establishes, Welken conducted a 90-day file review with Turner in March 1999 and the June 1999 file review/PSA was Turner's routine 90-day file review. See Agreed Ex. 1 at 8; Def. Ex. 81a at 1.

elsewhere about the scope of her retaliation claim is irrelevant. After Turner's appeal of the district court's grant of summary judgment to defendant, only her retaliation claim survived, significantly narrowed.. The Eighth Circuit clearly defined the scope of the surviving retaliation claim as the June 1999 PSA performance rating downgrade and the December 1999 transfer decision. The jury found in defendant's favor that the December 1999 transfer decision did not constitute retaliation. Accordingly, defendant properly focuses its Motion for Judgment as a Matter of Law on the June 1999 PSA.

## III. Plaintiff's evidence regarding the June 1999 PSA was inadequate to support the Jury's finding of retaliation as a matter of law.

No retaliation claim can survive as a matter of law without establishing that an adverse employment action has occurred. Plaintiff's case with respect to the June 1999 file review/PSA fails on this critical element. In her opposition memorandum, plaintiff provides an extensive – and attenuated – argument in an effort to boot-strap herself over the adverse action hurdle. Pl. Mem. at 16-30. Her argument fails.

### A. The stipulated evidence and all reasonable inferences drawn from it establish that plaintiff did not suffer an adverse employment action.

In deciding a JMOL motion, the court must analyze the evidence in the light most favorable to the prevailing party and must not engage in a weighing or evaluation of the evidence or consider questions of credibility. White v. Pence, 961 F.2d 776, 779 (8th Cir. 1992). This requires, in part, that the court resolve direct factual conflicts in favor of the nonmovant and assume as true all facts supporting the nonmovant which the evidence tended to prove. White v. Pence, 961 F.2d at 779, n.4. Testimony on the personnel impact of a PSA from an FBI Assistant Director (Burrus) and an experienced FBI supervisor (Welken) established that a PSA covers

only the 90-day file review period, has no permanency, is not a part of an agent's official personnel file, and is used only to give the agent feedback on performance during the file review period. Tr. 488-90, 520, 528. Turner testified that the "Minimally Acceptable" June 1999 PSA reduced her to "a bug in amber" and placed her "in limbo" – ineligible for a salary increase or a transfer and "you can't do much." Tr. 168-69. This testimony presents a direct factual conflict between defendant's witnesses and plaintiff. Under White v. Pence, this conflicting testimony arguably is resolved in plaintiff's favor.

However, the analysis does not stop there. Turner's "bug in amber" testimony is inconsistent with the stipulations her counsel agreed to on her behalf. Stipulated evidence is uncontradicted and undisputed by its very nature. Although this Court must give plaintiff the benefit of all reasonable inferences, it may not accord her the benefit of unreasonable inferences or those "at war with the undisputed facts." Sip-Top, Inc. v. Ekco Group, Inc., 86 F.3d 827, 830 (8th Cir.1996) quoting Marcoux v. Van Wyk, 572 F.2d 651, 653 (8th Cir. 1978) and Schneider v. Chrysler Motors Corp., 401 F.2d 549, 555 (8th Cir. 1968), cert. dismissed by 439 U.S. 801 (9178). A reasonable inference is one which may be drawn from the evidence without resort to speculation. Sip-Top, Inc., 86 F.3d at 830. Put another way, while the Court must give credence to the evidence favoring the nonmovant, it must also consider evidence supporting the moving party that is uncontradicted and unimpeached. Wilson v. Brinker International Inc., 382 F.3d 765, 770 (8th Cir. 2004).

The parties stipulated about the personnel impact of a PSA: the PSA is not the rating of record and cannot serve as the basis for salary changes, promotions or other performance-based

employment actions under civil service law. Agreed Ex. 1 at 11.[2] The parties also stipulated that, at the time of the June 1999 PSA, Turner had served only seven months of the three year minimum creditable service required before she would be eligible for her next WIGI. Agreed Ex. 1 at 12. The reasonable inferences that the jury could draw from this stipulated evidence and other undisputed evidence are (1) when Turner got the June 1999 PSA, she was not eligible for a WIGI because she had just gotten one in November 1998 and had to serve until November 2001 before she was eligible for another one; (2) when she got the June 1999 "Minimally Acceptable" PSA, it had no negative financial impact because a PSA cannot be used to deny a salary increase and Turner wasn't eligible for one in June 1999 anyway; (3) getting or not getting a WIGI depends on an employee's current Performance Appraisal Report (PAR), not a PSA, and based on all of the evidence we saw, her latest PAR in April 2000 was "Fully Successful;" (4) the April 2000 "Fully Successful" PAR would have qualified her for a WIGI if she still had that "Fully Successful" PAR rating in November 2001; (5) the salary chart on Turner (Defendant's Ex. 94) shows that she didn't get a WIGI in November 2001; and (6) there must be another reason, aside from the June 1999 "Minimally Acceptable" PSA and the April 2000 "Fully Successful" PAR, that the Court and the attorneys aren't telling us about to explain why this happened. The jury's finding of lost wages and an adverse employment action with respect to the June 1999 PSA cannot be sustained as a matter of law on the evidence of record. When the record contains no

---

[2] See also 5 C.F.R. § 430.203 (defining "appraisal period," "performance rating," "progress review," and "rating of record"); 5 C.F.R. § 531.402 (defining "acceptable level of competence" and "waiting period"); 5 C.F.R. § 531.404(a) (earning within-grade increase based on most recent rating of record); 5 C.F.R. § 531.405 (a)(iii) (length of waiting period required above step 7 level); and 5 C.F.R.§ 531.409(b) (acceptable level of competence determination for WIGI increase based on current rating of record).

proof beyond speculation to support the verdict, judgment as a matter of law is appropriate. Sip-Top, Inc., 86 F.3d at 830.

**B. Under Burlington Northern and prevailing Eighth Circuit precedent, the June 1999 PSA does not constitute and adverse action.**

Plaintiff's adverse action argument under Burlington Northern and Sante Fe Railway Co v. White, – U.S. – , 126 S.Ct. 2405 (2006) rests on a truncated reading of the holding in that case. Pl. Mem. at 17-20. The Supreme Court's did determine that a challenged action is materially adverse if it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination. Defendant does not contest that Burlington Northern is controlling. Plaintiff, however, overlooks the analytical framework for applying that standard, as set forth by the Court.

The Supreme Court pointed out that the anti-retaliation provision of Title VII does not protect an employee from all retaliation; only that which "produces an injury or harm." Burlington Northern, – U.S. –, 126 S. Ct. at 2414. [M]aterial adversity" is required to make a case of retaliation in order to "separate significant from trivial harms" and make clear that a complaint of discrimination "cannot immunize that employee from those petty slights or minor annoyances that often take place at work and that all employees experience." Burlington Northern at 2415 (emphasis added). The Court directed that analysis of material adversity proceeds under an objective, reasonable employee standard, not that of "a plaintiff's unusual subjective feelings," i.e., the proverbial eggshell plaintiff. Id. This reduces to a two-step standard: (1) "the materiality of the challenged action" and (2) "the perspective of a reasonable person in the plaintiff's position." Burlington Northern at 2416.

Consequently, the impact of the June 1999 "Minimally Acceptable" PSA is not measured

simply by how any "reasonable worker" would respond. The Supreme Court was firm that "[c]ontext matters":

> A schedule change in an employee's work schedule may make little difference to many workers, but may matter enormously to a young mother with school age children. . . . A supervisor's refusal to invite an employee to lunch is normally trivial, a nonactionable petty slight. But to retaliate by excluding an employee from a weekly training lunch that contributes significantly to the employee's professional advancement might well deter a reasonable employee from complaining about discrimination.

Burlington Northern at 2415-16 (citations omitted). The examples provided by the Court establish that some specificity in the analysis is required. It's not any employee's schedule change; it's the schedule change for the working mother with child care responsibilities. It's not any lunch with the supervisor; it's the substantive training lunch with the supervisor. Following the Supreme Court's examples, therefore, the material adversity of the June 1999 PSA is measured by how a reasonable person in plaintiff Turner's position would view it. Plaintiff, in opposing JOML, took the Burlington Northern standard only halfway.

Under the Supreme Court's standard, the June 1999 PSA does not constitute a material adverse action. At the time of the PSA, Turner was a senior FBI agent familiar with FBI policy and procedures. All FBI agents know that 90-day file reviews of their pending investigations are a fact of life as an agent and they are accountable at file review time for the work they've done (or not done) over the preceding 90 days. Like all agents, Turner had gone through numerous file reviews and, as of 1999, had received at least twenty annual PARs and numerous PSAs since the FBI started that practice in the early 1990s. A reasonable worker in plaintiff's position, i.e. an FBI agent of several years' tenure, would not regard a less-than-satisfactory file review/PSA as a deterrent to filing a complaint of discrimination. The agent's more likely response would be

a dismissive, "It's just a file review" or "Guess I'd better get on the stick with my cases," especially if (like Turner) that agent had neglected investigative work and reporting deadlines during the file review period.

Given the limited number of post-Burlington Northern 8th Circuit cases construing adverse action, it is instructive to consider one of plaintiff's cited cases, Murry v. Gonzales, 2006 U.S. Dist. LEXIS 60935 (M.D. Fla. 2006). As Murry points out, the Eleventh Circuit has applied a standard similar to Burlington Northern for quite some time. See e.g., Gupta v. Florida Board of Regents, 212 F.3d 571 (11th Cir. 2000); Doe v. DeKalb County School District, 145 F.3d 1441 (11th Cir. 1998). In Murray, the district court found that no reasonable employee would find that a lower-rated quarterly progress report was "materially adverse." Murry, Slip Copy at 9. In both Murry and plaintiff Turner's case, the quarterly progress report and the 90-day file review/PSA "do not impact any aspect of her employment" and "are merely one tool the immediate supervisor uses to prepare the annual evaluation." Id.

The remainder of plaintiff's attempt to attach some materiality to the PSA is unavailing. Neither the August 1999 PSA or the November 1999 PAR played any role in the November 2001 WIGI determination and, as discussed previously, it would be an unreasonable inference for this jury to conclude so. Although the November 1999 PAR was a rating of record, that fact does not signify that the November 1999 rating was (or even could be) used to support a WIGI determination in 2001, two PAR appraisal periods later. The jury found that the December 1999 "punitive" transfer was not retaliatory; consequently, plaintiff's argument that the June 1999 PSA somehow caused the transfer is without merit. The Fitness-for-Duty (FFD) evaluations that Turner underwent at the FBI's direction in February 2001 and October 2001 were not at issue as

adverse actions supporting plaintiff's retaliation claim after the Turner v. Gonzales remand. Moreover, the FFD evaluations are too remote in time relative to the June 1999 PSA to be "piggybacked" causally and so transform the PSA into a material adverse action. And finally, plaintiff's "cumulative effect" argument to show an adverse action (Pl. Mem. at 28-30) speaks to damages, not materiality.

**C. The weight of the evidence does not support the causal connection necessary to find retaliation.**

Plaintiff asserts that "Ms. Turner gave compelling and unrebutted testimony that her performance was superior in the June-December 1999 time frame"and also "presented considerable additional evidence that, throughout the latter half of 1999, she continued to do the excellent work she had always done." Pl. Mem. at 31-32. See also Pl. Mem. at 15-16. All that testimony and evidence goes to establish the sequence of events or what she was working on after the file review period which the June 1999 PSA covered. As defendant argued in its memorandum of law, plaintiff never confronted head-on and rebutted with specifics the testimony and exhibits defendant presented to show why she received the "Minimally Acceptable" PSA for the file review period. See Def. Mem. at 12-14. Indeed, as plaintiff argues (Pl. Mem. at 33), the Eighth Circuit said that the timing of the June 1999 PSA strongly supports as inference of causation. However, coincident timing is not everything and it does not excuse a plaintiff from proving by a preponderance of the evidence that a defendant's proffered reason for the employment action is not the true reason and that discrimination or retaliation is. Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 256 (1981). See also Weeks v. Brunswick Corporation and Life Fitness, 2007 U.S. Dist. LEXIS 5561 (D. Minn.) at *21-23 (no retaliation, rejecting plaintiff's contention that causal connection is "obvious" based on timing

and that three disciplinary reports are a "trumped-up story, lies and forgery"); Wallace v. Sparks Health System, 415 F.3d 853, 860 (8th Cir. 2005) (no retaliation where plaintiff has not shown discharge was pursuant to an inconsistent policy or treatment different from other employees similarly situated in all relevant respects); Harris v. Secretary of the Department of the Army, 119 F.3d 1313, 1319 (8th Cir. 1997) (retaliation claim rejected where plaintiff provides no rebuttal evidence to Secretary's specific reasons for lower rating).

Moreover, the fact that Ms. Turner constructed her case "[m]indful of Desert Palace" and provided testimony from Onstead, Hochhalter, and Morley about Turner's general performance in 1998-1999 is equally unavailing. In the jury instruction conference, defendant successfully argued that this case was not a mixed-motive case under Desert Palace and the Court struck the instructions accordingly. Tr. 554-556. As the Eighth Circuit observed and defendant argued (Def. Mem. at 13), as non-FBI employees, these witnesses would have no knowledge of FBI internal investigative deadlines and reporting requirements.

**IV. Judgment as a matter of law for defendant is necessary to prevent manifest injustice.**

It is undisputed that defendant did not file a written memorandum of law during trial to support his JMOL motions. Despite this, the twin policy purposes of Rule 50(a)(2) were met, as argued, supra., at 1-6. Where the specific grounds for JMOL are not set forth when the Rule 50 (a)(2) motion is made, the district court may nevertheless grant judgment as a matter of law and have that decision upheld on appeal if judgment for the moving party is required to prevent manifest injustice. Walsh v. National Conputer Systems, Inc., 332 F.3d 1150, 1158 (8th Cir. 2003) relying on Cruz v. Local Union No. 3 of the Int'l Bhd. Of Elec. Workers, 34 F.3d 1148, 1155 (2nd Cir. 1994). Manifest injustice occurs when "the verdict is totally without legal

support" and this forms one basis for an exception to Rule 50's requirements. Catlett v. Local 7370, 69 F.3d 254, 259 n. 6 (8th Cir. 1995).

The jury here awarded plaintiff $60,000 in lost wages and $505,000 in compensatory damages (which the Court remitted to the statutory maximum of $300,000). As this memorandum has demonstrated, the June 1999 PSA was not a materially adverse action. It was a 90-day progress review based on Turner's (lack of) work during the file review period. The PSA as a matter of civil service law could not be (and was not) used by the FBI to deny Turner a salary increase, a bonus or merit award, a promotion (if she had sought one), or any other performance-based employment action. Although plaintiff presented witnesses who praised her work generally, she presented no evidence to suggest, let alone show, that she had completed the civil rights/police brutality and public corruption investigations and reports in a timely and complete manner. There was no evidence to show that Welken treated her any differently than other agents on the squad with respect to these unique cases.

It is a long-standing principle that, where evidence supporting the legal elements of a claim are lacking, it is manifest injustice to allow a verdict to stand. See Schaffer v. Wilkes, 65 F.3d 115 (8th Cir. 1995)(in a legal malpractice case, judgment in favor of money order business owner against his lawyers found to be unfair, unjustified and not supported by the evidence; basis for malpractice claim was lawyers' alleged failure to file breach of contract suit against bank; evidence showed business owner breached contract with bank and thus could not have won breach of contract suit if one had been timely filed); United States v. 353 Cases of Mountain Valley Mineral Water, 247 F.2d 473 (8th Cir. 1957)(in condemnation case, government's technically-flawed Rule 50(a) motion granted and jury verdict for claimants vacated where

technical oversight in motion did not mislead either the trial court or opposing counsel; under evidence at trial and applicable law, water misbranded and bottle labels did not meet Food and Drug Administration requirements); United States v. Harrell, 133 F.2d 504 (8th Cir. 1943) (judgment for leaseholders could not be sustained against government's technically-flawed Rule 50 motion in the absence of evidence from which jury could determine value of the leases; leases not introduced into evidence and question of lease values rested entirely upon jury's speculation).

As in Schaffer, it appears the Turner jury reached its verdict based on speculation or emotion rather than the evidence. Having awarded Turner lost wages, it is clear that the jury did not truly understand the total lack of relevance the June 1999 PSA held for plaintiff not receiving a WIGI two and a half years later. This award can only be based upon speculation, contrary to the parties' stipulated evidence. It is also apparent that the jury did not understand what plaintiff was required to show to disprove the FBI's explanation for the "Minimally Acceptable" June 1999 PSA and expose it as pretext for retaliation. The weight of plaintiff's evidence addressed her work all around that 90-day file review period: her work in 1998 on Froistad and her work on the White Owl, Rodney Charette and John Vigestad cases – all of which arose after the file review period in late June 1999 and through the remainder of 1999.

The verdict and the damages award strongly shows – in the face of the evidence and the governing law – that the jury was persuaded by the emotional appeal of a veteran female FBI agent who aggressively pursued pedophiles. The first words Turner spoke to the jury were that she was the mother of a twelve year old child. Tr. 106. This fact, coupled with the Court's many instructions to plaintiff's counsel to try the retaliation lawsuit, indicate that plaintiff and

her counsel knew she could not successfully disprove the investigative negligence which led to the June 1999 PSA. The jury's damages award shows that the jury emotionally chose to reward plaintiff's doggedness in prosecuting pedophiles and ignored her neglect of police brutality and public corruption cases.

**Conclusion**

For these reasons and the argument previously advanced by defendant, the February 9, 2007 judgment for plaintiff on the issue of a performance downgrade should be vacated and, pursuant to Fed. R. Civ. P 50(b), judgment as a matter of law should be entered for defendant. In the alternative, a new trial should be ordered.

Dated: March 23, 2007

Respectfully Submitted,

MATT. M. DUMMERMUTH
United States Attorney

S/Martha A. Fagg
MARTHA A. FAGG
LAWRENCE D. KUDEJ
Assistant United States Attorneys
600 4th Street, Suite 670
Sioux City, Iowa 51101
Telephone: (712) 255-6011
Fax: (712) 252-2034
martha.fagg@usdoj.gov
Larry.kudej@usdoj.gov

COLLEEN B. GRZEŚKOWIAK
Special Assistant United States Attorney
935 Pennsylvania Avenue, N.W.
Room PA-400 North
Washington, DC 20535
Telephone: (202) 220-9311
Fax: (202) 220-9355
Colleen.Grzeskowiak@IC.fbi.gov

CERTIFICATE OF SERVICE

I certify that I mailed/hand delivered a copy of the foregoing document to which this certificate is attached to the parties or attorneys of record, shown below, on September 16, 2005

UNITED STATES ATTORNEY

BY:s/ Michelle Schwebach

COPIES TO:

Stephen Kohn
Attorney at Law
3233 P Street, NW
Washington, D.C. 20007