UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA
01-CV-1407 (JMR/FLN)

| | |
|---|---|
| JANE A. T. TURNER,<br>Plaintiff,<br><br>v.<br><br>ALBERTO GONZALES, *et al*.,<br>Defendant. | PLAINTIFF JANE TUNER'S MOTION FOR AWARD OF ATTORNEYS' FEES AND COSTS |

**PLAINTIFF'S PETITION FOR ATTORNEYS' FEES AND COSTS**

On February 5, 2007 the Court entered a judgment in favor of the plaintiff, Jane Turner. In accordance with 42 U.S.C. § 1988(b), Local Rule 54.3 and this Court's Order dated March 9, 2007, counsel for Ms. Turner hereby submits her petition for attorney's fees and costs and requests that the Court issue an order requiring Defendants to pay plaintiff's counsel the amounts requested herein.

**STATEMENT OF THE CASE AND FACTUAL SUMMARY**

This case involved protracted and complex litigation concerning an employee of the Federal Bureau of Investigation ("FBI") who alleged retaliation in violation of Title VII of the Civil Rights Act of 1964, after she opposed discriminatory practices under that Act. *Turner v. Gonzales*, 421 F.3d 688, 692 (8th Cir. 2005). Exhibit 1, Affidavit of James H. Gilbert, ¶¶ 13, 17 and 22. The undersigned counsel has represented Ms. Turner in this case for over five years. *See*, Ex. 2, Affidavit of Stephen M. Kohn, ¶ 2; Ex. 3,

Affidavit of Robert Hill, ¶ 1.

On October 9, 2001 Ms. Turner retained the law firm of Kohn, Kohn & Colapinto, LLP ("Kohn firm") to assist in representing her in this matter. (Kohn Aff., ¶ 2), Ex. 2 At the time she had other counsel, but these attorneys had informed Ms. Turner that they intended to withdraw from her case.[1] (Turner Aff. ¶¶ 5, 11 Ex. 4). The Kohn firm had been recommended to Ms. Turner by a former FBI agent who had prevailed in a claim against the Bureau. (Turner Aff. ¶¶ 8, Ex. 4).

After her prior counsel withdrew from the case, the Kohn firm agreed to serve as lead counsel in the above-captioned litigation. The law firm of Hill & Associates (the "Hill firm") agreed to become local counsel on April 19, 2002, (Hill Aff. ¶ 1 Ex. 3) and both firms entered a formal appearance in this case on June 4, 2002.

The protracted and complex nature of this case is well established on-the-record. (Gilbert Aff., ¶¶ 7, 13), Ex. 1. For example, even before the case was filed in federal court, the FBI produced tens of thousands of pages of documents relevant to the claim as part of the internal EEO investigation. After the case was filed in federal court, the FBI produced an additional 10,000 pages of discovery. The documents were not dated, stamped or indexed. (Kohn Aff., ¶ 48), Ex. 2. In federal court, the FBI identified over twenty witnesses in their initial disclosure, and thereafter filed extensive discovery, including subpoenas to all of Ms. Turner's doctors, other document requests and

---

1 Ms. Turner's former attorneys were Klimaski and Associates and the firm of Metcalf,

interrogatory requests. The parties conducted numerous pre-trial depositions.

Moreover, the FBI vigorously contested every aspect of the case. They required Ms. Turner to submit detailed justifications simply to obtain the testimony of the Assistant United States Attorney witnesses from North Dakota. Their initial summary judgment motion exceeded the page limitations imposed by the local rules and included 77 sworn affidavits or other exhibits. Their re-filed summary judgment motion also included numerous exhibits and affidavits, and was at the maximum allowable page length.

After losing at the Court of Appeals, they filed for rehearing. Although the Court of Appeals ordered the FBI to pay some of the costs of the appeal, the FBI simply ignored that order. (Kohn Aff., ¶ 46), Ex. 2. Mediation was not successful. The case was eventually tried before a jury, and the parties participated in extensive pre-trial negotiations which resulted in both a detailed factual stipulation and stipulated-witness testimony.

In all of the pre-trial proceedings the FBI was represented by at least two attorneys (the lead Assistant U.S. Attorney and the in-house attorney). At trial, the FBI was represented by three attorneys. Ms. Turner's counsel extensively utilized the services of law clerks to supplement the work of the lead attorney and local counsel. (Kohn Aff. ¶¶ 19-22 Ex. 2)

---

Kaspari, Howard, Engdahl& Lazarus, P.A ("MKHE&L").

Over the past five years, counsel for Ms. Turner represented their client in all phases of this prolonged litigation, including:

* Pre-trial discovery and factual investigations conducted in North Dakota, Minneapolis and Washington, D.C.;

* Numerous depositions, including depositions of third parties, a psychologist, Assistant U.S. Attorneys, the head of a local Sheriff's organization, a BIA supervisor and various retired or active duty FBI employees;

* Medical discovery and expert psychological testimony

* Filing an amended complaint

* Litigation of a complex summary judgment proceeding

* Appellate litigation, including a complete appeal on the merits of the summary judgment ruling, oral argument and the filing of a petition for rehearing;

* Extensive pre-trial proceedings (including agreements between counsel regarding factual stipulations, the stipulation of deposition-trial testimony and the filing of motions in limine);

* A jury trial;

* Numerous trial exhibits – all of which were scanned for more effective presentation;

* The plaintiff's utilization of "moot court" simulations in order to present her case in an effective and efficient manner to the jury;

* The utilization of "power point" for the opening and closing arguments of plaintiff;

* Extensive post-trial filings, including motions for new trial and JNOV by the FBI;

* Participation in a court-ordered settlement mediation.

In accordance with section 1988, Ms. Turner is a "prevailing party." Specifically, this case was tired on the merits before a jury between January 25, 2007 and February 1, 2007. On February 5, 2007, the jury returned with a verdict awarding Ms. Turner $565,000.00 in damages. Dkt. 133. The damage award exceeded the statutory maximum allowable award for compensatory damages. Former Minnesota Supreme Court Justice James H. Gilbert, who was familiar with the facts of this case, acknowledged the successful job Ms. Turner's counsel performed in this matter. (Gilbert Aff., ¶ 22), Ex. 1.

In accordance with 42 U.S.C. § 1988, Ms. Turner is entitled to payment of her attorney fees and costs.

## ARGUMENT

Plaintiff's counsel has fully satisfied the legal standard for entitlement to an award of attorneys' fees and costs under 42 U.S.C. § 1988, which provides that "a court may exercise its discretion in awarding the prevailing party attorney's fee and costs." *Bailey v. Wood*, 708 F.Supp. 249, 250 (8th Cir. 1989) citing *Hensley v. Eckerhart*, 461 U.S. 424, 436-37 (1983). Moreover, the prevailing party should recover for all hours reasonably

devoted to the case. *Martin v. Hancock*, 466 F.Supp. 454, 456 (D.Minn. 1979). The Eight Circuit pointedly stated that the "recovery of attorneys' fees pursuant to § 1988 is the rule, not the exception." *Bailey*, 708 F.Supp. at 250.

The Eighth Circuit has further affirmed the necessity of properly compensating counsel at competitive rates to both vindicate the Congressional purpose underlying the fee shifting statutes and in order to deter illegal behavior by defendants:

> In providing for attorney fee awards in civil rights cases, Congress intended to 'promote diffuse private enforcement of civil rights laws by allowing the citizenry to monitor rights violations at their source, while imposing the costs of rights violations on the violators.'

*Emery v. Hunt*, 272 F.3d 1042, 1046 (8th Cir. 2001) (quoting *Casey v. Cabool*, 12 F.3d 799, 805 (8th Cir. 1993)). Compensating the Hill and Kohn firms at a full and reasonable market rate, "would serve the intent behind Congress' enactment of the Civil Rights Attorney Fee statute, in that it would encourage other attorneys to represent civil rights plaintiffs whose cases were economically undesirable, yet whose claims had merit." (Gilbert Aff. ¶ 24, Ex. 1)

As the prevailing party, Jane Turner obtained an exceptional victory both for herself, and for the promotion of civil rights. (Gilbert Aff. ¶ 22, Ex. 1). This successful outcome merits a high degree of compensation. *See Warnock v. Archer*, 397 F.3rd 1024, 1026 (8th Cir 2005). Such a success overshadows any argument that her compensation should be less because she did not prevail on every theory put forth. *Emery v. Hunt*, 272 F.3d 1042, 1046 (8th Cir. 2001) ("the plaintiff may be compensated for time spent on the

unsuccessful claims that were related to the successful claims," if the claims related to a "common core of facts" or were "based on related legal theories." (quoting *Hensley*, 461 U.S. at 435, 440)).

This success was made possible in large part due to the experience and skill of Ms. Turner's counsel. (Gilbert Aff. ¶¶ 13, 17, 22-23 Ex. 1) Their skillful navigation and perseverance through this difficult and highly complex litigation demonstrates their entitlement to compensation at the requested rates. Furthermore, this lengthy legal battle for the vindication of Ms. Turner's rights should be viewed as a whole, and she should be compensated for all stages which preceded her ultimate victory. *See Comm'r, INS v. Jean*, 496 U.S. 154, 162 (U.S. 1990).

In light of Ms. Turner's success, and pursuant to the controlling statutory and case law, the amount of fees and costs requested are reasonable as set forth below and in the accompanying materials and affidavits. Specifically, the Kohn and Hill firms seek to be compensated at the rates deemed reasonable by former Minnesota Supreme Court Justice James Gilbert. *See* (Gilbert Aff. ¶¶ 19-21, Ex. 1)

## I. THE APPLICATION OF THE LODESTAR METHOD

The appropriate method for computing statutory attorneys' fees under Title 42 § 1988 is the lodestar method. The lodestar method requires that the number of hours reasonably expended in litigation be multiplied by a reasonable hourly fee. *Fish v. St. Cloud State University*, 295 F.3d 849, 851 (8th Cir. 2002); *City of Burlington v. Dague*,

505 U.S. 557, 559 (1992); *Hensley*, 461 U.S. at 424. When determining the reasonable number of hours and the reasonable hourly rate the court should be mindful of the plaintiff's degree of success in the case and the relevant "*Johnson* factors."[2] *Hensley* 461 U.S. at 434-435; *see also Griffin v. Jim Jamison*, 188 F.3d 996, 1997 (8th Cir. 1999) (holding that the court should look at relevant *Johnson* factors in addition to the amount of the award.)

**A. Reasonable Hourly Rate**

Under the lodestar method, a reasonable hourly fee charged in advancement of the litigation is determined by the prevailing market. *Blum v. Stenson*, 465 U.S. 886, 895 (1984). In *Houghton v. Sipco*, the Court held that "the burden is on the fee applicant to produce satisfactory evidence- in addition to the attorney's own affidavits- that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." 828 F.Supp. 631, 641 (8th Cir. 1993). In the context of Section 1988, it was contemplated that the court would look at comparably skilled lawyers who engage in similarly complex litigation, such as antitrust. *Hensley*, 461 U.S. at 430. However, if the plaintiff is unable to obtain counsel

2 "(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." *Hensley* 461 U.S. at 430 n. 2 (citing *Johnson v. Georgia Highway Express, Inc.* 488 F.2d 714, 717-719 (5th Cir. 1974)).

within the community in which the case is being tried, then, "the court is not limited to the local hourly rate, if the plaintiff has shown that, in spite of diligent, good faith efforts, he was unable to find local counsel able and willing to take the case." *Emery* 272 F.3d at 1048 (citing *Avalon Cinema Corp. v. Thompson,* 689 F.2d 137, 140-141 (8th Cir. 1982)). Even if local counsel could have been found, it is still appropriate to award higher rates to out-of-state attorneys if their experience in a pertinent legal field leads to greater efficiency. *Planned Parenthood v. Miller*, 70 F.3d 517, 519 (8th Cir. 1995).

Furthermore, if the litigation is lengthy and protracted, then the reasonable hourly rate for the whole of the litigation should be determined by the current market rates, not the historic rates. *Houghton,* 828 F.Supp. at 641 ("Federal courts have frequently awarded current rates for all work performed on a case rather than historical rates.") This practice serves to accommodate for inflation and for the loss of interest resulting from this delay in payment. *Id*; *Pennsylvania v. Delaware Valley Citizens' Council,* 483 U.S. 711, 716 (1987) ( "[W]hen plaintiff's entitlement to attorney fees depends on success, their lawyers are not paid until a favorable decision finally eventuates, which may be years later…Meanwhile, their expenses of doing business continues and must be met."). Therefore, where counsel shows that there has been a significant delay in payment, and where the nature of the litigation is contingent, the court should base this award on current rates rather than historical rates. *See Standley v. Chilhowee R-IV Sch. Dist.,* 5 F.3d 319, 325 (8th Cir. 1993).

**B. Reasonable Expenditure of Hours**

Once a reasonable hourly rate has been determined, the Court can then look at the reasonable expenditure of hours on the case excluding any "excessive, redundant, or otherwise unnecessary" hours. *Houghton*, 828 F.Supp. at 639 (8th Cir. 1993) (quoting *Hensley*, 461 U.S. at 433-434. Hindsight, however, is not the appropriate perspective to be used in judging the reasonableness of expended hours. Rather, the Court should determine whether, "**at the time the work was performed**, a reasonable attorney would have engaged in similar time expenditures." (emphasis added) *Grant v. Martinez*, 973 F.2d 96, 99 (2nd Cir. 1992).

Neither should the Court limit a fee award to only one attorney. It is well established that:

> Where more than one attorney represents the prevailing party, the contribution of all attorneys must be taken into consideration and the fees awarded should reflect the efforts of all, at least to the extent that the time reported does not reflect duplication of effort or work that would be performed by nonlawyers. *A.J. ex rel. L.B. v. Kierst*, 56 F.3d 849, 863-864 (8th Cir. 1995) (quoting *Reynolds v. Coomey*, 567 F.2d 1166, 1167 (1st Cir. 1978)).

Also, in cases where a party has retained new counsel to replace the initial attorney, it is appropriate to award fees to both past and present counsel.[3] *See The Sisseton and*

---

3 In the event that there is significant duplication of effort, "who should bear the costs of the duplicate work depends on the circumstances surrounding the change in counsel." *Polen v. Melonakos*, 222 Mich. App. 20, 30 (Mich. Ct. App. 1997). In cases such as *Sisseton*, where the original attorney unjustly and voluntarily withdrew as counsel, courts have drastically reduced the original attorney's share in the fee award. *See also Louima v. City of New York*, 2004 U.S. Dist. Lexis 13707 260-275 (D.N.Y. 2004) (weighing the significance of work performed by two firms

*Wahpeton Bands or Tribes v. The United States*, 191 Ct. Cl. 459 (1970) ("Where several attorneys have, at different times, appeared for claimants, their fees will be apportioned on the entry of judgment in proportion to the value of their services to the claimants" (quoting *Beddo v. United States*, 28 Ct. Cl. 69 (1893)). Furthermore, the hours of work expended by law clerks and legal assistants are compensable, and should be included in the fee award. *Gunderson v. W.R. Grace & Co. Long Term Disability Income Plan*, 874 F.2d 496, 501 (8th Cir. 1989).

An application to the present case of the aforementioned legal principles governing fee awards demonstrates that the fee amount requested by the Plaintiff is entirely reasonably and should be granted in full.

---

in determining share of fee where one firm voluntarily withdrew from representation.) Such a method of fee distribution is also in line with consideration of the degree of success and the Johnson factors in determining the lodestar amount.

## II. THE DEGREE OF SUCCESS IN LITIGATION AND THE *JOHNSON* FACTORS SUPPORT THE REQUESTED FEE.

### A. JANE TURNER OBTAINED EXCELLENT RESULTS

Ms. Turner's high degree of success heavily weighs in support of fully compensating Ms. Turner's counsel for all of fees and costs incurred in the course of this matter. It is firmly established that "'the most critical factor' in determining a reasonable fee award" is the degree of success obtained. *Warnock v. Archer*, 397 F.3rd 1024, 1026 (8th Cir 2005) (citing *Farrar v. Hobby*, 506 U.S. 103, 114-115 (1992)). It is also firmly established that when an attorney has "obtained excellent results" for his client, the attorney should recover a "fully compensatory fee" and that the fee "should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit." *Emery v Hunt*. 272 F.3d 1042, 1047 (8th Cir. 2001) (quoting *Hensley*, 461 U.S. at 436.)

Under a Title VII employment discrimination action, the maximum compensatory damage award that can be granted is $300,000.00. 42 USCS § 1981a. After a drawn out and contentious litigation, Ms. Turner was granted this maximum award. She has thus achieved the highest possible degree of compensatory damages allowable under law. Of more importance to Ms. Turner, however, was the degree of success she obtained in restoring her professional reputation. She has also helped pave the way for other FBI agents to seek recourse in the courts when retaliated against for exposing injustice in within the agency. In light of her triumph, Ms. Turner's success should be considered

exceptional and consequently she should recover a fully compensable fee. (Gilbert Aff. ¶ 22, Ex. 1). If the Kohn and Hill firms are not compensated at a fully reasonable market rate, then it would become "very difficult for another FBI agent to obtain similar representation." (Gilbert Aff. ¶15, Ex. 1).

Ms. Turner's high degree of success is the factor that weighs most heavily in determining the reasonableness of attorney fees. Therefore, Ms. Turner's success entitles her to full payment for all reasonable attorney fees and costs at the "reasonable" market rate as set forth by the affidavits submitted on behalf of the Kohn and Hill firms. (Gilbert Aff. ¶¶ 8, 19-21 Ex. 1); (Carlson Aff. ¶ 18, Ex. 17)

**B. THE "JOHNSON FACTORS" SUPPORT THE FEE REQUESTED BY PLAINTIFF'S COUNSEL**

A review of the relevant "*Johnson* factors" also weighs heavily in favor of granting Turner's fee request. *Shultz v. Amick,* 955 F.Supp 1087, 1110 (N.D. Iowa 1997) ("The Eighth Circuit of Appeals agrees that these factors 'should be used'" (quoting *McDonald v. Armontrout,* 860 F.2d 1456, 1459 (8th Cir. 1988)); *Johnson v. Georgia Highway Express*, 488 F.2d 714, 717-19 (5th Cir. 1974). The "*Johnson* factors" give the Court some guidelines to consider when setting the market rate and deciding the reasonableness of the fee requested by the Plaintiff. An analysis of the "*Johnson* factors", as applied to Ms. Turner's case, support the reasonableness of the fees and costs as set forth in this petition:

1. The time and labor involved: A significant amount of time and labor was devoted to strategizing and approaching the complexity of the issues presented in Ms. Turner's case. This time and labor was necessary to successfully maneuver through the prolonged pretrial phase of the case, and to ultimately succeed at trial. This case involved many time and labor intensive tasks, such as conducting pre-trial discovery and depositions, full litigation of a summary judgment motion, filing an amended complaint, reviewing tens of thousands of pages of documents provided by the FBI, an appeal of an adverse summary judgment ruling to the Eight Circuit, extensive factual stipulations and stipulations related to trial testimony, a detailed factual investigation into the merits of the claim, a jury trial, and the drafting of responses to post-trial motions. *Accord.*, (Gilbert Aff. ¶¶ 7, 11, 13, Ex. 1)

2. The novelty and difficulty of the questions: The novelty and difficulty of the questions raised in this case are attested to by the initial award of summary judgment, the subsequent remand for a new trial, and a decision by the Supreme Court towards the end of litigation which further clarified the scope of adverse action in Title VII retaliation cases. *See Burlington Northern & Santa Fe Ry. v. White,* 126 S. Ct. 2405, 2415 (U.S. 2006). This change in law required Ms. Turner to develop and successfully propose a jury instruction based on the new Supreme Court decision. Furthermore, Ms. Turner's claims required the analysis of FBI documentation, multiple concurrent timelines of critical events, and the understanding of a large bureaucracy in order to decipher and properly analyze the narrative of events and develop an appropriate legal strategy. Furthermore, this case required the plaintiffs to meet a difficult standard of proof by demonstrating intent on the part of the FBI as part of their case-in-chief. (Gilbert Aff. ¶11, Ex. 1)

3. The skill requisite to perform the legal service properly: The high level of skill necessary in this case is attested to by the Defendant's own use of three attorneys at trial, two attorneys during depositions, and the production of boxes and boxes of discovery material. The Defendant's unlimited legal resources could only be matched by attorneys capable of overcoming significant odds by performing at a high level of proficiency. Furthermore, this case consisted of an appeal of summary judgment and a trial on the merits, which required attorneys with experience and adeptness at both the trial and appellate level.

In light of the circumstances surrounding this case, Ms. Turner needed to hire experienced counsel who could effectively represent her interests in difficult and complex litigation in order to carefully conduct research and prepare for all contestation. (Gilbert Aff. ¶ 23 Ex. 1). Thus Ms. Turner was more than reasonable in retaining as her counsel two veteran attorneys with over twenty years of practice in complex civil litigation. Because the issues involved, and the vast legal resources of the defendant, inexperienced attorneys could not have properly litigated this case and achieved a comparable degree of success. . (Gilbert Aff. ¶ 22, Ex. 1) .

4. <u>The preclusion of other employment by the attorney due to acceptance of the case</u>: As a result of her representation, Ms. Turner's counsel was precluded from assuming other fee-paying clients. (Kohn Aff. ¶ 10 Ex. 2). The Hill law firm was also precluded from working on cases of fee-paying clients. (Hill Aff. ¶ 12 Ex. 3)

5. <u>The Customary fee</u>: Plaintiff's counsel has submitted affidavits with this petition that confirm the reasonable market fee rate for the work performed on such cases is set at $500.00 per/hour for Stephen Kohn, $450.00 per hour for Robert Hill, $ . (Gilbert Aff. ¶¶ 19-21 Ex. 1). These fees requested by the Kohn and Hill firms are "well within the reasonable market rates for attorneys in Minneapolis area with similar backgrounds and experience" who are "capable of effectively litigating complex and difficult matters." Gilbert Aff. ¶ 23 Ex. 1). The fees are also justified on the basis of a detailed survey of

attorney fee rates in the Minneapolis area. (Carlson Aff. ¶¶ 5-19, Ex. 17) (Gilbert Aff. ¶¶ 19-21, Ex. 1).

6. Whether the fee is fixed or contingent: Ms. Turner could not afford the representation of Kohn, Kohn & Colapinto or Robert Hill & Associates as a fee-paying client. Only through a contingent fee-type agreement, in which the attorneys agree to obtain compensation at market rates for all of the time in which they reasonably spent representing their client, can an employee such as Ms. Turner obtain adequate representation. Although the case law no longer allows for a fee enhancement due to the contingent nature an attorney's representation, the Courts may clearly weigh the contingency nature of a representation agreement to be considered as a factor in setting the fee rate. *See City of Burlington v. Dague*, 505 U.S. 557, 564-565 (U.S. 1992). The contingency nature of the Kohn and Hill firm's representation of Ms. Turner also substantially increased the undesirability of this case by requiring "substantial monetary and time commitments, up front." (Gilbert Aff. ¶ 13, Ex. 1). In this case, given the prolonged nature of the proceeding, the long delay in payment of fees and costs, and the difficulty in finding willing counsel this Court should award the full lodestar amount requested by the Plaintiff.

7. The time limitations imposed by the client or the circumstances: The time constraints and commitments presented by this case, combined with its protracted nature and the necessity to both fully brief summary judgment and an appeal, precluded the Kohn

and Hill firms from representing other paying clients. (Kohn Aff. ¶ 10 Ex. 2,) (Hill Aff. ¶ 12 Ex. 3).

8. The amount involved and the results obtained: This factor weighs heavily in favor of the plaintiff's fee request. Monetarily, Ms. Turner obtained the highest result permissible in an employment discrimination case against the government. As reflected in the trial testimony, however, this case also focused on a principle greater than the pecuniary reward. Ms. Turner's professional reputation in the law enforcement community had been significantly damaged because of the actions taken against her by the FBI in 1999. Consequently, the jury vindication was as significant (or even more significant for her long-term self-image) as was the damage award. On both counts Ms. Turner obtained exceptional results. (Gilbert Aff. ¶ 22, Ex. 1).

9. The experience, reputation and ability of the attorney: Kohn, Kohn & Colapinto is nationally recognized as being a superior firm with particular acuity in the area of employment retaliation. (Kohn Aff. ¶ 7 Ex. 2). Unquestionably, "inexperienced practitioners could not" have "effectively defend[ed] or prosecute[d]" this case. (Gilbert Aff. ¶ 22 Ex. 1) ("it is clear that counsel did an outstanding job representing Ms. Turner in a highly contested and complex proceeding"); (Gilbert Aff. ¶ 23 Ex. 1).

Ms. Turner's decision to retain the Kohn firm was reasonable and the firm's reputation in employment retaliation law weighs in favor of paying the Kohn firm at their full market rate.

10. The undesirability of the case: Ms. Turner's case was "extremely undesirable." *See* (Gilbert Aff. ¶ 7, Ex. 1) The case presented numerous difficult and time-consuming issues. The opponent in this matter, the FBI, is also highly undesirable to the private bar due to their "substantial resources and a reputation for litigation and appeals." (Gilbert Aff. ¶ 11, Ex. 1). The undesirability of the case is further evidenced by the fact that Ms. Turner's original attorneys would not agree to represent her during the difficult and costly federal court proceeding. (Gilbert Aff. ¶ 12, Ex. 1). After Ms. Turner's original attorney withdrew she contacted two other firms recommended to her by FBI agents. Both firms declined to represent her because they were not willing to take up the cost and time commitments necessary to prevail against the FBI. (Turner Aff. ¶ 6, Ex. 4)

Furthermore, the client faced many personal hardships, could not afford to pay for many of her out-of-pocket costs, and certainly not her attorney's full hourly fees at reasonable market rates. The Defendants aggressively litigated her claim at every stage of the proceeding and raised numerous issues which substantially increased the costs and undesirability of the case.

11. The nature and length of the professional relationship with the client: Counsel has represented Ms. Turner for over five years. Ms. Turner's lawyers' continuous representation of Ms. Turner, during all phases of this proceeding and despite Ms. Turner's having initially lost before the District Court, and despite Ms. Turner not being

able to even cover the out-of-pocket costs incurred during the trial, demonstrates the strong professional relationship and commitment between the client and her counsel.

12. Awards in similar cases: As has been set forth in the affidavits of Nikki Carlson and Hon. James Gilbert, the Kohn and Hill firms' request for fees is clearly within the range of fees paid to other attorneys with similar backgrounds, experience and success in litigation. (Gilbert Aff. ¶¶ 19-21 Ex. 1); (Carlson Aff. ¶¶ 18-19, Ex. 17)

The requested fees are also in line with the *Laffey* matrix (Exs. 19, 20) which constitutes the rates normally paid for attorneys who litigate cases against the federal government under fee shifting statutes such as 42 U.S.C. 1988 by the U.S. Attorneys Office for the District of Columbia. *See Smith v. District of Columbia, 466 F. Supp. 2d 151, 156* (D.D.C. 2006); *Salazar v. District of Columbia*, 123 F. Supp. 2d 8, 14 (D.D.C. 2000).

**III. THE FEES REQUESTED ARE REASONABLE**

In light of the degree of Ms. Turner's success and the relevant *Johnson* factors, Plaintiff's counsel seeks to recover attorneys' fees at the following rates: $ 500.00 per hour for Stephen Kohn firm; $450.00 per hour for Robert Hill; $ 227.00 per hour for Kohn firm associates (Aaron Parness and Sarah Michaelchuck); $192.00 per hour for Kohn Paralegals (Marshall Chriswell and Jason Perkey); and $ 158.00 per hour for the Kohn firm's law clerks. The fees requested by Ms. Turner's counsel are consistent with the rates charged by attorneys in Minneapolis, Minn. who possess similar degrees of

experience and skill in conducting prolonged and complex litigation. (Gilbert Aff. ¶ 23 Ex 1.); (Carlson Aff. ¶ 18-19 Ex. 17). It is well settled that "fees awarded under §1988 be governed by the same standards which prevail in other types of equally complex Federal litigation, such as antitrust cases...." *Casey v. City of Cabool*, 12 F.3d 799, 805 (8th Cir. 1993) (quoting S.Rep. No. 1011, 94th Cong., 2d Sess. 5 (1976); *Hensley* 461 U.S. at 430, *reprinted in* 1976 U.S.C.C.A.N. 5908, 5913.) A survey of antitrust lawyers in the Minneapolis area reveals that the average fee for an attorney with over twenty years of experience is $501.43 per hour (median is $500.00), the average fee for associate attorneys with less than one year of experience $226.82 per hour (median is $200.00), the average fee for paralegals $191.44 per hour (median is $195.00), the average fee for law clerks are $158.33 per hour (median is $170.00). (Carlson Aff. ¶ 18, Ex. 17)

While the requested fees are consistent with those charged in the Minneapolis market, Ms. Turner was completely reasonable to retain out-of-state attorneys from Washington, D.C., especially in light of the fact that the Kohn firm has a national practice in employment retaliation law, had extensive experience representing FBI agents in claims against the Bureau and that national standards were applicable to the claims. *See Torgeson Unum Life Ins. Co. of America* 2007 U.S. Dist. Lexis 9332 at *20-21 (D. Iowa 2007); *Planned Parenthood v. Rounds*, 2006 U.S. Dist. LEXIS 47723 at *11 (D.S.D. 2006) ; *see also Planned Parenthood Sioux Falls Clinic v. Miller*, 70 F.3d 517, 519 (8th Cir. 1995).

The D.C. Courts accept a default attorney fee table, known as the *Laffey* rates, as sufficient evidence of the reasonable hourly rate for D.C. lawyers litigating claims under section 1988. *See Covington v. District of Columbia*, 57 F.3d 1101, 1108 (D.C. Cir. 1995). The *Laffey* rates were first established in 1983, and were accepted by the D.C. Courts because of the "barrage" of documentation used to support their reflection of the local market. *Laffey v. Northwest Airlines*, 572 F. Supp. 354, 371 (D.D.C. 1983). They have since been adjusted yearly to account for the rise in inflation using two main methods.[4] Under the "Updated Laffey Matrix," The reasonable rate in 2007 for an attorney with over 20 years experience is $614.00 per hour. (Ex. 19) Under the *Laffey* matrix compiled by the U.S. Attorneys Office for the District of Columbia, the reasonable rate in 2007 for an attorney with over 20 years experience is $425.00 per hour. (Ex. 20) Due to the complexity and difficulty of this case, the Kohn firm would ask for the higher "Updated Laffey Matrix" rates if this case was tried in the District Court of Washington D.C.

---

4 For 2007, the U.S. Attorney's Office for D.C. concedes to a rate of $425.00 per hour for an attorney with over 20 years of experience basing their adjustments on the city-wide Consumer Price Index for D.C. *Smith*, 466 F. Supp. 2d at 156. However, the private bar has rejected the U.S. Attorneys office's formulation, and contends that DOJ's application of the city-wide Consumer Price Index significantly undervalues the change in market attorneys rates since 1983. An alternative Laffey matrix was prepared by private counsel using the nation-wide Consumer Price Index for Legal Services. *Id.* At least two U.S. District Courts have applied the alternative "Updated" matrix finding that the methods used to adjust for inflation were more reliable than those used by the U.S. Attorney's Office. *Id.; Salazar*, 123 F. Supp. at 14. A copy of the "Updated Matrix" is attached as Ex 19 and a copy of the DOJ matrix is attached as Ex. 20.

Significantly, the record establishes that the Minneapolis rates applicable to this case are consistent with the default-rates applied by the U.S. Attorneys Office in the District of Columbia, and the D.C. District Courts for civil rights claims. Thus, on the basis of the affidavits set forth and filed with this petition, and the survey of attorney fee rates conducted by the Hill Firm, this Court should set the attorney fee rate for work performed on the *Turner* case in the following manner[5]:

| | |
|---|---|
| Stephen Kohn | $500.00 per hour |
| Robert Hill | $450.00 per hour |
| KKC Associates (Aaron Parness & Sarah Michaelchuck) | $227.00 per hour |
| KKC Paralegals (Marshall Chriswell, Jason Perkey) | $192.00 per hour |
| KKC Law Clerks | $158.00 per hour |

## IV. THE WORK PERFORMED AND THE TIME EXPENDED WAS REASONABLE

A review of the day-to-day time expended on Ms. Turner's case and the complete record of the case, demonstrates that the hours submitted by the Kohn and Hill firms were not only reasonable but essential to the vindication of Ms. Turner's civil rights.[6] Ms.

5 Each of the attorney-experts correctly set the Kohn firm pay scale for its work in this case at its current market rate. It is well established that the hourly rate awarded in a fee petition should reflect rates in effect at the time the fee is established, rather than those in effect at the time the service were performed. *Missouri v. Jenkins*, 491 U.S. 274, 282-84 (8th Cir. 1989).

6 The documentation contained in the Kohn and Hill firms' affidavits properly set forth the date, time and duration necessary to complete each of the activities listed in the petition. *Hensley* at

Turner's counsel properly billed for their time related to investigating her claim, conducting written discovery, preparing for hearings, participating in hearings, conducting depositions, participating in the appellate proceedings and oral argument, briefing matters before the District Court and the Court of Appeals, fully complying with the rigorous pretrial order set by the District Court, attempting to reach settlement and conducting a trial on the merits. The hearing and pleadings record in this case shows that each of the papers filed in this case were necessary, and no action was taken that was not fully reasonable. The Kohn and Hill firms also properly utilized technology available in the courtroom to facilitate its presentation. Furthermore, extraordinary care was taken to avoid any duplicitous or redundant efforts that may result when multiple attorneys are employed.

Overall, as set forth in the time sheets filed by Stephen Kohn and Robert Hill (Ex. 3A, Ex. 24) time was reasonably expended by counsel for Ms. Turner in the following general categories:

1) Legal research;[7]

2) Investigations and witness interviews;[8]

3) Participation in pre-summary judgment District Court proceedings;[9]

---

437 n. 12 ("plaintiff's counsel, of course, is not required to record in great detail how each minute of his time was expended. But at least counsel should identify the general subject matter of his time expenditures.")

7 In re Bankamerica Corp. Secs. Litig., 228 F. Supp. 2d 1061, 1065 (D. Mo. 2002)

4) Participation in Court of Appeals proceedings;[10]

5) Participation in post-appeal District Court proceedings;[11]

6) Conducting discovery;[12]

7) Trial preparation;[13]

8) Travel;[14]

9) Participation in settlement discussions;[15]

10) Extensive merits-based briefings at the summary judgment and appellate phases of the case;[16]

11) Moot court preparations;[17]

12) Client consultations;[18]

13) Participating in the trial on the merits;[19]

14) Preparing this fee petition.[20]

---

8 *Id.*
9 *INS*, 496 U.S. at 161-162
10 *Id.*
11 *Id.*
12 *Diehm v. City of Omaha*, 2006 U.S. Dist. LEXIS 17147 at *6 (D. Neb. 2006).
13 *Id.*
14 *Craik v. Minnesota State Univ. Bd.*, 738 F.2d 348, 350 (8th Cir. 1984).
15 Although those discussions did not result in a settlement, it was reasonable for counsel to attempt to reach a settlement. *Farrell v. Twin Bros. Meats, Inc.*, 889 F.Supp. 189, 193 (E.D. Pa. 1995).
16 *INS*, 496 U.S. at 161-162
17 *Riter v. Moss & Bloomberg, Ltd.*, 2000 U.S. Dist. LEXIS 14470 (D. Ill. 2000) ("The court finds that a moot court practice session is a reasonable use of time.").
18 *Swope v. Bratton*, 1982 U.S. Dist. LEXIS 12643 at *7 (D. Ark. 1982).
19 *Id.*
20 *Jones v. MacMillan Bloedel Containers, Inc.*, 685 F.2d 236, 239 (8th Cir. 1982) ("It would be

The hours expended in each of these areas of work performed were reasonable and clearly necessary for the proper representation of Ms. Turner. (Kohn Aff. ¶¶ 20-32, Ex. 2). The court should thus compensate Ms. Turner for the hours counsel spent in connection with these tasks.

While Ms. Turner did not prevail on every theory of recovery (i.e. the retaliatory transfer and/or discovery on the initial sex discrimination claims), the excellent results obtained on the substantially related theories militates against the reduction of reasonable hours. *Hensley,* 461 U.S. at 435 ("Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee. The result is what matters."); *Jenkins v. State of Missouri,* 127 F.3d 709, 716 (8th Cir. 1997) ("if the plaintiff has won excellent results, he is entitled to a fully compensatory fee award, which will normally include time spent on related matters on which he did not win.").

In this case, Ms. Turner's claim concerning the retaliatory transfer was intertwined with the performance review allegations. Specifically, because the transfer itself was based on an alleged "loss of effectiveness," the two issues were completely inseparable. In fact, although the jury did not find that Mr. Domin's decision to transfer Ms. Turner was onto itself retaliatory, that decision could not have been effectuated but for the poor

---

inconsistent with the purpose of the Fees Act to dilute a fees award by refusing to compensate the attorney for the time reasonably spent in establishing and negotiating his rightful claim to the fee." (*quoting Lund v. Affleck*, 587 F.2d 75, 77 (1st Cir. 1978)).

performance ratings. In other words, the transfer was a result of the retaliatory performance reviews. Furthermore, this theory was raised in good faith, and counsel would have been remiss in their duties if they failed to pursue this theory during litigation.

In regard to the underlying sex discrimination claims, current counsel for Ms. Turner spent very little time in discovery on these matters, and did not extensively brief these issues in the summary judgment or appellate proceedings. The overwhelming majority of work in the underlying discrimination claims was performed by Ms. Turner's prior counsel, Atty. Jim Klimaski. Atty. Klimaski has or will file a separate petition.

Although the underlying sex discrimination claims were not directly litigated in this matter, Ms. Turner was under an evidentiary obligation to demonstrate that her initial complaints and her opposition to the discriminatory practices were reasonable. *Gilooly v. Mo. Dep't of Health & Senior Servs*., 421 F.3d 734, 742 (8th Cir. 2005); See jury instruction 2. Such a showing was necessary to demonstrate that she had engaged in the protected activity which was the target of the FBI retaliatory actions. *Id.* The FBI did not stipulate to the fact that Ms. Turner's initial complaints about sex discrimination (i.e. her 1998 complaint) were protected until the middle of the trial. The FBI never stipulated to the fact that Ms. Turner engaged in protected activity during the 1999 time frame. The FBI's failure to stipulate that Ms. Turner engaged in protected activity was the direct cause for Ms. Turner's counsel need to expend time on the underlying sexual harassment claims.

Consequently, it was reasonable for Ms. Turner's counsel to spend the amount of time they did spend on these issues.

The Plaintiff is fully aware of the Supreme Court's ruling in *Hensley* in which the Court recommended that counsel make a "good faith effort" to exclude from a fee request hours that were "excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 434. In this regard, Robert Hill deducted approximately 100 hours from his fee request for work done by other lawyers in his firm, and himself, which he felt were unnecessary. (Hill Aff. ¶ 8 Ex. 3). Stephen Kohn also deducted any hours performed by attorneys, paralegals, and law clerks which were duplicative or non-productive, as well as many of the numerous small phone or personal conversations engaged by support staff in relation to this case. (Kohn Aff. ¶ Ex. 2)

The firms excluded from its accounting any time which a law firm would not normally bill a client. (Kohn Aff. ¶¶ 33-34, Ex. 2) ((Hill Aff. ¶ 8, Ex. 3)

Furthermore, the Kohn and Hill firms implemented a division of labor on this case in order to properly litigate the numerous complex issues presented, delegating resources efficiently to avoid unnecessarily duplicative efforts. The Kohn and Hill firms also carefully examined the records of Atty. Klimaski to avoid duplicating his pretrial efforts. In this regard, the Klimaski firm represented Ms. Turner in proceedings before the Equal Employment Opportunity Commission. The Kohn and Hill firm's were able to utilize the record created before the EEOC in significantly reducing the amount of hours they worked

on this case. For example, the Kohn and Hill firm's extensively relied upon affidavits and depositions obtained during the EEOC phase, and did not need to duplicate those efforts. Likewise, the Kohn and Hill firms were able to rely upon the EEO investigatory record and documents produced during the EEO proceedings in order to represent Ms. Turner during the federal court phase of this case. (Kohn Aff. ¶ 29, Ex. 2)

**V. Ms. Turner's Costs for Prior Representation**

Prior to retaining Attys. Kohn and Hill, Ms. Turner expended $33,397.98 in attorney's fees and costs while represented by Atty. Klimaski. (Turner Aff. ¶¶ 14-17, Ex. 4). Much of this cost was related to prior administrative proceedings. Under Title VII, the attorney fees and costs for administrative proceedings before recourse to Federal Court are also compensable. *New York Gaslight Club v. Carey*, 447 U.S. 54, 71 (1980). As Ms. Turner has already paid Atty. Klimaski for these services, she requests that the $33,397.98 be paid directly to her as reimbursement. Atty. Klimaski will be filing a separate fee petition outlining the reasonableness of his efforts on behalf of Ms. Turner. Ms. Turner has no objection to the Klimaski firm being paid its full reasonable fee under section 1988, but only requests that the amount of fees and costs pre-paid to Klimaski be directly reimbursed by the FBI to Ms. Turner. (Turner Aff. ¶ 28 Ex. 4)

**VI. CALCULATION OF THE LODESTAR AMOUNT**

Counsel has thus far justified the hourly rate requested as appropriate, and hours requested as reasonably expended. The final step in the attorney fee calculation is the simple task of multiplying the hours reasonably expended by the appropriate rate.[21]

The lodestar amount for the instant case is as follows:

**ATTORNEY'S FEES**

| Attorney | Hours | Rate Per Hour | Lodestar |
|---|---|---|---|
| S. Kohn | 1174.63 | $ 500.00 | $587,315.00 (Ex. 24) |
| R. Hill | 380.75 | $ 450.00 | $172,315.78 (Hill Aff. ¶16, Ex. 3) |
| KKC Associates | 552.73 | $ 227.00 | $125,469.71 (Ex. 24) |
| KKC Paralegals | 487.81 | $ 192.00 | $93,659.52 (Ex. 24) |
| KKC Law Clerks | 1660.41 | $ 158.00 | $262,344.78 (Ex. 24) |
| **TOTAL:** | | | **$ 1,241,104.79** |

## VIII. THE SUBMITTED COSTS ARE REASONABLE

21 There is no ceiling on the amount of statutory attorney's fees recoverable, and the fee award need not be proportionate to the damages awarded. *Riverside v. Rivera*, 477 U.S. 561, 580 (1986) (upholding an award of **attorneys' fees** for $ 245,456.25 for plaintiffs who had received a jury award of $ 33,350); *see also Bridges v. Eastman Kodak Co.* 102 F.3d 56 (7th Cir. 1996) (upholding an awrd of **attorneys' fees** for $753,202.99 for Title VII plaintiffs who were awarded damages of 117, 429.27.)

In addition to the reasonable attorney fees, the plaintiff is also entitled to reimbursement for the costs incurred by her counsel and herself in relation to the litigation. 42 U.S.C. § 1988(b). Such costs would consist of the "reasonable out-of-pocket expenses incurred by an attorney which normally would be charged to a fee-paying client," and are "includable in a statutory award of fees." *Goss Int'l Corp. v. Tokyo Kikai Seisakusho, Ltd.,* 2004 U.S. Dist. Lexis 10164 (D. Iowa 2004) (citing *Pinkham v. Camex, Inc.,* 84 F.3d 292, 294-95 (8th Cir. 1996). Included in these costs are such items as "costs for long distance telephone calls, facsimiles, messenger and express mail, as well as reasonable travel expenses." *Id.* Costs also include reasonable expert witness fees. 42 U.S.C. § 1988(c)

Costs are *not* limited to the types of costs specified in 28 U.S.C. § 1920,[22] but include the following types of costs for which Ms. Turner and her counsel request reimbursement:

Expert witness fees[23]

Travel[24]

Photo copies[25]

---

22 "It is well-settled that section 1988 allows for the recovery of certain costs in addition to the six categories listed in 28 U.S.C. § 1920 because these costs are within the meaning of the term 'reasonable attorney's fee.'" *Baker v. John Morrell & Co.,* 263 F. Supp. 2d 1161, 1206 (D. Iowa 2003).
23 *Id.*
24 *Kelly v. Bowen*, 862 F.2d 1333, 1336 (8th Cir. 1988).
25 *Id.*

Witness Fees[26]

Witness Travel[27]

Meals[28]

Hotel fees for witnesses[29]

Hotel fees for counsel[30]

The Kohn and Hill firms also employed the services of Nikki Carlson who was hired in Minnesota to assist them with trial preparation by organizing mock trials and preparing presentations. (Carlson Aff. ¶ 20 Ex. 17). She also conducted surveys of reasonable fees in the Minneapolis area. (Carlson Aff. ¶ 5, Ex. 17). She was compensated at a reasonable rate normally paid to paralegals in the Minneapolis/St. Paul area. *See Confederated Tribes of Siletz Indians of Oregon v. Weyerhaeuse,r* 2003 U.S. Dist. LEXIS 25830 at *7-9 (D. Or. 2003). The costs of Ms. Carlson's services were billed to the Kohn firm, and are listed in Exhibit 18. The Kohn firm currently owes Ms. Carlson $23,595.00 in costs for her services.

Jane Turner incurred numerous out-of-pocket costs in connection with this litigation. (Turner Aff. ¶¶ 14-29, Ex. 4). Her costs included the following: $30,750.00 in

---

26 *Van Cleve v. Soc'y of St. Vincent De Paul*, 2005 U.S. Dist. LEXIS 17314 at *15 (D. Iowa 2005).
27 *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 2005 U.S. Dist. LEXIS 4362 at * 36 n. 19 (D.N.Y. 2005)
28 *In re Xcel Energy, Inc.*, 364 F. Supp. 2d 980, 1000 (D. Minn. 2005).
29 *Arbor Hill*, 2005 U.S. Dist. LEXIS 4362.
30 *Van Cleve*, 2005 U.S. Dist. LEXIS 17314 at *15.

fees paid to Jim Klimaski (Ex. 5); $1251.01 in fees paid to MKHE&L (Ex. 6); $543.76 in Travel expenses for Atty. Klimaski (Ex. 7); $853.00 for plane tickets for Atty. Klimaski (Ex. 8); $657.13 for postal charges (Ex. 10); $857.15 for copy charges (Ex. 11); $2395.28 for phone charges (Ex. 12); $5658.13 in travel related charges (Ex. 13); $1,103.74 for expenses incurred at trial (Ex. 14); $4,182.50 for deposition costs (Ex. 15); $6,968.00 for an MRI (Turner Aff. ¶ 26, Ex. 23); $2212.50 for expert witness Dr. Carter (Ex. 25); $1920.00 for per diem expenses of KKC employees during trial (Turner Aff. ¶ 29 Ex. 22); and $2500.00 for depositions taken during administrative proceedings (Turner Aff. ¶ 30). The total of these costs is

In addition to the costs directly paid by Ms. Turner, both the Hill and Kohn firms advanced costs in this matter. The Hill firm advanced a total of $978.28 in travel related costs. (Hill Aff. ¶17, Ex. 3; Ex. 3A). The Kohn firm advanced a total of 36,630.60 in costs. These costs related to matters which are normally billed to the Kohn firm's clients, such as expert witness fees, deposition fees, copy costs, travel costs and postage costs. It does not include West Law fees. (Kohn Aff. ¶¶ 45-47, Ex. 2).

## IX. TOTAL OF REASONABLY INCURRED COSTS AND EXPENSES

The following is a summary of the costs and expenses the Plaintiff reasonably incurred in this case:

| | |
|---|---|
| Costs advanced by the Kohn firm | $ 36,630.60 |
| Costs advanced by the Hill firm | $978.28 |

| | |
|---|---|
| Costs incurred by Turner | $ 61,852.41 |
| Costs owed to Nikki Carlson | $23,595.00 |
| **Total Costs** | **$123.056.29** |

## X. POST-JUDGMENT INTEREST

Pursuant to 28 U.S.C. 1961(a): "Interest shall be allowed on any money judgment in a civil case recovered in a district court… calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment." Ms. Turner therefore requests that the Court award her (and her counsel) interest at this rate from the date this Court enters its order awarding fees and costs though and including the date that she and her counsel receive their full award of fees and costs.

## CONCLUSION

For the foregoing reasons, Plaintiff, through counsel, requests that his counsel be awarded all of their reasonable attorneys' fees and costs associated with this case. Additionally, Ms. Turner should be directly awarded a reimbursement for all of his reasonably incurred out-of-pocket expenses. Accordingly, Plaintiff's counsel should be directly awarded the following fees and costs:

1. $ 1,068,789.00 in attorney fees directly awarded to the Kohn firm
2. $ 171,337.50 in attorney fees directly awarded to the Hill firm;

3. $60,225.60 in costs incurred directly by the Kohn firm (including the Carlson costs);

4. $ 978.28 in costs incurred directly by the Hill firm;

5. $61,852.41 in attorney fees and costs incurred directly by Jane Turner.

As set forth in the proposed order, each of the firms identified above should be awarded their respective fee and cost reimbursement, and the FBI should be ordered to directly reimburse Jane Turner for her direct costs and the fees she previously paid to the Klimaski/MKHE&L firms.

Respectfully submitted,

__/s/_ Stephen M. Kohn___

Stephen M. Kohn
KOHN, KOHN & COLAPINTO, LLP
3233 P Street, N.W.
Washington, D.C. 20007-2756
Phone: (202) 342-6980
Fax: (202) 342-6984

Attorneys for Plaintiff

Dated: April 4, 2007