**THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MINNESOTA**
**Fourth Division**

| | |
|---|---|
| **JANE A. T. TURNER,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**ALBERTO GONZALES,**<br>**ATTORNEY-GENERAL,**<br>**U.S. DEPARTMENT OF JUSTICE, *et al.,***<br><br>**Defendants.** | **Civil No. 01-CV-01407 JMR/FLN** |

# MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF JANE TURNER'S APPLICATION FOR ATTORNEY'S FEES AND COSTS TO KLIMASKI & ASSOCIATES, P.C., AND METCALF, KASPARI, HOWARD ENGDAHL & LAZARUS, P.A.

Plaintiff Jane Turner respectfully submits this memorandum of points and authorities in support of her application for attorney's fees and costs for the law firm of Klimaski & Associates, P.C., (Klimaski & Associates).

An award of attorney's fees and costs to Klimaski & Associates is appropriate. The law firm represented Ms. Turner at the administrative stage of the her case for sexual discrimination and harassment against the Federal Bureau of Investigation (FBI) and filed her complaint in the federal court for the District of Minnesota. The firm's work contributed substantially to Ms. Turner's court case, including investigation and discovery.

# I. STATEMENT OF FACTS AND PROCEDURAL HISTORY.

At the close of trial in this court, the jury returned a verdict for Ms. Turner on February 5, 2007, and the Court entered judgment on her behalf on February 9, 2007, on her claims of sexual discrimination and sexual harassment against the Federal Bureau of Investigation (FBI). By winning the trial, Ms. Turner became a "prevailing party," justifying an award of attorney's fees and costs.

In March 1, 2000, Ms. Turner retained Klimaski & Associates, located in Washington, D.C., to represent her on the sexual discrimination, sexual harassment and retaliation claims she filed against her employer, the Federal Bureau of Investigation (FBI). Ms. Turner hired the firm because she could not find an attorney in North Dakota, where she lived and worked, with experience in such cases, particularly actions involving the federal government.

Klimaski & Associates prepared and filed Ms. Turner's second and third administrative complaints. The FBI counsel assigned to this case worked in the Washington, D.C., headquarters. The law firm actively participated in the FBI's investigation of Ms. Turner's complaint, which the FBI conducted out of its Washington, D.C., office.

Klimaski & Associates also investigated the case and conducted discovery. The Agency produced over ten thousand pages of discovery during the administrative phase of Ms. Turner's case. Ms. Turner provided many more documents to counsel. Counsel

interviewed numerous witnesses by telephone and in person in North Dakota and Minnesota.

Ms. Turner requested a hearing with the Equal Employment Opportunity Commission. However, after settlement negotiations failed, the firm advised Ms. Turner to withdraw the hearing request and file her case in federal court.

By this time, the FBI transferred Ms. Turner to its Minneapolis, MN, office. The appropriate federal court was the District of Minnesota. Klimaski & Associates hired local counsel Kathryn Engdahl and her firm, and timely filed the complaint August 8, 2001. The FBI answered the complaint. Further settlement efforts followed, but were unsuccessful.

At this time, Ms. Turner identified herself as a whistle blower concerning FBI activities. The National Whistle Blower Center (Center) in Washington, D.C., represented her on this matter. The Center then took over representation on the Title VII claims and Klimaski & Associates withdrew from active participation in the case on April 3, 2002.

All work Klimaski & Associates performed advanced and constituted the basis for Ms. Turner's Title VII case in court

## III. STATUTORY AUTHORITY FOR GRANTING ATTORNEY'S FEES AND COSTS.

Title VII provides for an award of attorney's fees and costs under 42 U.S.C. § 2000e-5(k), which states:

> In any action or proceeding under this title ... the court, in its discretion, may allow the prevailing party ... a reasonable attorney's fee ... as part of the costs ... and the United States shall be liable for costs the same as a private person.

## IV. ARGUMENT.

### A. Standard for Granting Fees.

Ms. Turner is a prevailing plaintiff, have received a jury verdict in her favor after a trial on the merits of her case.

When a plaintiff prevails under Title VII, she is entitled to reasonable attorney's fees and costs pursuant to 42 U.S.C. § 2000e-5(k). Hanig v. City of Rapid City, 415 F.3d 822, 825 (8th Cir. 2005). The court calculates the fees by determining the "lodestar," multiplying the number of hours reasonably expended by a reasonable hourly rate. Hensley v. Eckerhart, 461 U.S. 424, 433 (1983); Hanig at 415 F.3d 825; Fish v. St. Cloud State Univ., 295 F.3d 849, 851 (8th Cir. 2002). This amount is usually "a floor below which fees awards do not go." Avalon Cinema Corp. v. Thompson, 689 F.2d 137, 139 (8th Cir. 1982).[1]

---

[1] The Eighth Circuit has adopted the twelve factors enunciated in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717-19 (5th Cir. 1974), for determining attorney's fees. Zoll v. Eastern Allamakee Community School District, 588 F.2d 246, 252 (8th Cir. 1978; Westerndorp v. Independent School District No. 273, 131 F. Supp.2d 1121 (D. Minn. 2000).

The court considers these factors after determining the lodestar. In Avalon Cinema , the court further explained:

> I f these factors lead the court to change the basic or lodestar figure, usually (but not always) the change will be an increase.

**B. Request for Out-of-State Rates.**

The law firm of Klimaski & Associates is located in Washington, D.C. The firm has specialized in employment law, representing plaintiffs only, for over 30 years. At the time Ms. Turner retained Klimaski & Associates, she resided in North Dakota and could not find any attorneys in that state who could represent her in her sexual discrimination and harassment suit.

Avalon Cinema addressed awarding out-of-town attorneys higher rates than those in the locality where the case took place. The court there stated:

> This does not mean that out-of-town counsel must always be limited to lower local rates. It may not always be possible to find counsel in or near the locality of the case who are able and willing to undertake difficult and controversial civil-rights litigation. If "a plaintiff can show he has been unable through diligent, good faith efforts to retain local counsel, attorney's fees under 84 U.S.C. § 1988 are not limited to the prevailing rate in the district where the case is tried.

689 F.2d at 140-41.

In Spencer v. Comserv Corporation, No. 4-84-794, 4-84-882, 4-85-283, 1986 U.S. Dist. LEXIS 12863 at *32-*33 (D. Minn. Dec. 30, 1986), this Court awarded higher hourly rates to a Washington, D.C., law firm. The partner who worked on the case requested his normal hourly rate of $225.00. The Spencer court noted that:

---

689 F.2d at 140. However, the court need not necessarily address "exhaustively and explicitly, in every case," all of the Johnson factors. Griffen v. Jim Jamison, Inc., 188 F.3d 996, 997 (8th Cir. 1999).

> While this rate is somewhat higher than the rates of the Minneapolis lawyers, it reflects Mr. Milstein's national experience and reputation in securities class action attorney at his hourly rate is entirely appropriate.

Id.

More recently, the court in Planned Parenthood Minnesota, North Dakota, South Dakota v. Rounds, Cv. 02-4009-KES, 2006 U.S. Dist. LEXIS 47723 at *7-*9 (D.S.D. July 7, 2006), relied upon Avalon Cinema to award higher, non-local hourly rates to out-of-state attorneys based on these attorneys' specialization in the field. The Planned Parenthood court stated:

> In addition, attorneys specializing in complex areas of the law may be entitled to a higher, non-local rate because the attorneys' familiarity with the law will enable them to handle the case in a shorter time period. See Planned Parenthood, Sioux Falls Clinic v. Miller, 70 F.3d 517, 519 (8th Cir. 1995). "To limit rates to those prevailing in a local community might have the effect of limiting civil rights enforcement to those communities where the rates are sufficient to attract experienced counsel." Casey v. City of Cabool, Mo., 12 F.3d 799, 806 (8th Cir. 1993).

The Planned Parenthood court found that the Minneapolis market, not that of South Dakota, was the appropriate locale for ascertaining the hourly rate.

The two Eighth Circuit decisions that Planned Parenthood relied upon provide further justifications for awarding out-of-town hourly rates. In Sioux Falls Clinic, the circuit court pointed out that the attorneys who handled the case "do this kind of work routinely." 30 F.3d at 519. The attorneys' "extensive experience" in the field enabled

them, said the court, to manage the case in a shorter time than could local lawyers. Therefore, the court awarded Chicago hourly fees. Id.

In Casey, the Eighth Circuit explained that another factor in calculating attorneys fees was the "relevant market involved." 12 F.3d at 805. The court further explained:

> "A national market or a market for a particular legal specialization may provide the appropriate market." ... To limit rates to those prevailing in a local community might have the effect of limiting civil rights enforcement to those communities where the rates are sufficient to attract experienced counsel. Civil rights would be more meaningful, then, in those communities (large cities) where experienced attorneys can command their customary fees. This result would be in direct contravention of the purpose of diffuse enforcement through the "private attorneys general" concept.

Id. (Citation omitted).

The considerations in the above precedent applies to the hourly fees determination for Klimaski & Associates. First, Ms. Turner retained Klimaski & Associates because she could not find any attorneys in North Dakota who could handle her discrimination claims against the FBI. Second, Klimaski & Associates specializes in employment discrimination law on both the administrative and court levels. Therefore, the firm could handle Ms. Turner's case more expeditiously and in a shorter time than local attorneys without such experience. Third, Klimaski represents plaintiffs only. These plaintiffs have included numerous federal government employees. Klimaski & Associates cannot rely upon corporate or government clients, which are more able to afford fees and costs in complicated and long-running employment cases. Fourth, Klimaski & Associates has

national experience in this field, representing clients in other states and, for military member clients, around the world.

Given these above factors, limiting Klimaski & Associates to local fee rates would, as Casey warned, contravene the private attorneys general concept inherent in attorney's fees awards. Klimaski & Associates would have to confine its civil rights practice to, as Casey stated,

"those communities where the rates are sufficient to attract experienced counsel."

The case law in this circuit and district support awarding Klimaski & Associates hourly rates based on the Washington, D.C., market.

**C. The Location of the Litigation.**

In Planned Parenthood, the court noted that:

> A reasonable hourly rate is usually the ordinary rate for similar work in the community where the case has been litigated.

2006 U.S. Dist. LEXIS 47723 at *7-*8. This rule supports the Washington, D.C., hourly rate that Klimaski & Associates requests.

The FBI conducted the administrative case out of its Washington, D.C., office, with Washington, D.C., counsel. Therefore, Ms. Turner's retaining a Washington, D.C., law firm was appropriate. Therefore, Washington, D.C., counsel was appropriate.

**D. The "Laffey Matrix."**

In the District of Columbia, the federal courts rely upon the "Laffey Matrix"[2] for hourly fee rates. The Laffey Matrix originated from the hourly rates that the United States District Court for the District of Columbia accepted in Laffey v. Northwest Airlines, Inc., 572 F.Supp. 354 (D.D.C. 1983), *aff'd in part, rev'd in part on other grounds*, 746 F.2d 4 (D.C. Cir. 1984), *cert. denied*, 472 U.S. 1021 (1985). Subsequently, the federal appeals court stated that parties may rely upon updates of the matrix by the United States Attorney's Office for evidence of hourly rates. Covington v. District of Columbia, 57 F.3d 1101, 1105 & n. 14, 1109 (D.C. Cir. 1995), *cert. denied*, 516 U.S. 1115 (1996).

The Laffey Matrix for 1992-2003 and 2003-2007 accompany this memorandum as Exhibit 2 to Mr. Klimaski's Affidavit.

**E. Consideration for Delay in Obtaining Fees.**

Klimaski & Associates requests fee rates from the current year 2006-2007 on the Laffey Matrix (Klimaski Affidavit Exhibit 2). Awarding present hourly fee rates for work performed in prior years is appropriate. As this circuit pointed out in Standley v. Chihowee R-IV School District, 5 F.3d 319, 325 (8th Cir. 1993),:

> The Supreme Court ... has recognized that under the fee-shifting provisions of 42 U.S.C. § 1988, "compensation received several years after the services were rendered ... is not equivalent to the same dollar amount received reasonably

[2] Also known as the "United States Attorney's Office Matrix."

> promptly as the legal services are performed, as would normally be the case with private billings." Missouri v. Jenkins, 491 U.S. 274, 283 (1989). The Court has noted that "in settling fees for prevailing counsel, the courts have regularly recognized the delay factor, either by basing the award on current rates or by adjusting the fee based on historical rates to reflect its present value. Pennsylvania v. Delaware Valley Citizens' Counsel for Clean Air, 483 U.S. 711, 716 (1987).

Based on this authority, the Eighth Circuit remanded the case before it to the district court to take the delay factor into account as a consideration in determining the counsel's hourly rate. This rule applies to the hourly rate that Klimaski & Associates requests.

## CONCLUSION

In light of the above, this Court should award Klimaski & Associates, and Kathryn M. Engdahl and her firm for their services as local counsel, fees and reimbursement of costs as follows:

| | Fees | Costs |
|---|---|---|
| **For Ms. Turner's case:** | | |
| Klimaski & Associates | $109,545.00 | $3,310.11 |
| Kathryn M. Engdahl | $13,755.00 | $331.54 |
| | | |
| **For Fee Petition preparation:** | | |
| Klimaski & Associates | $12,414.00 | $207.40 |
| Kathryn M. Engdahl | $2,992.50 (fees and costs, at minimum) | |

A proposed Order and Certificate of Compliance accompany this filing.

Respectfully submitted,

Date: April 5, 2007

*/s/ James R. Klimaski*
James R. Klimaski
Lynn I. Miller
Klimaski & Associates, P.C.
1819 L Street N.W., Suite 700
Washington, D.C. 20036-3830
(202) 296-5600
klimaski@klimaskilaw.com
miller@klimaskilaw.com

*/s/ Kathryn M. Engdahl*
Kathryn M. Engdahl (#163995)
METCALF, KASPARI, HOWARD
ENGDAHL & LAZARUS, P.A.
333 Parkdale Plaza, 1660 S. Highway 100
Minneapolis, MN 55416-1531
(952) 591-9444
kengdahl@metcalf-law.com