UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA
01-CV-1407 (JMR/FLN)

| | |
|---|---|
| JANE A. T. TURNER,<br>Plaintiff,<br><br>v.<br><br>ALBERTO GONZALES, *et al*.,<br>Defendant. | PLAINTIFF JANE TUNER'S REPLY TO DEFENDANTS' RESPONSE TO PLAINTIFF'S PETITION FOR ATTORNEYS' FEES AND COSTS |

**PLAINTIFF'S REPLY TO DEFENDANT'S RESPONSE TO PLAINTIFF'S PETITION FOR ATTORNEY FEES AND COSTS**

Plaintiff Jane Turner, by and through her undersigned counsel, hereby submits her Reply to Defendants' Response to her Petition for Attorneys' Fees pursuant to this Court's order of June 20, 2007, granting her leave to file a reply.

**SUMMARY OF THE ARGUMENT**

The Defendants' response is misleading both as to the facts of this case and the law regarding attorneys' fees under 42 U.S.C. §1988. The proper method for determining attorneys' fees under §1988 is the lodestar method. This method requires that the number of hours reasonably expended in litigation be multiplied by a reasonable hourly fee. *Fish v. St. Cloud State University*, 295 F.3d 849, 851 (8th Cir. 2002). Once this rate is fixed, the court may modify it based on the plaintiff's degree of success and the *Johnson* factors. *Hensley* 461 U.S. at 434-435; *Johnson v. Georgia Highway Exp., Inc.* 488 F.2d

714, 718. The *Johnson* factors, discussed more fully below in section IV, are a set of factors for setting a fee award adopted by the Eighth Circuit. *See Zoll v. Eastern Allamakee Community School Dist*, 588 F.2d 246, 252, n.11 (8th Cir. 1978).

The Defendants' opposition is without merit. First, the Defendants failed to set forth any adequate evidence to rebut the affidavit of Justice Gilbert, and other supporting evidence, concerning the reasonable rate. Second, they failed to challenge the majority of the hours requested by the Kohn and Hill Firms with specificity. Third, they failed to adequately consider the degree of success.

## ARGUMENT

### I. The Kohn Firm's Fee is Reasonable

A. <u>The Kohn Firm's Fees are Reasonable for the Community</u>

Despite the attempts of the Defendants to fix the reasonable fee as that submitted by Engdahl, the fee submitted by the Kohn Firm is reasonable and should be granted. To establish that a rate is reasonable the fee applicant must submit evidence that the fees are reasonable. *Blum v. Stenson*, 465 U.S. 886, 895 (1984). This can be established by affidavits from local attorneys about what the market rate is for work of similar complexity. *See Washington v. Philadelphia County Court of Common* Pleas, 89 F.3d 1031, 1036 (3rd Cir. 1996). Once this has been established by satisfactory evidence, the burden shifts to the defendant to demonstrate why a lower rate is appropriate. *See Spegon v. Catholic Bishop of Chicago* 175 F.3d 544, 554-555, (7th Cir. 1999). Critically, courts which have analyzed the sufficiency of a defendants' opposition to a reasonable market

rate have held that if a Defendant fails to set forth an adequate opposition, the plaintiff's rate should be awarded. *See Pressley v. Haeger*, 977 F.2d 295, 299 (7th Cir. 1992); *Washington,* 89 F.3d at 1036.

In *Washington,* a plaintiff submitted evidence in the form of affidavits from local attorneys, testifying to the market rate. *Id*. The defendant failed to challenge this with similar evidence and the Third Circuit ruled that the district court abused its discretion by awarding a rate lower than that which the plaintiff had demonstrated was reasonable. *Id*.

In this case, Ms. Turner met her burden under *Blum* and set forth evidence that established the market rate. This was accomplished by an undisputed affidavit submitted by Justice Gilbert who testified in his affidavit to being both very familiar with the litigation skills needed on this specific case and the comparable rate in the controlling market. *See* Aff. James Gilbert ¶8. In addition to Justice Gilbert's affidavit, the Plaintiff submitted the results of an exhaustive survey of rates of antitrust attorneys. Since the Defendants have failed to meet their burden and Ms. Turner has met her burden of production, this Court should accept the rates requested by Ms. Turner as appropriate.

Fees awarded under §1988 should be comparable to fees in other types of complex Federal litigation. *Hensley* 461 U.S. at 461. Specifically, legislative history requires that the fees awarded "should be equivalent to fees 'in other types of equally complex Federal litigation, such as antitrust cases'." *Id*. (Quoting Senate Report 6, U.S.Code Cong. & Admin.News 1976, p. 5913). This is important because it helps to achieve one of the goals of §1988, which is to attract competent counsel. *See Covington v. District of Columbia*, 67 F.3d 1101, 1112 (D.C.Cir. 1995). Making the rate awarded the prevailing

rate for other types of complex litigation ensures this. *Id*. In this regard the swown affidavit of Justice Gilbert is consistent with the results of a comprehensive survey of rates in comparable complex Federal litigation in the Minneapolis area. Furthermore, it is reasonable to award a higher fee to firms with a specialized practice and extensive expertise. *See Republican Party of Minn. v. White* 456 F.3d 912, 921 (8th Cir. 2006). The Kohn Firm is a specialized firm with extensive experience in the field of employment retaliation law. Aff. Stephen Kohn ¶ 5-6[1]. This special experience and expertise enabled the Kohn Firm to pursue Ms. Turner's case with special skill and efficiency. Since the rates requested by the Kohn Firm are consistent with other kinds of complex Federal litigation, and given the Kohn Firm's special expertise, the rates requested meet the standards of reasonability required by the case law.

In their response, the Defendants do not contest the accuracy of Justice Gilbert's affidavit or produce any other affidavits to rebut the testimony of Justice Gilbert.[2] Instead, they merely take the fee requested for a single firm located in Minneapolis (Engdahl) and suggest that it should be adopted as the standard. However, the Engdahl affidavit does not constitute any relevant evidence of the prevailing market rate for the type of litigation, especially of that required to prepare a case for a jury trial. On its face, the Engdahl affidavit states that $350.00 per hour is <u>her</u> current rate. It does not even allege that it constitutes any evidence of the <u>market</u> rate. The Supreme Court has

---

1 The first affidavit of Mr. Kohn was attached to the initial fee petition, as Exhibit 2

2 Not only did they not critique the rate set, they offered no rebuttal whatsoever to his qualifications, including serving as Justice of the Minnesota Supreme Court, Chair of the Judicial Merit Selection Commission and an attorney with 26 years of experience. Aff. James Gilbert ¶¶3-4

emphasized that rate should be the market rate, and it is not limited by the rate charged by a particular attorney. *See Blanchard v. Bergeron*, 489 U.S. 87, 96 (1989), *Missouri v. Jenkins by Agyei*, 491 U.S. 274, 285 (1989) ("[W]e have consistently looked to the marketplace as our guide to what is 'reasonable.'"). This is reinforced by the fact that the Supreme Court has held that paralegal services should be billed at the prevailing market rate, not at the cost to the attorney who uses them. *Jenkins by Agyei*, 491 U.S. at 287. Whatever rate Ms. Engdahl charged for her non-trial services, has no bearing on the rate appropriate to award the Kohn or Hill Firms. Under *Washington*, the Defendants simply never refuted Justice Gilbert's sworn testimony[3], which was backed up by the survey conducted by Ms. Carlson. This evidence establishes that the rate requested by the Kohn Firm is reasonable in the Minneapolis market.

B. Ms. Turner was Justified in Seeking Washington, D.C. Counsel

The FBI spent considerable time discussing whether the Kohn Firm should get rates applicable for Washington, DC or Minneapolis. However, they ignored a critical fact, that Justice Gilbert sets forth the Minneapolis rate, and the survey conducted by the Kohn Firm was limited to Minneapolis area law firms. The Kohn Firm requests this Minneapolis based rate.

In any event and in the alternative, the Kohn Firm would request that the rates be set at the updated Laffey rate. The Laffey matrix is a system that determines the rates normally paid for attorneys who litigate cases against the federal government under fee

3 The affidavit of Justice Gilbert was attached to the initial fee petition, as Exhibit 1

shifting statutes such as 42 U.S.C. 1988 by the U.S. Attorneys Office for the District of Columbia. *See Covington v. District of Columbia*, 57 F.3d 1101, 1108 (D.C. Cir. 1995). The modified Laffey rate is a rate derived from an updated version of that matrix. Should this Court find that the rate requested is not appropriate for a Minneapolis firm, the Kohn Firm would request compensation based on the regular and modified Laffey rates, as outlined in the initial fee petition.

Even if this court does not accept that the Kohn Firm's fee is reasonable for a Minneapolis firm, Ms. Turner was justified in seeking counsel in Washington, DC. If a plaintiff is unable to obtain local counsel, it is appropriate for the court to award attorneys' fees for out-of-state counsel. *Emery* 272 F.3d at 1048 (citing *Avalon Cinema Corp. v. Thompson*, 689 F.2d 137, 140-141 (8th Cir. 1982)). Ms. Turner's difficulty in obtaining counsel willing to pursue her case is well attested in her affidavit. After contacting several attorneys and having them reject her case, she found that only the Kohn Firm was willing to undertake it. Aff. Jane Turner ¶4, 6.[4] When she attempted to find substitute counsel, she was told that her case would be "too big" and that the firm she contacted could not afford to litigate a case against the FBI. Aff. Jane Turner ¶ 6. Indeed, the very fact that the Klimaski Firm would not litigate her case at trial, forcing Ms. Turner to seek substitute counsel, indicates that her case was highly undesirable and that finding counsel was incredibly difficult for her. Aff. Jane Turner ¶ 5. The Defendants do not challenge this. Instead, they merely make the assertion that she did not make

4 The affidavit of Ms. Turner was attached to the initial fee petition, as Exhibit 4

sufficient effort to locate local counsel, a statement which is directly contradicted by Ms. Turner's affidavit. Ms. Turner made repeated attempts to find local counsel, but was forced to resort to out-of-state counsel, the Kohn Firm, to handle her case.

Counsel finds it odd that the FBI would argue that Ms. Turner should have sought attorney referrals from assistant US Attorneys who were witnesses in her case and worked for the United States government. Regardless, there is no authority whatsoever that would require a plaintiff to seek attorney referrals from major witnesses in the case.

The Eighth Circuit has also held that it is appropriate to award higher fees to out-of-state counsel when the special expertise of the counsel leads to greater efficiency. *See Planned Parenthood v. Miller*, 70 F.3d 517, 519 (8th Cir. 1995). Given the scope and complexity of this litigation, Ms. Turner had ample reason to look for a firm with extensive experience in this field of litigation. The Kohn Firm has a national practice in employment retaliation law and a history of extensive experience and success in cases involving the FBI. This led to greater efficiency, since the Kohn Firm was already familiar with much of the law concerning employment retaliation cases and with the organizational challenges involved in litigating a case against the bureaucracy of the FBI.

The Defendants attempt to reject the special expertise of the Kohn Firm by pointing out that it specializes in whistleblower litigation. They establish this by looking at the firm's webpage. The Kohn Firm's webpage is an advertisement and as such represents the kind of business it is seeking, and not necessarily the kind of cases it takes or is qualified to take. The Kohn Firm is inundated with requests to represent clients in

Title VII actions and consequently does not need to advertise to find clients with Title VII cases. Second Aff. Stephen Kohn ¶10, Ex. 4.

The Kohn Firm has represented numerous clients in Title VII actions, including many actions involving government employees. Against the FBI, the Kohn Firm has represented Jorge Villanueva and Bassem Youssef in Title VII claims. *See Jorge Villanueva v. FBI*, C.A. No. 98-CV-01704 (D.D.C) (successful settlement after close of discovery and court's rejection of one motion to dismiss); *Bassem Youssef v. FBI*, C.A. No. 1:03CV01551 (CKK) (D.D.C.)(case ongoing). Other Title VII actions the Kohn Firm has conducted recently include: *Bunnatine Greenhouse v. Pete Green*, Civil Action No. 07-0182 (EGS)(D.D.C.); *Johnathan Fishbein v. Leavitt*, 120-2005-0038X (EEOC case) *Peter Brown v. Michael Chertoff*, Civil Action No. CV 406-002(S.D.Ga.); *Shelia Bloom v. Francis Harvey*, Civil Action No. 05-1804 (HHK)(D.D.C.); *Kiki Ikossi v. Gordon English*, C.A. No. 04-1392 (D.D.C); *Robin Potera-Haskins v. Geoffrey Gamble*, Cause No. CV 05-22-BU-SHE (D. Mont.); *Havens v. Vanguard Group, Inc.* CV04-2253-PHX-NVM(D.Arz). The Kohn Firm has also represented numerous clients in EEO retaliation actions, or actions under the DC Human Rights Act, including: *Doe v. Department of Justice*, EEOC No. 100-2004-00390X, *Watts v. Department of the Army*, AT-0752-04-0249 (Merit System Protection Board action alleging EEO retaliation), *Himmelfarb v. Kronstadt*, 2006-CA 0000233 B (DC Superior Court action, under DC Human Rights Act), *Phelps v. Howard University*, CA No. 4386-95 (DC Superior Court action, under DC Human Rights Act). Finally, many of the Title VII cases worked on by the Kohn Firm have been high profile. *See* Ex. 5

Furthermore, the dichotomy the Defendants try to draw between whistleblower protection and Title VII is not correct. The two practices are interrelated, and Ms. Turner had good reason to look to the Kohn Firm to assist her. The focus of the Kohn Firm in Title VII actions is on retaliation cases like Ms. Turner's. When retaliation is the issue, the legal standards for whistleblowers is similar to the standard for Title VII actions. For example, in cases under the anti-retaliation provisions of the False Claims Acts, courts have applied the standards applicable to Title VII cases. *See Mann v. Olsten Certified Healthcare Corp*., 49 F.Supp.2d 1307, 1316 n. 37 (M.D. Ala. 1999) ("Courts use the Title-VII burden-shifting method of proof in analyzing retaliation claims under federal whistleblower statutes"). Legal standards such as hostile work environment, developed in the context of Title VII litigation have been applied to whistleblower actions. *See Mitchell v. APS/ANNP*, 91-ERA-9, D&O of SOL, at 13 (April 7, 1992)(Case litigated by Kohn Firm).

The similarity of issues means that a firm that specializes in whistleblower protection can easily turn that specialization to a Title VII retaliation case. The partners of the Kohn Firm as a group, and Mr. Kohn individually, have also written about Title VII litigation and related matters, such as §1988 attorneys' fees, in their publications on Whistleblower law. For example, Mr. Stephen Kohn who wrote a book on Whistleblower law discusses Title VII retaliation extensively. *See* Kohn, *Concepts and Procedures in Whistleblower Law*, 37, 40, 80, 100, 83-86 (Chapter on Title VII Retaliation law), 84, 240-241, 244-246 (adverse action under Title VII), 263 (opposition clause analysis under Title VII), 266 (review of Title VII participation clause), 268 (discussion of *Reeves* Title

VII analysis for proving pretext), 270 (Discussion of *Saint Mary's Honor Center* standards for demonstrating pretext under Title VII) 272-274(Discussion of *St. Mary's Honor Center* Burdens of proof), 276-277 (discussion of Title VII standard for discovery including *Michael Donnell Douglas v. Green*, *Saint Mary's Honor Center*, *Duke v. University*, *Georgia Power v. EEOC*, and *University of Pennsylvania v. EEOC*) 281-282, 330-331 (damages in EEOC cases including discussion of *Albemarle Paper Company v. Moody*, calculation of bank pay awards citing to *Pettaway v. American Cast Iron Pipe Company*, and discussions of *Carey v. Piphus* and *Stallworth v. Shuler*) 346-351 (attorneys fees under 1988) 372 (Settlement agreements in Title VII cases) (Quorum 2001).

## II. The Kohn and Hill Firm's staffing levels were reasonable

The Defendants' claim that the Kohn and Hill firms overstaffed this case. However, this argument is fatally flawed by the failure of the Defendants to properly review the time records. Both the Kohn and Hill firms asserted that they exercised appropriate billing discretion not to bill for inappropriate time; they did not bill for unproductive time. Aff. Stephen Kohn ¶ 12-13, Aff. Robert Hill ¶ 13.[5]

The Defendants general objections lack the specificity required of the defendant opposing a fee petition. *See Duckworth v. Whisenant*, 97 F.3d 1393, 1397 (11th Cir. 1996); *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3rd Cir. 1990). Those hours which the Defendants have not contested with sufficient specificity should not be argued over.

5 The affidavit of Mr. Hill was attached to the initial fee petition, as Exhibit 3

The time claims made by the Kohn and Hill Firms are reasonable on their face and remain unchallenged by the Defendants' response. The staffing levels of the Kohn and Hill firms were reasonable for a complex Title VII action and were crucial to achieving a favorable result for Ms. Turner. The Defendants' also raise issues related to their staffing levels, which are irrelevant to the award of attorneys' fees. This Court should award reasonable fees for the full time the Kohn and Hill firms have billed on this case.

A. The Defendants' Generalized Accusations of Overstaffing are Erroneous and Insufficient to Challenge the Requested Hours

The Defendants do not challenge the vast majority of the time spent on this case with any specificity, instead they make general assertions that the time spent was excessive. The Defendants attempt to characterize the Kohn Firm's time as generally unreasonable, by making generic accusations of overstaffing and excessive work time. *See* Defendants' Memo at 4.

These general accusations of overstaffing and excessive work are insufficient as a matter of law. These generic and conclusory objections to time set forth in a detailed fee petition do not constitute sufficient evidence to rebut the time claimed by the plaintiff. *See Duckworth v. Whisenant*, 97 F.3d 1393, 1397 (11th Cir. 1996); *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3rd Cir. 1990). This court should ignore all claims about the appropriateness of the hours expended except those that are voiced with the same exactitude required if the plaintiff were claiming those fees. *See Duckworth* 97 F.3d at 1397.Given that the Defendants had ample time to reply and sufficiently detailed billing information from the firms involved, the Defendants have failed to adequately challenge

the time spent by counsel for Ms. Turner. Where they have challenged specific time spent, their challenges are without merit.

Moreover, in addition to the legal insufficiency of Defendants' argument, there argument also lacks factual merit. Ms. Turner's case was staffed by a number of firms because the Klimaski Firm would not pursue the case at trial. This necessitated hiring a new firm, the Kohn Firm and brought on the involvement of new local counsel, the Hill Firm. At no time was Ms. Turner represented by more than primary and local counsel. Furthermore, the involvement of the Kohn Firm never consisted of more than one senior and one junior attorney and a number of paralegals and law clerks. Although a total of three attorneys worked on the case, Ms. Michaelchuck left the Kohn Firm in 2005, before Mr. Parness began working there.[6]

While the Defendants' staffing levels are irrelevant to this consideration, it is worth noting that they staffed the case with no less than three senior attorneys, and up to four paralegals. Defendants' Memo at 10-11. At trial, Defendants had two attorneys at every deposition, while Ms. Turner staff depositions with only one attorney. Defendants had three attorneys during the entire trial, including a veteran and highly experienced Assistant United States Attorney, a highly experienced Supervisory Assistant United States Attorney, and a season litigator from the FBI's Office of General Counsel, whom the Attorney General appointed as a Special United States Attorney for the purpose of assisting in the trial of this case.

6 For the Record, Mr. Parness name is spelled "Parness" not "Parnesse"

Defendants concerns about multiple layers of lawyers and law firms is completely misplaced. The Klimaski and Engdahl Firms represented Ms. Turner in the administrative portion of the case, for which the Kohn and Hill Firms are not seeking any compensation. Klimaski/Engdahl filed the initial complaint, and thereafter their representation was primarily limited to seeking a settlement. The Kohn and Hill Firms have sought no compensation for work on the initial complaint. Additionally, Klimaski was upfront with Ms. Turner early in the representation and informed her that if they were unable to reach a settlement, the firm was unable to pursue the case through a trial. Consequently, concerns about overlapping attorneys are badly misplaced.

Additionally, under the rules of the District of Minnesota, the Kohn Firm was required to bring in the Hill Firm as local counsel to assist with the litigation of the case. Not only did the Kohn and Hill Firms carefully allocate the work between them and not double bill (significantly, the FBI has not even alleged that the firms improperly double billed for the same work). Aff. Stephen Kohn ¶ 12-13, Aff. Robert Hill ¶ 13. The participation of the Hill Firm was required under the local rule.

Aff. Stephen Kohn ¶ 12-13, Aff. Robert Hill ¶ 13.

B. Defendants' Staffing is Irrelevant

The Defendants devote a large part of their response to discussing their own staffing of the case. The proper standard is the "the number of hours reasonably expended on the litigation." *Hensley*, 461 U.S. at 433. Other than to say that it provides a "necessary backdrop," the Defendants produce nothing to support the proposition that

their staffing levels should be used to determine the proper fee award to the prevailing Plaintiff. Defendants' Memo at 8.

Defendants make assertions about their staffing levels and allege that their staffing levels set forth some sort of "necessary background." Once again, the FBI's analysis is critically and fatally flawed. Since they failed to produce their own time records. There is no evidence to which to compare the time spent by the Kohn Firm. They set forth nothing about how much time they put into this case. If the Defendants felt that any particular time spent on this case was unreasonable, they could use their own time records to indicate so. They do not do so, and they do not actually use any evidence of their time spent on this case to show that the Kohn Firm's staffing levels were unreasonable.

Finally, it is established that plaintiffs might need to spend more time or devoted more resources than defendants in a civil rights case. *See Craik v. Minnesota State University Board*, 738 F.2d 348, 349 (8th Cir. 1984). In *Craik*, the plaintiffs spent almost twice as much time on their case as the defendants did on theirs. *Id*. The court found that this was acceptable, and that it did not raise an issue of reasonableness. *Id*. This result is, in part, justified by the fact that in a typical civil rights case, virtually all of the crucial evidence and witnesses are in the hands of the defendants, while the plaintiff bears the burden of proof. *See Sussman v. Patterson*, 108 F.3d 1206, 1209 (10th Cir. 1997).

III. **The Specific Hours Objected to were Reasonably Spent**

While the FBI's generalized and unsupported request to lower the hours set forth in the fee petition should be dismissed outright. *See Duckworth* 97 F.3d at 1397. They did

object to some specific hours. As set forth below, the specific hourly reductions requested by the FBI are also without merit.

A. The Plaintiff's Use of Technology was Reasonable

The FBI challenged some of the time spent on courtroom technology related matters. They challenged 46.32 hours for Mr. Parness, 12 hours for Mr. Criswell, and 5 hours for law clerks spent on a "PowerPoint" presentation as part of the trial. This challenge, however, is without merit. The basis for their objection seems to be that the government has provided a "fully equipped electronic courtroom." Defendants' Memo at 24. They fail to mention, however, that the arrangement of the courtroom specifically anticipates that the attorneys will use their own laptops as part of the presentation of evidence. Second Aff. Stephen Kohn ¶3, Ex. 4. Given the detailed consideration this Court provides for the use of attorneys' laptops, their objection to the Kohn Firm's desire to use its own equipment is misplaced. The Kohn Firm abided by this request, and with the other regulations governing the use of courtroom technology. Second Aff. Stephen Kohn ¶3, Ex. 4. These regulations specifically consider the use of "PowerPoint" appropriate, and a PowerPoint presentation was even given by the judge during the trial. Second Aff. Stephen Kohn ¶4, Ex. 4. The Kohn Firm's use of technology in the courtroom saved the court time and increased efficiency by allowing documents and evidence to be located quickly. Second Aff. Stephen Kohn ¶4-5, 7-8, Ex. 4. For the Defendants to suggest that these efforts to increase efficiency are unreasonable is completely at odds with the reality of modern court practice. Additionally, the Defendants' never objected to the "PowerPoint" presentation at the time of the trial, and

their failure to do so demonstrates that the Kohn Firm's use of this technology was reasonable and should be compensated accordingly. Second Aff. Stephen Kohn ¶9, Ex. 4. Defendants' failure to make any timely objection constitutes waiver even so far as of the use of technology could have been objectionable.

B. The Plaintiff's Moot Courts and Ms. Carlson's Time

The Defendants also object to what they call "overkill": the time Stephen Kohn spent in a series of moot courts and the 103 spent by Ms. Nikki Carlson as a jury consultant and in surveying the fees of Minneapolis Antitrust firms. This time accounts for all of Ms. Carlson's time, 15 hours spent by Mr. Kohn, and 4.33 hours spent by Mr. Parness.

The objection to Ms. Carlson's time spent surveying local attorneys' fees is wholly without merit, since such evidence that the fee requested is reasonable is a requirement of applications for attorneys' fees. *See Blum* 465 U.S. at 895. Limiting the survey to a narrow group of litigation related firms limited to the antitrust sector(the precise sector which Congress used as a benchmark in these types of case) produced an efficient survey to use a benchmark in validating the fees set forth by Justice Gilbert. Additionally, Ms. Carlson carefully constructed her survey to target all of the firms for which information was available, in order to avoid some of the pitfalls identified in surveys utilized by other firms in the District of Minnesota to support a fee petition. This work was an absolutely essential element of the process of applying for attorneys' fees. Ms. Carlson's work on the fee survey was reasonable, given the initial burden on the Plaintiff to establish a reasonable rate. *See Blum* 465 U.S. at 895.

In regards to Ms. Carlson's time spent in her capacity as a jury consultant, the FBI failed to inform this Court that fees for jury consultants are regularly compensated as part of a fee petition, where the need to make arguments understandable to the jury was acknowledged. See e.g., General Instrument Corp. of Delaware v. Nu-Tek Electronics & Mfg., Inc. 3 F.Supp.2d 602, 611 (E.D.Pa.1998). Dang v. M-I Holdings, L.L.C., 2004 WL 2004696, 1, (E.D.La. 2004). Howes v. Medical Components, Inc., 761 F.Supp. 1193, 1199 (E.D.Pa.,1990) ("Considering that this was a jury trial, the use of expert witnesses and a jury consultant was necessary to make the issues easier for the jury to understand").

The time Mr. Kohn and Ms. Carlson spent on their moot courts was reasonable. First, Courts regularly award fees for time spent on a moot court. *Riter v. Moss & Bloomberg, Ltd.*, 2000 U.S. Dist. LEXIS 14470 (D. Ill. 2000) ("The court finds that a moot court practice session is a reasonable use of time."). The utility of moot courts is well recognized in the literature, both on the theory and practice of trial preparation, and is highly recommended practice. Second, as explained in the Fee Petition, the goal of the moot courts was to make the legal and factual issues of the case understandable to a jury, in order to assist the jury in reach an appropriate verdict. The moot courts were not abstract academic exercises, but instead were narrowly tailored in order to make the opening and closing statements effective and efficient. Third, the time and number of moot courts was not excessive. As preliminary matter, even without a formal moot court Mr. Kohn would have had to read his opening and closing statements aloud, time them to ensure compliance with the Courts deadlines, and edit them after an initial oral

presentation. The moot court process made the preparation of the open and closing statements more efficient than if Mr. Kohn had merely read it with a stopwatch before a mirror. The process was simple: make an initial presentation, obtain feedback from the participants, edit the presentation, and make a second presentation of the edited version. This was a reasonable use of the moot court process and not excessive.

C. Work Done by the Hill and Kohn Firms to Acquaint Themselves with the Case was Reasonable

First, the Kohn and Hill Firms can not be reasonably penalized for having to take over the case. Given that the Klimaski Firm withdrew from the case, and Ms.Turner was forced to seek other counsel, this work was entirely necessary to enable Mr. Kohn and Mr. Hill to understand and pursue Ms. Turner's case. The Defendants attempt to characterize the departure of the Klimaski Firm as due to personal disagreements, but this is not the case. Defendants' Memo at 21. The disagreement between Ms. Turner and the Klimaski Firm was because Mr. Klimaski informed Ms. Turner that if she did not settle her case she would have to find substitute counsel to litigate it. Aff. Jane Turner ¶5. The fact that Klimaski did not intend to litigate the case, ensured a minimum duplication of effort, as his firm did almost no work whatsoever as part of the post-complaint litigation process.

Specifically, the Defendants object to the second depositions of Mr. Burrus and Mr. Domin conducted by the Kohn Firm. These two depositions account for 13.78 hours for Mr. Kohn, and 31.3 hours of time for the law clerks. While they object to the depositions, they point to nothing in the transcript of the deposition that is duplicative of

the previous deposition. In fact, the Kohn Firm reached an agreement with counsel for the Defendants to avoid duplication of the work of the Klimaski Firm and they abided by this. The second depositions of Mr. Burrus and Mr. Domin resulted from a review of the original depositions, which indicated that another deposition was necessary.

Of the three primary witnesses in the Defendants' case (Domin, Burrus and Welken), the Kohn Firm deposed only two of them. The Kohn Firm reviewed Mr. Welken's deposition, found it adequate and found no reason to conduct another deposition. This attention to detail, designed to avoid duplicative work further demonstrates that the work the Kohn Firm did was reasonable.

## IV. Ms. Turner obtained excellent results which justify a full award of attorneys' fees

Defendants assert that the level of success Ms. Turner obtained justifies reducing the award of attorneys' fees. This misstates the law with regard to attorneys' fees. By the proper measure Ms. Turner achieved excellent results, which do not justify a blanket reduction in the requested fees. Even if this Court agreed that Ms. Turner had achieved limited success, the relatedness of the issues requires this Court to award her attorneys' fees even on those issues on which she did not prevail. Finally, even if the limited success would justify some form of reduction, the Defendants fail to meet their burden to identify what time billed by the firms in the fee petition was so related to a separate and distinct claim as to justify reduction. *See Stauch v. City of Columbia Heights*, 12 Fed.Appx. 435, 437 (8th Cir. 2001).

A. <u>Ms. Turner did not Achieve Limited or Partial Success</u>

The Defendants misstate the relevant standard by describing Ms. Turner's success as partial or limited. An award of attorneys' fees can be limited where the prevailing party achieved only limited or partial success, but where the party received excellent results, an award of the full lodestar amount is appropriate. *See Emery v Hunt*. 272 F.3d 1042, 1047 (8th Cir. 2001), *Hensley,* 461 U.S. at 436. The proper standard for judging whether a party has obtained excellent results is on the basis of the case as a whole. *See Jenkins v. State of Missouri*, 127 F.3d 709, 716 (8th Cir. 1997). The Defendants, however, suggest an approach that has been explicitly rejected by the Supreme Court, comparing the number of issues raised in the litigation with the number on which the plaintiff prevailed. *See Hensley* 461 U.S. at 435, n. 11. ("We agree with the District Court's rejection of 'a mathematical approach comparing the total number of issues in the case with those actually prevailed upon.'").

Where the primary goal of litigation is monetary damages, this Court is "to give primary consideration to the amount of damages awarded as compared to the amount sought*." Farrar v. Hobby* 506 U.S. 103, 114 (1992). (Quoting *City of Riverside v. Rivera* 477 U.S. 561, 585 (1986) (Powell, J., concurring in judgment)). Ms. Turner's award was reduced to the statutory maximum in compensatory damages, after being initially awarded $565,000, it is hard to justify the Defendants' conclusion that she did not obtain excellent results. Indeed, she could not have obtained better results; no matter how many of her claims she prevailed on, she could not receive a penny more. Under the

standards articulated by the Supreme Court, Ms. Turner's excellent results justify an award of the full lodestar amount.

Second, the Defendants' argument for a 75% reduction is also fatally flawed due to the lack of specificity. The Defendants do not look at what is charged with eye toward separating hours used on the claims Ms. Turner raised. For the Defendants to make the claim that Ms. Turner should not be awarded hours used on claims on which she was unsuccessful, they would need to separate the hours used on one claim for the hours used on another. They do not do this, instead asking for a blanket cut of time without discerning what time was spent on which claim. This is inappropriate according to the case law on this issue. *See Stauch v. City of Columbia Heights*, 12 Fed.Appx. 435, 437 (8th Cir. 2001). In *Stauch*, the Eighth Circuit held that it was proper for the district court to reject the defendants proposed 75% reduction in the fee award, where the Plaintiff had only prevailed on 25% of their claims. *Id*. In this case, the Defendants also did not explain how any of the time charged was not reasonably related to the claims on which she prevailed.

Furthermore, it is important that this Court look to the specifics of this case when determining how to gauge Ms. Turner's success. Since the heart of Ms. Turner's case is her retaliation claim, that was the focus of the work done by the Kohn Firm. The Defendants' request that this court reduce the overall award of attorneys' fees by 75% profoundly misrepresents the reality of this case. The retaliation claim on which Ms. Turner prevailed accounted for far more than 25% of the work done on Ms. Turner's case. Both the Supreme Court's rejection of an issue by issue analysis and the Eighth

Circuit's command that the case should be analyzed as a whole require this Court to be cognizant of this fact. *See Hensley* 461 U.S. at 435, n. 11; *See Jenkins*, 127 F.3d at 716.

The fact that the Kohn Firm emphasized the retaliation claim in constructing Ms. Turner's case was confirmed in the oral argument on the Eighth Circuit appeal conducted on June 24, 2005. Based on the appellate filing, Judge Gruender formed the opinion that the Kohn Firm was primarily focused on Ms. Turner's retaliation claims and not on the discrimination claims. Mr. Kohn stated this during the arguments, and Judge Gruender agreed.

Mr. Kohn: But, the heart of this case is really the retaliation case…

Judge Gruender: I agree with your analysis…I do think the retaliation is your strongest argument.

Oral Arguments at 5:13-5:31, available on Eighth Circuit website at ftp://8cc-www.ca8.uscourts.gov/OAaudio/2005/6/043426.mp3.

Given that Ms. Turner's retaliation claim was the focus of her case, the FBI's attempt to use interrelated secondary claims that were not the focus of the litigation, to justify a radical reduction in fees is wholly without merit.

B. <u>The Claims on which Ms. Turner did not Prevail are Related to those on which She did.</u>

Even if this Court accepts the Defendants' argument that Ms. Turner's success was limited, it is inappropriate to reduce the Plaintiff's award. Again, the Defendants' analysis is at odds with the current law on this issue; a mathematical reduction based on the number of issues on which the plaintiff raised compared to the number on which they

prevailed has been rejected by the Supreme Court. *See Hensley* 461 U.S. at 435, n. 11. An award should "not be reduced merely because a party did not prevail on every theory raised in the lawsuit." *Hendrickson v. Branstad*, 934 F.2d 158, 164 (8th Cir. 1991). Instead, litigation containing several legal theories based on a common core of facts should be viewed as a whole, since attorneys time is devoted to the entirety of litigation. *Id*. In these cases, where the issues are significantly related, the award should include all hours related to the litigation, even on those issues where the plaintiff was unsuccessful. *Id*. It is only appropriate to deny attorneys' fees for partial success where claims are based on "different facts and legal theories." *Hemsley* 461 U.S. at 434.

In Ms. Turner's case, the claims raised arise out of the same set of facts, and they relate to the same legal theory. All of Ms. Turner's claims arise from her allegations of gender based discrimination and reprisal during her time with the FBI. Although Ms. Turner alleged several different acts of retaliation and sex discrimination, these claims all arose out of a single set of facts, the pattern of discrimination and retaliation Ms. Turner observed as an employee of the FBI.

Furthermore, even though the merits of the underlying sex discrimination complaint were not litigated at trial, Ms. Turner still had a burden of proof to demonstrate that the underlying complaint of discrimination was reasonable. *Sisco v. J. S. Alberici Const. Co., Inc*., 655 F.2d 146, 150 (8th Cir. 1981). In other words, Ms. Turner was required to conduct some discovery and pursued some trial preparation in order to meet her burden of proof on the reasonableness issue. Defendants can not be heard now to complain about time spent on these matters. Specifically, the Defendants adamantly

refused to stipulate to the fact that Jane Turner engaged in protective activity, necessitating some trial preparation on the reasonableness of the underlying sex discrimination claims. It was not until mid-trial, that the Defendants reversed themselves on this position and entered a stipulation. *See* Ex. 2.

The argument that these claims were severable, because some were dismissed as part of the summary judgment proceeding, misses the point. Under *Sisco* until the FBI entered into the stipulation, Ms. Turner was required to pursue facts related to the sex discrimination claims, for the purpose of demonstrating that they were reasonably grounded.

Furthermore, the touchstone for all of this is the success of the plaintiff relative to the litigation as a whole, which is properly judged by monetary damages. *Farrar* 506 U.S. at 114. Under this standard, Ms. Turner achieved excellent results on her case as a whole, and all of her claims were interrelated, so she should be awarded the full reasonable fee. It is important to remember that "[t]he most important factor in determining what is a reasonable fee is the magnitude of the plaintiff's success in the case as a whole." *Jenkins* 127 F.3d at 716. This is consistent with the American pleading system, which encourages liberal pleading and the litigation of all relevant issues. Given Ms. Turner's excellent success in the whole of her case, this court should award her the entirety of the requested fees.

## IV. Consideration of the *Johnson* factors supports the award of full attorneys' fees to Ms. Turner

The *Johnson* factors, as outlined in *Johnson v. Georgia Highway Express, Inc.* and adopted by the Eighth Circuit, support granting the full attorneys' fees requested by Ms. Turner. *Shultz v. Amick*, 955 F.Supp 1087, 1110 (N.D. Iowa 1997) ("The Eighth Circuit of Appeals agrees that these factors 'should be used'" (quoting *McDonald v. Armontrout*, 860 F.2d 1456, 1459 (8th Cir. 1988)). The use of the *Johnson* factors urged by the Defendants misconstrues either the facts of this case, the case law developing the *Johnson* factors, or both.

These factors are:

1. The time and labor involved: In addressing this factor, the FBI did not contest the reasonableness of the vast majority of the time and labor spent on this case, instead they focus on the transfer of the case from the Klimaski Firm to the Kohn Firm. As set forth previously, the change in firms was reasonable. The Defendants once again object to the time necessary for the Hill and Kohn Firms to acquaint themselves with this case. Defendants' Memo at 32-33. The Defendants again misstate the cause of the Klimaski Firm's departure from this case. This was not a case of a breakdown in the relationship between Ms. Turner and Mr. Klimaski, but rather an anticipated withdrawal, once the claim did not settle. Aff. Jane Turner ¶5.

The factor of time and labor involved weighs strongly in favor of an award of complete damages. This was a significant piece of litigation that occupied many years of work, including detailed factual investigation and the appeal of an adverse summary

judgment ruling to the Eighth Circuit Court of Appeals. Justice Gilbert testified that the time and labor involved qualify this as complex litigation, and the Defendants have provided nothing to contradict or discredit Justice Gilbert. *See* Aff. James Gilbert ¶¶7, 13.

2. The novelty and difficulty of the question: The Defendants' attempt to describe this as a "garden variety" Title VII action is belied by the facts of this case. Ms. Turner's successful litigation involved an initial award of summary judgment, an appeal of that decision, and subsequent remand for a new trial. This indicates that the questions that were raised were novel and difficult, which required a decision by the Eighth Circuit to settle conclusively.

Counsel for Ms. Turner was faced with an important Supreme Court opinion in the late stages of litigation. *See Burlington Northern & Santa Fe Ry. v. White*, 126 S. Ct. 2405, 2415 (U.S. 2006). Despite the fact that counsel for Ms. Turner did not choose to conduct additional discovery, they were required to develop and successfully propose a jury instruction based on the new Supreme Court decision and to consider the impact of this new decision on their litigation. Counsel for Ms. Turner's decision not to conduct additional discovery reduced the costs of the litigation and illustrate their efforts to keep costs low while simultaneously zealously representing their client. It is inexplicable that the Defendants suggest that efforts to keep costs low mean that Ms. Turner should not be awarded the fees reasonably incurred.

Furthermore, on the *Burlington* issue, the Government can not keep their own arguments straight. On July 9, 2007, the Department of Justice sought additional time to file their brief in their recent appeal of the jury verdict based in large part on the necessity

of analyzing the impact of *Burlington Northern* on the verdict. *See* Ex. 3. The Justice Department's request combined with the uncontested fact that Supreme Court clarified the law on a major issue, in the middle of this case(shortly before trial) that the claim presented novel questions of law.

3. The skill requisite to perform the legal service properly: The Defendants once again mistakenly point to their own staffing levels as an indicator of what the appropriate fee is. Instead, this court should consider the skill necessary on the part of Ms. Turner's counsel. In this case, Ms. Turner was litigating a difficult case against a complex bureaucracy. The specific skill of the Kohn Firm in retaliation litigation and litigation against the FBI was crucial to the outcome of this case. They cite one instance where the Court spoke, criticizing "clack." This noise came from a person sitting in the courtroom, not at counsel table. These were not legal staff, these were spectators and supporters of Ms. Turner. Tr. at 588.

Although the FBI's reliance on the "clack" remarks are misplaced, the FBI failed to point out to this Court the Chief Judges remarks at the end of the case, where he thanked counsel for an "interesting case." Tr. at 670.

The skill necessary to successfully represent Ms. Turner was further supported by Justice Gilbert's uncontested affidavit. In his affidavit, Justice Gilbert, who before joining the Minnesota Supreme Court was an experienced trial attorney before numerous juries, testified without contradiction, that a less experienced attorney would not have been able to achieve the results Ms. Turner achieved. Aff. James Gilbert ¶22.

In regards to the FBI's discussion concerning the stipulation on psychiatric issues, the FBI failed to point out that the stipulation only related a procedural matter(confidentiality of medical records). There was no substantive medical stipulation. There was no stipulation which lessened the need for Ms. Turner to retain a medical expert. Furthermore, the Defendants placed Jane Turner's psychological state at issue by raising the claim that she had psychological problems that rendered her unfit for duty. This made this case far more difficult and complex than it would have been had the Defendants not resorted to these tactics. It took tremendous skill to navigate through the Defendants' psychological claims and to demonstrate that the psychological problems were related to their retaliation against Ms. Turner.

4. <u>The preclusion of other employment by the attorney due to acceptance of the case</u>: The Defendants list other clients of the Kohn Firm, but this misstates the standard from *Johnson*, which looks to the fact that "the fact that once the employment is undertaken the attorney is not free to use the time spent on the client's behalf for other purposes." *Johnson* 488 F.2d at 718. Given that Ms. Turner's litigation was a prolonged, complicated affair, its impact on the resources of the Kohn Firm was significant, and impaired the firm's ability to take on other clients. Aff. Stephen Kohn¶10.

5. <u>The Customary fee</u>: On this factor, the Defendants raised a conclusory argument but did nothing to refute Justice Gilbert's affidavit regarding the reasonable rates in Minneapolis. Additionally, under the modified Laffey Rate, the Kohn Firm's fee would be $100 more per hour than requested in the current fee petition.

6. Whether the fee is fixed or contingent: The case law no longer allows for consideration of the contingent nature of an attorney's representation. *See City of Burlington v. Dague*, 505 U.S. 557, 564-565 (U.S. 1992).

7. The time limitations imposed by the client or the circumstances: The Defendants' attempt to limit the impact of this factor by pointing out the lack of any preliminary injunctions or temporary restraining orders is misplaced. The standard from *Johnson* is "[p]riority work that delays the lawyer's other legal work". *Johnson* 488 F.2d at 718. This work is entitled to be compensated at a higher rate than work which does not operate on these time constraints. *Id*. This case required the Kohn and Hill Firms to fully brief summary judgment, litigate an appeal, and a try a case before a jury. The FBI did not specifically contest the overwhelming number of hours set forth in this case. These requirements involved significant time limitations imposed by the circumstances of the case.

8. The amount involved and the results obtained: As argued above, the Defendants mistakenly use a claim by claim analysis and ignore the fact that Ms. Turner received excellent results. Under *Johnson*, "Court should consider the amount of damages" as a factor in setting the fee award. *Johnson* 488 F.2d at 718. Ms. Turner received as much as was allowable under the statute, results that can only be called exceptional.

Because of the statutory cap on damages, even if Ms. Turner had aggressively pursued all her claims, she could not have improved the results she obtained. Part of the art of modern Title VII litigation is to convert what could be a complex and prolonged

series of facts into specific, finite issues understandable by a jury, that are sufficient to reach the maximum allowable damages under the statute. There is no need to overlitigate by aggressively pursuing multiple claims which will not increase the compensation of the plaintiff. Under the *Johnson* standards, this Court should acknowledge that Ms. Turner achieved the greatest success she could have possibly obtained and award her the full requested fees. Justice Gilbert's affidavit further confirms the fact that Ms. Turner obtained excellent results; he is a knowledgeable authority on litigation, and the Defendants do nothing to discredit him. Aff. James Gilbert ¶23

9. The experience, reputation and ability of the attorney: The Defendants once again erroneously claim that the Kohn Firm is not experienced in Title VII litigation. Mr. Kohn specializes in employment retaliation cases and has pursued many Title VII claims related to that work. Furthermore, as an attorney with over 20 years of experience in litigation employment law, Mr. Kohn's experience and reputation weighs strongly in favor of awarding full fees to Ms. Turner. The experience of Mr. Kohn and Hill was a major factor in this litigation; a less qualified attorney would have not have been able to litigate this case as successfully as Mr. Kohn and Mr. Hill. Aff. James Gilbert ¶22.

Mr. Hill was brought on as local counsel because of his substantial civil trial experience. The Defendants describe him as a commercial real estate attorney, based on his firm's advertisements. His Firm's profile of him, however, specifically mentions that he has experience with "challenging public interest cases." See Ex. 1. Of the five cases used as an example by Mr. Hill, three were employment related. *Id*. The experience of Mr. Kohn and Mr. Hill justifies an award of the full requested fees.

Defendants' attempts to portray Mr. Kohn and Mr. Hill as inexperienced are also inadequate to suggest that the award should be reduced. The Defendants cite several times when the Court "reprimanded" or "advised" them during the course of the proceedings, but this is a common occurrence during any trial. *See* Defendants' Memo at 37-38; reprimands for them go here. Court specifically thanked the lawyers for interesting case. In fact, the Court specifically advised the jury that the Court's rulings "just means that I made a decision." Trial Transcript at 7. Counsel for the Defendants were themselves reprimanded on several occasions, but this does not indicate any level of inexperience on their part. Trial Transcript at 57, 58, 158, 210, 379, 475 553.

10. <u>The undesirability of the case</u>: Justice Gilbert without contradiction testifies extensively about the undesirability of this case. Aff. James Gilbert ¶¶9-18. This was a case against a highly undesirable opponent, that required complex litigation. *Id*. Beyond the affidavit of Justice Gilbert, Ms. Turner's own testimony illustrates the undesirability of her case. Her initial attorney withdrew from the case, and attorneys she contacted would not pursue it. Aff. Jane Turner ¶ 5-6. Indeed, it is not difficult to imagine why attorneys would be unwilling to take on protracted litigation against the United States government. The fact that Ms. Turner is still, years later, litigating this very petition demonstrates why her case would have been undesirable to many firms.

11. <u>The nature and length of the professional relationship with the client</u>: The Defendants state that the Kohn Firm, which had represented Ms. Turner in a whistleblower context became lead counsel by default. At the time the Kohn Firm first came to represent Ms. Turner, it did so mainly to assist her in a Title VII context. The

whistleblower proceedings came in September, 2002 months after the Kohn Firm put on its representation.[7] The Kohn Firm separates its representation of Ms. Turner in the Title VII case form its whistleblower representation, using separate billing codes to ensure that time spent on the whistleblower case is not billed to the Title VII case, and vice versa. No time spent representing Ms. Turner in her whistleblower case has been billed in this petition.

While it is true that the Kohn and Hill Firms were the only one willing to pursue Ms. Turner's case, and that the Kohn Firm represented Ms. Turner in another context, it is hard to see why this does not justify an award of the full amount. That the Kohn Firm was willing to represent her when others would not demonstrates a committed and lengthy relationship between client and attorney. This factor weighs strongly in favor of awarding Ms. Turner the full requested amount.

12. Awards in similar cases:. Defendants fail to cite to the award in any similar cases and fail to distinguish the cases cited in the initial fee petition. The fee requested by the Kohn Firm is supported by the evidence of Justice Gilbert's affidavit and the survey conducted by Ms. Carlson. It is also inline with the rates awarded in the District of Columbia, under the Laffey matrix. Since this evidence has not been refuted by the Defendants, this Court should accept it as sufficient evidence of the appropriate rate.

**CONCLUSION**

---

7 A preexisting whistleblower claim not put on by the Kohn Firm was withdrawn by the Kohn Firm and never pursued.

For the foregoing reasons, Plaintiff, through counsel, requests that her counsel be awarded all of their reasonable attorneys' fees and costs associated with this case as outlined in the Plaintiff's Motion For Award of Attorneys' Fees and Costs.

__/s/_ Stephen M. Kohn___
Stephen M. Kohn
KOHN, KOHN & COLAPINTO, LLP
3233 P Street, N.W.
Washington, D.C. 20007-2756
Phone: (202) 342-6980
Fax: (202) 342-6984

___/s/ Aaron M. Parness_____
Aaron M Parness
(Admitted Pro Hoc Vice)
Kohn, Kohn & Colapinto LLP
3233 P Street N.W.
Washington, DC 20007
(202) 342-6980

___/s/ Robert Hill__________
Robert Hill
Hill & Associates
12700 Anderson Lakes Parkway
Eden Prairie, MN 55344-7652
(952) 426-7373 (tel)
(952) 426-7370 (fax)

Dated: July 11, 2007