**THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MINNESOTA**

**JANE A. T. TURNER,**

**Plaintiff,**

**v.**

**ALBERTO GONZALES,**
**ATTORNEY-GENERAL,**
**U.S. DEPARTMENT OF JUSTICE, *et al.,***

**Defendants.**

**Civil No. 01-CV-01407 JMR/FLN**

**PLAINTIFF'S REPLY TO DEFENDANTS' RESPONSE TO APPLICATION FOR ATTORNEY'S FEES AND COSTS FOR KLIMASKI & ASSOCIATES, P.C., AND METCALF KASPARI, HOWARD, ENGDAHL & LAZARUS, P.C.**

Plaintiff Jane Turner respectfully submits this Reply to Defendants' Response to her Application for attorney's fees and costs for Klimaski & Associates, P.C, and Metcalf, Kaspari, Howard, Engdahl & Lazarus, P.C. This Reply addresses the following issues:

(1) the argument that this Court should not award out-of-state hourly rates to the Klimaski firm;

(2) the claim of Klimaski's "over-staffing" of the case;

(3) the request to deduct "generic" time-entries;

(4) the non-compensability of time spent on Ms. Turner's whistleblowing activities; and

(5) deduction of time spent on the psychological FFD and post-transfer performance evaluations.

For the remaining issues Defendants raise in their Response, Ms. Turner relies upon the Kohn law firm Reply, filed July 12, 2007. Ms. Turner also reasserts the arguments in her original fee application for the Klimaski and Engdahl law firms.

## ARGUMENT

### I. The Request for Out-of-State Hourly Rates Are Reasonable Because Ms. Turner Could Not Find Counsel in North Dakota to Take Her Case.

The Defendants argue that the Court should reject the Klimaski firm's request for out-of-state hourly rates for attorney and paralegal time. The basis for this argument is that Ms. Turner's claims that she could not find counsel in North Dakota or Minneapolis are not credible. Id. at 15.

However, at the time that Ms. Turner retained Klimaski & Associates, she was still based in North Dakota. At that time, the National Employment Lawyers Association (NELA), the largest organization of plaintiff employment lawyers, did not have any members in North Dakota. Therefore, the chance that Ms. Turner would find a plaintiff's employment attorney in North Dakota to represent her against the Federal Bureau of Investigation (FBI) were slim to none.

Ms. Turner's transfer to Minneapolis did not solve her problem. Her need for counsel began before she moved from North Dakota. Moreover, Ms. Turner had never lived in Minneapolis before. She therefore did not have any knowledge about plaintiff employment attorneys there.

Defendants' suggestion that Ms. Turner could have sought help from Assistant United States Attorneys Clare Hochhalter and Jan Morley in finding an attorney in North Dakota is pointless. The fact that these individuals testified for Ms. Turner at her trial does not establish

that they would have been comfortable assisting Ms. Turner in finding counsel. Doing would have created a conflict for these government employees. Moreover, the Defendants do not provide any proof, such as Affidavits, that these two individuals would have been willing to help Ms. Turner find an attorney in North Dakota.

Lastly, the FBI headquarters is located in Washington, D.C. The attorney handling Ms. Turner's case for the FBI worked in the Washington, D.C., office. The Klimaski firm's location in Washington, D.C., facilitated communication between counsel.

Klimaski & Associates incorporates its argument for out-of-state hourly fees in its original fee application.

## II. The Klimaski Law Firm Did Not Overstaff the Case.

In their response, Defendants state that, "... the Klimaski firm staffed the litigation with a senior attorney (Klimaski), three associate attorneys (Grill, Miller and D'Agostino, who served as a law clerk pending bar admission), and a paralegal (Pinkus)." The Defendants compare this number of personnel to the government's "lean staffing" of the case. Id. at 20.

Defendants' characterization of the Klimaski firm's staffing of Ms. Turner's case is inaccurate. First, Miller worked only 5.1 hours on the case, about two hours on two separate days. Therefore, Miller's amount of work was minuscule in light of the total hours billed.

Second, Grill spent only 5.3 hours on the case, from January to September 2001.

As the time records the Klimaski firm submitted with the fee application establishes, only two individuals worked on the case, Klimaski and D'Agostino. Moreover, the majority of D'Agostino's time, 418.1 hours, took place while she was a law clerk and therefore a lower hourly rate applies. During this period, D'Agostino spent the majority of her time on document

review. In comparison, D'Agostino worked on the case in her capacity as an attorney only 119.4 hours.

Lastly, Pinkus, who provided paralegal services, clocked only 23.85 hours.

Therefore, the Klimaski firm, like the government, engaged in "lean staffing," employing only two individuals for the bulk of the case.

**III. The Court Should Not Exclude What the Defendants Characterize as "Generic" Entries.**

The Defendants ask this Court to exclude what they term "generic" time entries. The Defendants provide a list — "research," "research discovery," "draft affidavit," "teleconference," and "read docs." Id. However, the time entries controvert Defendants' claim that the descriptions are too vague.

First, "teleconference" does not just appear by itself. Each time-keeper identifies who he or she spoke with during the teleconference — for example, "Teleconference with client."

Second, "research," by itself, appears only four times in the voluminous time entries by D'Agostino — 7/17/2000: .6 hour; 12/11/2000: .5 hour; 1/2/2001: .1 hour;; 3/28/2001: .2 hour.

Third, D'Agostino's "discovery research" entries provide sufficient information. The fact that, as Defendants point out, there were no motions to compel discovery or for protective orders, Id., are of no consequence for the need to research any such issues to avoid such motions. The parties' entering into the Privacy Act Protective order to protect Ms. Turner's medical records does not eliminate the need for research.

Fourth, "read docs" appears only once, in D'Agostino's time — 10/1/2001: .1 hour. Any reference to reviewing documents is self-explanatory in a case in which the agency provided over

10,000 pages of documents to Ms. Turner's counsel during discovery. Given the need to review, identify and organize these documents, the time D'Agostino spent was reasonable.

Defendants' discussion of the time entries has no validity.

**IV. The Time the Klimaski Law Firm Spent on Whistleblower Issue Is Compensable.**

The Defendants ask this Court to exclude the time spent on Ms. Turner's whistleblowing activity concerning the FBI. Specifically, this time consisted of meeting with the Department of Justice Office of Professional Responsibility (OPR) and the Inspector General (IG). The Defendants' argument is that whistleblowing is not a "protected activity" under Title VII. Id. at 21.

Including this time is justifiable. First, Title VII and whistleblowing cases are related legal areas. Second, because the FBI was already in an adversarial position with Ms. Turner over the Title VII claims, the agency had to deal with her through an attorney concerning the whistleblowing activity. The Klimaski law firm, which already represented Ms. Turner and was familiar with the facts of her case, therefore handled this matter.

**V. The Change of Counsel Does Not Warrant Excluding Work concerning the Psychological FFD and Post-Transfer Performance Evaluations.**

The Defendants argue that the change in law firms mandates denying fees for work the Klimaski firm performed on Ms. Turner's FFD evaluation and post-transfer (April 2000) performance issues. Excluding these fees, however, is not appropriate.

The Klimaski firm withdrew in response to Ms. Turner's desire to consolidate her Title VII and whistleblowing cases with one firm, Kohn, Kohn & Colapinto. Klimaski turned over all its research and investigative information to Kohn.

The Defendants assert that the hours Klimaski spent on the psychological FFD evaluations and post-transfer performance are deductible because the Kohn firm abandoned the associated sex discrimination, hostile work environment and retaliation claims. The Court, however, should not penalize the Klimaski firm because Kohn decided upon a different litigation strategy.

Defendants do not cite any case law for excluding a law firm's work because the client wanted the former firm to withdraw and retained a second law firm to represent her. The Defendants cannot justify denying Klimaski reimbursement for work that advanced the discrimination complaint. As throughout its response to the application for fees, the Defendants are grasping at straws for reasons to deny the fees that the Klimaski firm deserves.

**CONCLUSION**

In light of the above, this Court should award Klimaski & Associates, P.C., as well as Ms. Engdahl and her firm, the fees and costs requested and documented in its fee application.

Date: August 21, 2007 Respectfully submitted,

*/s/ James R. Klimaski*
James R. Klimaski
Lynn I. Miller
Klimaski & Associates, P.C.
1819 L Street N.W., Suite 700
Washington, D.C. 20036-3830
(202) 296-5600

***After Aug. 27, 2007:***
1625 Massachusetts Ave. NW
Suite 500
Washington, DC 20036
(202) 296-5600
klimaski@klimaskilaw.com
miller@klimaskilaw.com

*/s/ Kathryn M. Engdahl*
Kathryn M. Engdahl (#163995)
METCALF, KASPARI, HOWARD
ENGDAHL & LAZARUS, P.A.
333 Parkdale Plaza, 1660 S. Highway 100
Minneapolis, MN 55416-1531
(952) 591-9444
kengdahl@metcalf-law.com