**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MINNESOTA**

| | | |
|---|---|---|
| JANE A. T. TURNER, | ) | |
| Plaintiff, | ) | |
| v. | ) | 01-CV-1407 (JMR/AJB) |
| MICHAEL MUKASEY, *et al*., Defendants. | ) | |

**PLAINTIFF'S RESPONSE TO DEFENDANTS' OBJECTIONS TO MAGISTRATE JUDGE BOYLAN'S REPORT AND RECOMMENDATION ON ATTORNEYS' FEES**

On April 9, 2007, the Court referred the parties' motions for award of attorneys' fees and costs to Honorable Arthur J. Boylan, United States Magistrate Judge, "for Report and Recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and D.Minn.L.R. 72.1(c)."[1] On November 20, 2007, Judge Boylan issued his Report and Recommendation ("Report" or "R &R") on the attorney fee and costs matters,

1 Rule 72.1(c) of the currently effective Minnesota Local Rules is entitled "Consent Jurisdiction." Because the parties did not consent to jurisdiction, Plaintiff assumes that this is an inadvertent reference is to a prior version of the Local Rule. As such, Plaintiff assumes that Local Rule 72.2(b), Review of Magistrate Judge Rulings on Dispositive Matters, governs.

and directed that "[w]ritten objections *shall* be filed with the Clerk of Court and served upon opposing parties *before* December 6, 2007" (emphases added).

**BACKGROUND**

On August 3, 2001, the plaintiff, Jane A. Turner, filed her initial complaint against Defendants John Ashcroft (United States Attorney General) and the Federal Bureau of Investigation ("FBI"). The complaint was filed under Title VII of the Civil Rights Act of 1964, *as amended*, 42 U.S.C. § 2000e, *et seq.* Ms. Turner amended her complaint on October 1, 2003. On April 4, 2004, the Defendants submitted a Motion for Summary Judgment and on April 15, 2004, Defendants filed an Amended Memorandum in support of this motion. On May 21, 2004, Ms. Turner filed her opposition to summary judgment. On September 17, 2004, the U.S. District Judge Ann D. Montgomery issued a Memorandum Opinion and Order granting Defendants' Motion for Summary Judgment and dismissing the case in its entirety.

On June 24, 2005, the Eighth Circuit Court of Appeals reversed the summary judgment ruling and remanded the case for trial. Between January 25, 2007 and February 1, 2007, the case was tried before a jury. On February 5, 2007, the jury returned with a verdict awarding Ms. Turner $565,000.00 in damages. On Feb. 23, 2007, the Defendants filed a Rule 50(b) Motion for Judgment as a Matter of Law.

On Feb. 26, 2007, the Defendant also filed a motion for a new trial. The Plaintiff responded to these motions on March 14, 2007. On April 2, 2007, the court ordered that Ms. Turner recover from the defendants $360,000 and her costs. The motions for attorneys' fees currently at issue followed.

## ARGUMENT

### I. DEFENDANTS' OBJECTIONS WERE UNTIMELY AND ARE THEREFORE TIME-BARRED

On November 20, 2007, Judge Boylan issued his Report and Recommendation, directing parties that "[w]ritten objections *shall* be filed with the Clerk of Court and served upon opposing parties *before* December 6, 2007" (emphases added).[2]

The FBI instead filed its objections *on* December 6, 2007, a day late. Because "[a] filing deadline cannot be complied with, substantially or otherwise, by filing late—even by one day," the FBI's objections should be stricken. *See Houston v. Lack*, 487 U.S. 266, 282 (1988). *Accord Hallgren v. U.S. Dept. of Energy*, 331 F.3d 588, 590 (8th Cir. 2003) (no equitable tolling on complaint where cover letter

2 Local Rule 72.2(b), Review of Magistrate Judge Rulings on Dispositive Matters, states: "Within 10 days after being served with a copy of the recommended disposition, unless a different time is prescribed by the Magistrate Judge or a District Judge, a party may serve and file specific, written objections to the proposed findings and recommendations."

was stamped as received by the district court one day late).

Even assuming that the FBI's untimely objections are not jurisdictionally barred, the FBI has presented no reason to justify the equitable tolling of deadline set by the Magistrate under the Local Rules: "Equitable tolling is appropriate only when the circumstances that cause a [party] to meet a filing deadline are out of his hands." *Hallgren*, 331 F.3d at 590 (internal quotations and citations removed).

All of the parties received timely notice of the Magistrate's Report, and the Report clearly and unequivocally set forth the specific date before which any objections were to be filed. The Magistrate's Report stated that any objections "*shall*" be filed "*before December 6, 2007*." Magistrate's R&R at 17 (emphases added). Furthermore, the Magistrate's Report was emailed to *three* separate attorneys representing the FBI in this matter. *See Notice of Electronic Filing* (November 20, 2007) (service made on attorneys Fagg, Grzeskowiak and Kudej at three separate email addresses). There is no allegation whatsoever that all three attorneys did not receive a copy of the Magistrate's Report on November 20, 2007.

Finally, the FBI failed to file a motion for leave to file out of time. Instead of confronting the timeliness issue upfront and properly seeking leave to enlarge the filing deadline, the FBI simply ignored the Magistrate's order, apparently hoping that the issue would not be identified by Plaintiff.

The FBI's objections to the Magistrate's Report were not timely filed. Assuming *arguendo* that a timely filing was not a jurisdictional prerequisite, the FBI simply failed to file a motion for leave to file out of time and failed to articulate any good cause that could conceivably justify equitable tolling.

Consequently, the FBI's objections must be denied.

## II. EVEN ON *DE NOVO* REVIEW, THE MAGISTRATE'S R&R SHOULD BE ADOPTED.

Assuming that the FBI's objections to the Magistrate's Report were timely filed and/or that equitable tolling applies to the missed deadline, the FBI's objections should be rejected as without merit and the Magistrate's R & R should be adopted.

The gravaman of the FBI's objections concern the hourly rates awarded to Jane Turner's lead trial attorney (Stephen M. Kohn) and local counsel/co-trial counsel (Robert Hill). The FBI maintains that the reasonable hourly rate for attorneys Kohn and Hill should be governed by an affidavit filed by Jane Turner's former local counsel, Kathryn Engdahl. Ms. Turner, on the other hand, argues that the hourly rates for her counsel were set forth in the affidavit of former Minnesota Supreme Court Justice James H. Gilbert, in her comprehensive survey of hourly rates in the Minneapolis area, and in the affidavits of her current counsel.

It is well established that a court may not base its determination of reasonable attorneys' fees on the fees charged by any particular attorney, but must instead look at the "prevailing market rate" for "similar services by lawyers of reasonably comparable skill, experience and reputation" in the community. *Blum v. Stenson,* 465 U.S. 886, 895, n.11 (1984).

The Engdahl affidavit – the FBI's *only* support for its position on the reasonable hourly rates applicable to this case – does not purport to satisfy the proof necessary under the *Blum* mandated analysis. The Engdahl affidavit does not discuss, directly or indirectly, the "prevailing market rate" for "similar services" in the community. It does not attempt to evaluate the "skill" or "experience" of comparable counsel. It merely sets forth the hourly rate normally charged by Kathryn Engdahl, who was retained in this case simply to provide the services of "local counsel."

Ms. Turner did not simply rely upon the affidavits of her current attorneys to set forth the reasonable market rate for their services. Instead, she obtained an affidavit from Justice James H. Gilbert, who carefully reviewed the record of this matter and concluded as follows:

> Based on my review of this case and my knowledge of the rates currently charged to clients who need attorneys capable of effectively litigating complex and difficult matters, these rates are well within the reasonable

> market rates for attorneys in the Minneapolis, Minnesota area with similar backgrounds and experience as the attorneys who represented Ms. Turner [i.e. Hill and Kohn].

Ex. 1, Affidavit of Justice Gilbert ¶ 23.

Significantly, Justice Gilbert was highly qualified to review the record in the *Turner* matter and to set forth the reasonable market rate for counsels' services. *See*, Ex. 1, Affidavit of Justice Gilbert ¶¶ 2-5. As explained by Justice Gilbert:

> As a trial attorney, consultant, mediator, arbitrator, and former Associate Justice of the Minnesota Supreme Court, I have many years of practical experience with numerous diverse cases including . . . employment law and discrimination. I am very familiar with the current billing rates paid for complex civil litigation in cases which raise issues of proof, procedure and desirability similar to the *Turner* case.

Ex. 1, Affidavit of Justice Gilbert ¶ 5.

Justice Gilbert, who was "very familiar with the *Turner* case," having "discussed the case at length" with counsel and having "participated in a 'moot court,'" rendered his opinion that the "hourly fees requested by Stephen Kohn and Robert Hill, $500 and $450 respectfully, are well within the reasonable hourly rates charged by Minnesota attorneys of similar experience in similarly complex cases." Ex. 1, Affidavit of Justice Gilbert ¶ 6, 8. When evaluating a reasonable market fee for Ms. Turner's trial attorneys, Justice Gilbert evaluated numerous factors including the undesirability of the case; the standards of proof applicable to the

claims; the "substantial commitments of time, money and expertise" needed in order to prevail; the fact that the case included "extensive discovery, medical discovery, a summary judgment proceeding" and a "full appeal to the 8th Circuit;" in addition to the work necessary to prepare for a federal court jury trial. *See* Ex. 1, Affidavit of Justice Gilbert ¶¶ 10-11, 13.

The FBI failed to submit *any* rebuttal evidence whatsoever concerning the reasonable market rate for Ms. Turner's trial attorneys. In light of Justice Gilbert's affidavit, the survey of attorney hourly rates in the Minneapolis area and the affidavits of responsible counsel, the burden shifted to the defendant to demonstrate why a lower rate is appropriate. *See Spegon v. Catholic Bishop of Chicago* 175 F.3d 544, 554-555 (7th Cir. 1999). Critically, courts that have analyzed the sufficiency of a defendants' opposition to a reasonable market rate have held that if a defendant fails to set forth an adequate opposition, the plaintiff's rate should be awarded. *See Pressley v. Haeger*, 977 F.2d 295, 299 (7th Cir. 1992); *Washington v. Phila. County Ct.*, 89 F.3d 1031, 1036 (3rd Cir. 1996).

In *Washington*, a plaintiff submitted evidence in the form of affidavits from local attorneys, testifying to the market rate. *Id*. The defendant failed to challenge this with similar evidence and the Third Circuit ruled that the district court abused its discretion by awarding a rate lower than that which the plaintiff had

demonstrated was reasonable. *Id*.

In this case, Ms. Turner met her burden under *Blum* and set forth evidence that established the market rate. This was accomplished first through an affidavit submitted by Justice Gilbert who testified that he was both very familiar with the litigation skills needed on this specific case and the comparable rate for such skills in the controlling market. S*ee* Ex. 1, Affidavit of Justice Gilbert ¶ 8. Ms. Turner also submitted a comprehensive market-rate survey and affidavits from her current counsel.

The FBI's failure to obtain an affidavit or any valid testimonial evidence to rebut the specific findings in Justice Gilbert's affidavit or in other material submitted by Ms. Turner's current attorneys is fatal to the FBI's objections. The FBI did not rebut a single finding contained in Justice Gilbert's testimony, nor did it rebut the factual findings of Ms. Turner's survey of hourly rates in the Minneapolis area, nor did it refute, as a matter of law, that the hourly rate of antitrust lawyers was the appropriate benchmark. Instead, the FBI simply relied upon the affidavit of Jane Turner's former local counsel – who left the case prior to any discovery being conducted, prior to the summary judgment and 8th Circuit proceedings and prior to

the trial on the merits.[3] This local counsel only issued an affidavit concerning *her* billing rate. She did not submit any testimony in rebuttal to Justice Gilbert, and she did not even purport, directly or indirectly, to offer testimony required under *Blum* to establish a reasonable market rate for the services of Jane Turner's trial attorneys.[4]

In addition to its unfounded attack on the hourly rate, the FBI also raised a general (and unspecified) allegation that the Magistrate's findings were "excessive in terms of the hourly rate awarded and the overall fees granted, in view of the plaintiff's limited success." Defs.' Objections to Magistrate's R&R at 1. In raising

---

3 Significantly, Ms. Turner's prior counsel did not undertake the representation of Ms. Turner with an intent to represent her throughout the federal court proceedings. Ms. Turner's former counsel informed her that they would only represent her in order to "obtain a quick settlement from the FBI" and would not represent her in the "actual litigation" of her case in federal court. Ex. 2, Affidavit of Jane Turner ¶¶ 5, 11. As the record in this case sets forth, after early attempts to settle the case were unsuccessful, Ms. Turner's prior attorneys (including Ms. Engdahl) withdrew from the case, forcing Ms. Turner to hire the Kohn and Hill firms.

4 It should be noted that though the FBI finds Ms. Engdahl's $350 per hour billing rate reasonable and requests that the rate be used as a fee ceiling for all lawyers in the current case, the services performed by Ms. Engdahl in this case are not comparable to the litigation functions performed by attorneys Kohn and Hill. Ms. Engdahl's Billing Statement (attached as Exhibit 3 to this response) includes no charges for services such as hearings, summary judgment briefs, appeals, oral argument, trial preparation, depositions, or other litigation tasks, but it does include work unrelated to civil rights, such as research into attorneys' liens three years after Ms. Engdahl withdrew from the case. It appears as though the FBI failed to study Ms. Engdahl's affidavit to determine the precise work she performed, and consequently its attempt at comparison lacks a valid factual basis.

this argument, the FBI failed to point out that the Magistrate Judge did in fact order a substantial overall reduction of 35% in the fees requested by Ms. Turner's trial counsel, a reduction that Ms. Turner has not challenged before this Court. The FBI furthermore failed to mention that Ms. Turner's so-called "limited success" in fact consisted of a compensatory damage award that exceeded the amount permitted under statute.

The FBI also asserts that Magistrate Boylan incorrectly dismissed its charges of "overstaffing, duplicative hours, and excessive resources expended by plaintiff." However, in its initial opposition to the fee petition filed by Ms. Turner's trial counsel, the FBI did not identify, with any specificity, which particular hours were duplicative or excessive. Instead, it simply sought a blanket, non-specific overall reduction in the amount of fees. The FBI cannot, before the Magistrate Judge, fail to identify specific hours that were excessive or duplicative, and then complain before this Court that so-called duplicative hours were compensated.

Finally, the FBI's attack on Justice Gilbert's affidavit consisted of the assertion that "Mr. Gilbert nowhere attests to past experience litigating against the FBI." However, Justice Gilbert specifically attested to his "practical experience" in "employment law and discrimination" cases. It is hard to understand the basis for the FBI's objection to the testimony of Justice Gilbert. The relevant factors in

setting a reasonable hourly rate have nothing whatsoever to do with an affiant's experience litigating cases against a particular defendant.

## CONCLUSION

The FBI's objections to the Magistrate's Report on attorney's fees and costs were untimely filed and should be summarily stricken. Even if deemed timely, the FBI's objections were completely without merit and this Court should overrule them and adopt the Magistrate's Report and Recommendation in its entirety.

Respectfully submitted,

______________________________

Stephen M. Kohn
KOHN, KOHN & COLAPINTO, LLP
3233 P Street, N.W.
Washington, D.C. 20007-2756
Phone: (202) 342-6980
Fax: (202) 342-6984

Attorney for Plaintiff

Dated: December 19, 2007