UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA
01-CV-1407 (JMR/FLN)

| | | |
|---|---|---|
| JANE A. T. TURNER,<br><br>Plaintiff,<br><br>v.<br><br>ALBERTO GONZALES, *et al.*,<br>Defendant. | ) | **AFFIDAVIT OF JAMES H. GILBERT** |

STATE OF MINNESOTA )
) ss.
COUNTY OF HENNEPIN )

I, James H. Gilbert, being first duly sworn on oath, depose and state as follows:

1. My name is James H. Gilbert, and I have been asked to provide an independent opinion concerning the reasonable market rate for the attorneys who performed work on the case of *Turner v. Gonzales, et al.* .

2. I have attached a copy of my Curriculum Vitae to this affidavit. As set forth in my Vitae, I have been admitted to practice law in the State of Minnesota since 1972 and I am currently a member, in good standing, of the U.S. District Court for the District of Minnesota. I am also admitted to practice in state courts of Wisconsin in 1984, the United States Tax Court in 1978, the 8th Circuit Court of Appeals in 1988, the U.S. Supreme Court in

1984, and the U.S. District Court of Arizona in 1996. I am currently a member of the Minnesota State Bar Association, and the Hennepin County Bar Association. I am also a member of the American Arbitration Association National Roster of Neutrals.

3. I was a member of Meshbesher & Spence, Ltd. from 1972 through 1998. I served as the law firm's Department Director, commercial litigation, managing partner from 1984-1992, and as its chief executive officer from 1996-1997. In 1997, I was appointed by former governor Arne Carlson as an Associate Justice of the Minnesota Supreme Court, and was then elected to the position in 2000, where I served until 2004. As an Associate Justice, I reviewed approximately 5,000 petitions, participated in more than 800 decisions and authored numerous opinions, concurrences and dissents.

4. I've also served the legal community as Chair of the Judicial Merit Selection Commission for the State of Minnesota and as a member of the Ad Hoc Committee on Appointments to the Supreme Court, Appellate Court, Minnesota Tax Court and Workers' Compensation Court of Appeals from 1992-1997. In this role, I interviewed over one thousand lawyers and helped to advise former Governor Arne Carlson on more than 90 judicial appointments. From 1997-2003, I was a Minnesota State Bar Association Certified Civil Trial Specialist, and was named Distinguished Jurist of the

Year for 2004 by the Academy of Certified Trial Lawyers of Minnesota. Since 1998, I have been a member of the State Board of Directors for MN D.A.R.E. (Drug Abuse Resistance Education), and MN D.A.R.E. Advisory Council. In 2004, I was appointed by the Minnesota Supreme Court as chair of the Standing Committee on No-Fault Arbitration for Minnesota. The Committee is charged with reducing caseload numbers in Minnesota courts, and to speed the process of No-Fault Automobile Claim arbitration. I am currently the Hearing Chairman, for the Minnesota News Council.

5. As a trial attorney, consultant, mediator, arbitrator, and former Associate Justice of the Minnesota Supreme Court, I have many years of practical experience with numerous diverse cases including commercial litigation, real estate, corporate and business law, insurance, employment law and discrimination. I am very familiar with the current billing rates paid for complex civil litigation in cases which raise issues of proof, procedure and desirability similar to the *Turner* case.

6. I am very familiar with the *Turner* case. In addition to reviewing some of the pleadings in the case, I have discussed the case at length with Robert Hill, and I have discussed the case to a lesser degree with Stephen Kohn. I also participated in a "moot court" with Stephen Kohn, in which Mr. Kohn presented a draft of his closing argument, after which we discussed the

merits, issues and arguments related to the case at some length.

7. The *Turner* case would qualify as complex civil litigation. I am aware that the *Turner* case was aggressively litigated by the defendants, and that Ms. Turner's counsel were required to fully brief the issues in the case as part of a summary judgment proceeding, were required to appeal a dismissal of the District Court to the Court of Appeals (resulting in a favorable ruling at the Eighth Circuit), and were required to conduct a jury trial in District Court.

8. After familiarizing myself with the circumstances surrounding the case, several factors convince me that the hourly fees requested by Stephen Kohn and Robert Hill, $500 and $450 respectively, are well within the reasonable hourly rates charged by Minnesota attorneys of similar experience in similarly complex cases.

9. One factor which I considered in evaluating the reasonable market rate for the Turner case was the risks associated with this case.

10. The case would be considered extremely undesirable within the private bar, especially given the fact that punitive damages were not permitted under the statute and that compensatory damages were subject to a statutory cap of $300,000. Thus, even a 40% contingency fee would not serve as a significant factor in motivating an attorney to take the case.

11. Additionally, given the nature of the defendant (a government agency with

substantial resources and a reputation for litigation and appeals) and the difficult standards of proof (i.e., the requirement to demonstrate intent as part of a case-in-chief), would make any litigation of Ms. Turner's claims complex, difficult and undesirable to the private bar.

12. The undesirability of the case is further evidenced by the withdrawal of Ms. Turner's original counsel, Jim Klamaski. I understand that Atty. Klamaski informed Ms. Jane Turner of his desire to withdraw as counsel before any substantive work was performed in the federal court lawsuit, and that he in fact filed a motion to withdraw in early 2002. The motion was granted. The fact that Atty. Klamaski sought to withdraw from the case provides very strong evidence that the case was viewed as a difficult case, which would require substantial commitments of time, money and expertise in order to prevail.

13. Finally, the procedural history of this case demonstrates the points referenced above. The case was, in fact, complex and difficult. Mr. Hill and Mr. Kohn represented the plaintiff for over five years, through a series of different procedural hurdles, including extensive discovery, medical discovery, a summary judgment proceeding, a full appeal to the 8th Circuit Court of Appeals resulting in reversal in favor of Ms. Turner, the preparation of a federal court jury trial, conducting a jury trial and briefing

post trial issues. The attorneys had to make substantial monetary and time commitments, up front, and also had to advance costs for the case.

14. I have been informed there is no indication that during the entire time period Mr. Hill and Mr. Kohn represented Ms. Turner that the FBI ever was interested in settling the case, and there is no indication that the FBI ever submitted a reasonable settlement offer. These factors also weigh heavily in concluding that the case was economically undesirable.

15. In fact, the unwillingness of the FBI to settle the claim once Mr. Kohn and Mr. Hill became counsel of record, combined with the procedural history of this case, indicate that the FBI, either intentionally or not, made itself a very undesirable opponent, and that without compensating the Hill and Kohn firms at a fully reasonable market rate, it would be very difficult for another FBI agent to obtain similar representation.

16. Based on the anticipated and real difficulties of this case, the Hill and Kohn firms took a tremendous risk in accepting this case knowing that Ms. Turner could not afford to pay them in the event of an adverse judgment.

17. The aforementioned characteristics of this complex case convince me that it was economically a highly undesirable case to take, and that it was extremely difficult to ultimately prevail. These factors justify an hourly rate comparable to those paid to private sector civil firms in the Minneapolis/St.

Paul market willing to take on complex, difficult and time consuming cases. It also justifies using law firms that engage in anti-trust litigation as a benchmark for reasonable fees.

18. I have also reviewed Nikki Carlson's survey of law firms which records a range of attorney fees charged in similarly complex litigation. ($375.00 - $750.00 for attorneys with 20+ years experience, $195.00- $270.00 for first year associates, $150.00- $230.00 for paralegals, and $110.00- $170.00 for law clerks).

19. Based on my experience and familiarity with attorney fees in the Minneapolis/St. Paul area, the undesirability, complexity and difficulty of the case, and Nikki Carlson's survey of the reasonable hourly rate for Mr. Kohn is $500.00.

20. Based on my familiarity with attorney fees in the Minneapolis/St. Paul area, the undesirability, complexity and difficulty of the case, and Nikki Carlson's survey of the reasonable hourly rate for Mr. Hill is $450.00. The rate for Mr. Hill is lower then the rate for Mr. Kohn for the following reasons: Mr Kohn was the lead attorney in the case. Additionally, because Robert Hill did not expend as much time on this case as the Kohn firm, the risks undertaken by his firm were substantially less then the risks undertaken by the Kohn firm in agreeing to represent Ms. Turner.



p.9 612-375-8999 ROBERT HILL & ASSOCIATES,

21. I also believe that the average rates for the associates, paralegals and law clerks who were included in Ms. Carlson's survey are reasonable for Ms. Turner's case. (approximately $227.00/hour for first year associates, $192.00/hour for paralegals, and $158.00/hour for law clerks.).

22. Based on my review of the record of the case, and the results obtained by Ms. Turner both at trial and at the Court of Appeals, it is clear that counsel did an outstanding job representing Ms. Turner in a highly contested and complex proceeding and that inexperienced attorneys could not have properly litigated this case and achieved a comparable degree of success.

23. Based on my review of this case and my knowledge of the rates currently charged to clients who need attorneys capable of effectively litigating complex and difficult matters, these rates are well within the reasonable market rates for attorneys in the Minneapolis, Minnesota area with similar backgrounds and experience as the attorneys who represented Ms. Turner.

24. Finally, compensating the Kohn and Hill firms at a full and reasonable market rate, as set forth herein, would serve the intent behind Congress' enactment of the Civil Rights Attorney Fee statute, in that it would encourage other attorneys to represent civil rights plaintiffs whose cases were economically undesirable, yet whose claims had merit.

FURTHER YOUR AFFIANT SAYETH NOT.

James H. Gilbert

4/3/07
Date

Subscribed and sworn to before me
this 3RD day of April, 2007.

Notary Public

ROBERT A. HILL
NOTARY PUBLIC-MINNESOTA
My Commission Expires Jan. 31, 2010



ASSOCIATES, 612-375-8999 p.11